# EXHIBIT A

## VARONIS SYSTEMS, INC.
## AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION,
## INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

As a condition of my employment with Varonis Systems, Inc., its subsidiaries, affiliates, successors or assigns (together, the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following provisions of this Varonis Systems, Inc. At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (this "**Agreement**"):

### 1. AT-WILL EMPLOYMENT

I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR NO SPECIFIED TERM AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE PRESIDENT OR CEO OF VARONIS SYSTEMS, INC. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE. I FURTHER ACKNOWLEDGE THAT THE COMPANY MAY MODIFY JOB TITLES, RESPONSIBILITIES, SALARIES AND BENEFITS FROM TIME TO TIME AS IT DEEMS NECESSARY IN ITS SOLE DISCRETION.

### 2. CONFIDENTIALITY

A. *Definition of Confidential Information*. I understand that "**Company Confidential Information**" means information that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with Company. Company Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Company Confidential Information. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company, or to the Company's technical data or know-how, including, but not limited to, research, product plans or other information regarding the Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), any information about employment conditions, employees, contractors or services providers, recruitment and retention policies, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment or other Company property. Confidential Information also includes, to the extent not included in the foregoing, all trade secrets of the Company. Notwithstanding the foregoing, Company Confidential Information shall not include

Page **4** of **19**

any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by Company to me; (ii) becomes publicly known or made generally available after disclosure by Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by Company as shown by my then-contemporaneous written records. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages and working conditions of their employment, as protected by applicable law.

B. *Nonuse and Nondisclosure*. I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and I will not (i) use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose the Company Confidential Information to any third party without the prior written authorization of the President, CEO or the Board of Directors of the Company. Prior to disclosure when compelled by applicable law; I shall provide prior written notice to the President, CEO and General Counsel of the Company (as applicable). I agree that I obtain no title to any Company Confidential Information, and that as between the Company and myself, the Company retains all Confidential Information as the sole property of the Company I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. To protect the Company's legitimate business interests, I understand that my obligations under this **Section 2.B** shall continue after termination of my employment and shall only terminate, with respect to particular Company Confidential Information, upon the earlier of (1) the date on which such information ceases to constitute Company Confidential Information under **Section 2.A**, and (2) with respect only to Company Confidential Information that does not constitute or ceases to constitute (through no wrongful action or omission by me) a "trade secret" under applicable law, thirty-six (36) months after termination of my employment. I understand that under applicable law, a "trade secret" includes, without limitation, any formula, pattern, device or compilation of information which is used in the Company's business, and which gives Company an advantage or an opportunity to obtain an advantage, over competitors who do not know or use such information. Nothing in this Agreement shall limit or otherwise affect the statutory protection given to trade secrets or the applicability of state trade secret law.

C. *Former Employer Confidential Information*. I agree that during my employment with the Company, I will not improperly use, disclose or induce the Company to use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to in writing by such third party.

D. *Third Party Information*. I recognize that the Company has received and in the future will receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners or collaborators ("**Associated Third Parties**"), their confidential or proprietary information ("**Associated Third Party Confidential Information**") subject to a duty on the Company's part to maintain the confidentiality of such Associated Third Party Confidential Information and to use it only for certain limited purposes.

By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company.

    E. *Defend Trade Secrets Act Claim Disclosure*. This Agreement requires me to protect the Company Confidential Information against unauthorized disclosure. Pursuant to the Defend Trade Secrets Act of 2016, I may be authorized to disclose confidential, proprietary and trade secret information in two limited circumstances. First, an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: in confidence to a federal, state or local official, either directly or indirectly, or to any attorney and such disclosure is made: (i) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a law suit or other proceeding if such filing is made under seal. Second, an individual may disclose trade secret information to an attorney for the purpose of filing a lawsuit for retaliation by an employer for reporting a suspected violation or law provided that any document containing the trade secret is filed under seal and the trade secret is not disclosed, except pursuant to court order. All other unauthorized disclosures are expressly prohibited without the Company's consent.

  **3.**  <u>OWNERSHIP</u>

    A.  *Assignment of Inventions*. As between the Company and myself, I agree that all right, title, and interest in and to any and copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, authored, invented, developed or reduced to practice by me, solely or in collaboration with others, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of the Company's equipment, supplies, facilities or Company Confidential Information, and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing (collectively, "**Inventions**"), are the sole property of the Company. I also agree to promptly make full written disclosure to the Company of any Inventions, and to deliver and assign and hereby irrevocably assign fully to the Company all of my right, title and interest in and to Inventions. I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market

any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

B.    *Pre-Existing Materials*.  I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets that were conceived in whole or in part by me prior to my employment with the Company and to which I have any right, title or interest and which relate to the Company's proposed business, products or research and development ("**Prior Inventions**"); or, if no such list is attached, I represent and warrant that there are no such Prior Inventions.  Furthermore, I represent and warrant that if any Prior Inventions are included on Exhibit A, they will not materially affect my ability to perform all obligations under this Agreement.  I will inform the Company in writing before incorporating such Prior Inventions into any Invention or otherwise utilizing such Prior Invention in the course of my employment with the Company, and the Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto.  I will not incorporate any invention, improvement, development, concept, discovery, work of authorship or other proprietary information owned by any third party into any Invention without the Company's prior written permission.

C.    *Moral Rights*.  Any assignment to the Company of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "**Moral Rights**").  To the extent that Moral Rights cannot be assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

D.    *Maintenance of Records*.  I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports or any other format that may be specified by the Company.  As between the Company and myself, the records are and will be available to and remain the sole property of the Company at all times.

E.    *Further Assurances*.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, and all other instruments that the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights, and in order to deliver, assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title, and interest in and to all Inventions, and testifying in a suit or other proceeding relating to such Inventions.  I further agree that my obligations under this **Section 3.E** shall continue after the termination of this Agreement.

F.  *Attorney-in-Fact*.  I agree that, if the Company is unable because of my unavailability, mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to the Company in **Section 3.A**, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf to execute and file any papers and oaths, and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by me. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

## 4.  CONFLICTING OBLIGATIONS

A.  *Current Obligations.*  I agree that during the term of my employment with the Company, I will not engage in or undertake any other employment, occupation, consulting relationship or commitment that is directly related to the business in which the Company is now involved or becomes involved or has plans to become involved, nor will I engage in any other activities that conflict with my obligations to the Company.

B.  *Prior Relationships*.  Without limiting **Section 4.A**, I represent and warrant that I have no other agreements, relationships or commitments to any other person or entity that conflict with the provisions of this Agreement, my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company.  I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law.  I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices, and documents), I have returned all property and confidential information belonging to all prior employers (and/or other third parties I have performed services for in accordance with the terms of my applicable agreement).  Moreover, I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, stockholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by any of them resulting from my breach of my obligations under any agreement with a third party to which I am a party or obligation to which I am bound, as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, except as prohibited by law.

## 5.  RETURN OF COMPANY MATERIALS

Upon separation from employment with the Company, on the Company's earlier request during my employment, or at any time subsequent to my employment upon demand from the Company, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information, Associated Third Party Confidential Information, all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), all tangible embodiments of the Inventions, all electronically stored information and passwords to access such property, Company credit cards,

records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained pursuant to **Section 3.D**. I also consent to an exit interview to confirm my compliance with this **Section 5**.

## 6. TERMINATION CERTIFICATION

Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit B. I also agree to keep the Company advised of my home and business address for a period of three (3) years after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

## 7. COVENANT NOT TO COMPETE AND NO SOLICITATION

A. *Covenant Not to Compete.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I will not, directly or indirectly, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee, consultant, contractor, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, creditor or otherwise in any other capacity for, (ii) own, purchase, organize, or take preparatory steps for the organization or competition of, or (iii) build, design, finance, acquire, lease, operate, manage, control, invest in, advise, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business. The foregoing covenant shall cover my activities in every part of the world. Should I obtain other employment during my employment with the Company or within twelve (12) months immediately following the termination of my relationship with the Company, I agree to provide written notification to the Company as to the name and address of my new employer, the position that I expect to hold, and a general description of my duties and responsibilities, at least five (5) business days prior to starting such employment.

B. *No Solicitation and No Interference.*

(1) *Non-Solicitation of Customers.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I shall not, directly or indirectly, without the prior written consent of the Company, contact, or cause to be contacted, or engage in any form of oral, verbal, written, recorded, transcribed or electronic communication with any Customer for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's business in any way. For the purposes of this Agreement, "Customer" shall mean all persons or entities that have used, inquired of or been solicited by me for the Company's services at any time during the two-year period preceding the termination of my employment with the Company or about whom I have learned material non-public information. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the

Company's list of Customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company.

(2) *Non-Solicitation of Employees and Contractors.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I shall not, directly or indirectly, without the prior written consent of the Company, whether or not such action is initiated by me: (i) solicit, encourage or attempt to solicit or encourage any employee or contractor of the Company to terminate such work relationship, (ii) solicit, encourage or attempt to solicit or encourage any employee or contractor of the Company to be employed by or provide services to any person or entity other than the Company, or (iii) hire, employ or engage any employee or contractor of the Company to work for a person or entity other than the Company. The foregoing obligations shall apply to any employee or contractor of the Company at the time my employment is terminated as well as any such individuals who, either coincident with or within twelve (12) months before the termination of my employment hereunder, terminated their employment or engagement with the Company.

(3) *Non-Interference With Business Relations.* I agree that during the course of my employment and for a period of twelve (12) months immediately following the termination of my employment for any reason, whether such termination is initiated by the Company or me, I will not, directly or indirectly, without the prior written consent of the Company, whether or not such action is initiated by me: (i) do anything or attempt to do anything to discredit or otherwise injure the reputation or goodwill of the Company; (ii) solicit, induce, encourage or attempt to solicit, induce or encourage any party or any existing or prospective counterparty including, but not limited to, any franchisee, joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer or any other existing or prospective professional or business relation of the Company to not conduct business with the Company, divert away any business from the Company, or to cease, limit or reduce the level of business conducted between such business relation and the Company; or (iii) in any way interfere or attempt to interfere with the Company's relationship with any party or existing or prospective counterparty, including, but not limited to, any franchisee, joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer or any other existing or prospective professional or business relation of the Company.

C. *Acknowledgements.* I acknowledge and agree that (1) the business in which the Company is engaged is intensely competitive, (2) my employment by the Company will require me to have access to, and knowledge of, Company Confidential Information, which is of vital importance to the success of the Company, (3) I will derive significant value from the Company's agreement to provide me with Company Confidential Information to enable me to optimize the performance of my duties to the Company, (4) the disclosure or improper use of any Company Confidential Information could place the Company at a serious competitive disadvantage and could do it serious damage, financial and otherwise, (5) I will develop relationships with clients and business partners at the time and expense of the Company, (6) by my training, experience and expertise, my services to the Company are extraordinary, special and unique, (7) my fulfillment of the obligations contained in this Agreement is necessary to protect the Company Confidential Information and, consequently, to preserve the value and goodwill of the Company, (8) the time, geographic and scope limitations of my restrictive covenant obligations are fair and reasonable in all respects, especially in light of the Company's need to

protect Company Confidential Information and the international scope and nature of the Company's business, and (9) I will not be precluded from gainful employment by abiding by the restrictions in this Agreement.

        D. *Separate Covenants; Reformation*. The covenants contained in subsections (A) and (B) above shall be construed as a series of separate covenants, one for each country, city, county and state of any geographic area in the world. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in subsections (A) and (B) above. If, in any judicial or arbitral proceeding, a court or arbitrator refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be eliminated from this Agreement to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event that the provisions of subsections (A) and (B) above are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope limitations, as the case may be, then permitted by such law. In the event that the applicable court or arbitrator does not exercise the power granted to it in the prior sentence, I and the Company agree to replace such invalid or unenforceable term or provision with a valid and enforceable term or provision that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable term.

### 8. NOTIFICATION OF NEW EMPLOYER

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement for two (2) years following termination of my employment.

### 9. CONFLICT OF INTEREST GUIDELINES

I agree to diligently adhere to all policies of the Company, including the Company's insider trading policies and the Company's Conflict of Interest Guidelines. A copy of the Company's current Conflict of Interest Guidelines is attached as Exhibit C hereto, but I understand that these Conflict of Interest Guidelines may be revised from time to time during my employment.

### 10. REPRESENTATIONS

Without limiting my obligations under **Section 3.E** above, I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent and warrant that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

### 11. AUDIT

I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, voicemail or documents that are used to conduct the business of the Company. All information, data and messages created, received, sent or stored in these systems are, at all times, the property of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure

that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems, including, without limitation, open source or free software not authorized by the Company, and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or websites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone, and technology systems to which I will have access in connection with my employment.

I am aware that the Company has or may acquire software and systems that are capable of monitoring and recording all network traffic to and from any computer I may use. The Company reserves the right to access, review, copy and delete any of the information, data or messages accessed through these systems with or without notice to me and/or in my absence. This includes, but is not limited to, all e-mail messages sent or received, all website visits, all chat sessions, all news group activity (including groups visited, messages read, and postings by me), and all file transfers into and out of the Company's internal networks. The Company further reserves the right to retrieve previously deleted messages from e-mail or voicemail and monitor usage of the Internet, including websites visited and any information I have downloaded. In addition, the Company may review Internet and technology systems activity and analyze usage patterns, and may choose to publicize this data to assure that technology systems are devoted to legitimate business purposes.

**12. ARBITRATION AND EQUITABLE RELIEF**

A. *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, CONTRACTOR, STOCKHOLDER OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, COLLECTIVE OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION  DISPUTES THAT I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER LOCAL, STATE OR FEDERAL LAW, TO THE FULLEST EXTENT PERMITTED BY LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE FAIR CREDIT REPORTING ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, THE FAMILY AND MEDICAL LEAVE ACT, THE NEW YORK STATE HUMAN RIGHTS LAW, THE NEW YORK CITY HUMAN RIGHTS LAW, IF APPLICABLE, THE NEW YORK LABOR CODE, THE NEW YORK

WORKERS' COMPENSATION LAW, CLAIMS OF HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION, AND ANY STATUTORY OR COMMON LAW CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

B. *Procedure*. I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION, INC. ("AAA"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "AAA RULES") INNEW YORK COUNTY, NEW YORK.   I UNDERSTAND THAT THE PARTIES TO THE ARBITRATION SHALL EACH PAY AN EQUAL SHARE OF THE COSTS AND EXPENSES OF SUCH ARBITRATION, EXCEPT AS PROHIBITED BY LAW IN WHICH EVENT THE COMPANY SHALL PAY SUCH COSTS AND EXPENSES I WOULD NOT OTHERWISE HAVE HAD TO PAY IF THE CLAIM HAD BEEN RESOLVED IN A COURT OF LAW.   I FURTHER UNDERSTAND THAT EACH PARTY SHALL SEPARATELY PAY FOR ITS RESPECTIVE ATTORNEYS' FEES AND COSTS; PROVIDED, HOWEVER, THAT THE ARBITRATOR MAY, IF HE OR SHE DEEMS APPROPRIATE, AWARD REASONABLE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY IN THE EVENT THE OPPOSING PARTY'S CLAIM WAS SUBSTANTIALLY UNJUSTIFIED AND UNREASONABLE, EXCEPT AS PROHIBITED BY LAW. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING.  I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW AND UNLESS PROHIBITED BY LAW, THE ARBITRATOR SHALL NOT HAVE THE POWER TO AWARD PUNITIVE DAMAGES.  I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING.

C. *Remedy*.  EXCEPT AS PROVIDED BY THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY.  ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

D. *Availability of Injunctive Relief*.  IN ADDITION TO THE RIGHT UNDER THE RULES TO PETITION THE COURT FOR PROVISIONAL RELIEF, I AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THIS AGREEMENT OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NON-COMPETITION, NON-SOLICITATION, NON-INTERFERENCE OR OTHER RESTRICTIVE COVENANTS.  I UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION.  IN THE EVENT THE COMPANY HAS A GOOD FAITH BASIS FOR

SEEKING INJUNCTIVE RELIEF, THE COMPANY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

E.  *Administrative Relief*.  I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMINISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE NEW YORK STATE DIVISION OF HUMAN RIGHTS, THE NEW YORK CITY COMMISSION ON HUMAN RIGHTS (AS APPLICABLE), THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD OR THE WORKERS' COMPENSATION BOARD.    THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM, EXCEPT AS PERMITTED BY LAW.

F.  *Voluntary Nature of Agreement*.  I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE.  I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT I AM WAIVING MY RIGHT TO A JURY TRIAL.  FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

### 13. PROTECTED RIGHTS.

I understand that nothing contained in this Agreement limits my ability to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state or local government agency or commission.  I further understand that this Agreement does not limit my ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information, without notice to the Company.  This Agreement does not limit my right to receive an award for information provided to any government agencies.

### 14. MISCELLANEOUS

A.  *Governing Law; Consent to Personal Jurisdiction*.  This Agreement will be governed by the laws of the State of Delaware without regard to Delaware's conflicts of law rules that may result in the application of the laws of any jurisdiction other than Delaware.  To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in New Castle County, Delaware for any lawsuit filed against me by the Company.

B.  *Assignability*.  This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company,

its successors, and its assigns; provided, however, that neither party shall assign, delegate or otherwise transfer any of its rights, obligations or privileges (by operation of law or otherwise) hereunder without the prior written consent of the other party. Notwithstanding the foregoing, the Company may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of the Company's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock or otherwise. Any attempted assignment, delegation or other transfer in violation of this **Section 13.B** shall be null and void. There are no intended third-party beneficiaries to this Agreement, except as may be expressly otherwise stated.

   C. *Entire Agreement*. This Agreement, together with the Exhibits herein and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations. I represent and warrant that I am not relying on any statement or representation not contained in this Agreement. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

   D. *Headings*. Headings are used in this Agreement for reference only and shall not be considered when interpreting this Agreement.

   E. *Severability*. If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

   F. *Modification, Waiver*. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the President or CEO of the Company and me. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

   G. *Survivorship*. The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

(SIGNATURE PAGE TO VARONIS SYSTEMS, INC. AT-WILL EMPLOYMENT,
CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION
AGREEMENT)

Date: _____05/01/2018_____          _____
                                     Signature


                                     **Matthew Guanciale**
                                     Name of Employee (typed or printed)


Witness:

_____
Signature


_____Nikolett Mihalka_____
Name (typed or printed)

Page **16** of **19**

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

**X** No inventions or improvements

___ Additional Sheets Attached

Date: _____05/01/2018_____    _____
                                  Signature

                                  **Matthew Guanciale**
                                  Name of Employee (typed or printed)

Page **17** of **19**

**EXHIBIT B**

**VARONIS SYSTEMS, INC. TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, any other documents or property, or reproductions of any and all aforementioned items belonging to Varonis Systems, Inc., its subsidiaries, affiliates, successors or assigns (together, the "**Company**").

I further certify that I have complied with all the terms of the Company's At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein) conceived or made by me (solely or jointly with others), as covered by that agreement.

I further agree that, in compliance with the At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will preserve as confidential and will not use or disclose without prior authorization any and all Company Confidential Information and Associated Third Party Confidential Information, including trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I also agree that for twelve (12) months from this date, I will comply with the non-competition and non-solicitation provisions, as set forth in Paragraph 7 of the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement.

After leaving the Company's employment, I will be employed by _____ in the position of

_____.


Date: _____    _____
                                          Signature


                                          _____
                                          Name of Employee (typed or printed)

Address for Notifications:                _____


                                          _____


Page **18** of **19**

**EXHIBIT C**

**VARONIS SYSTEMS, INC. CONFLICT OF INTEREST GUIDELINES**

It is the policy of Varonis Systems, Inc. to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees and independent contractors must avoid activities that are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations that must be avoided:

1.      Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended. (The At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement elaborates on this principle and is a binding agreement.)

2.      Accepting or offering substantial gifts, excessive entertainment, favors or payments that may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3.      Participating in civic or professional organizations that might involve divulging confidential information of the Company.

4.      Initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement.

5.      Initiating or approving any form of personal or social harassment of employees.

6.      Investing or holding outside directorship in suppliers, customers or competing companies, including financial speculations, where such investment or directorship might influence in any manner a decision or course of action of the Company.

7.      Borrowing from or lending to employees, customers or suppliers.

8.      Acquiring real estate of interest to the Company.

9.      Improperly using or disclosing to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

10.     Unlawfully discussing prices, costs, customers, sales or markets with competing companies or their employees.

11.     Making any unlawful agreement with distributors with respect to prices.

12.     Improperly using or authorizing the use of any inventions that are the subject of patent claims of any other person or entity.

13.     Engaging in any conduct that is not in the best interest of the Company.

Each officer, employee, and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.

# EXHIBIT B



111 East Wacker Drive, Suite 2600
Chicago, IL 60601-4208
Tel: 312.840.4424 | Cell: 708.267.3780
taftlaw.com

**Terese M. Connolly**
Partner
312.840.4424
TConnolly@taftlaw.com

March 21, 2025

<u>Via Email</u>
Mr. Matthew Guanciale
matthew@atomicanvil.com

Re:    Post-Employment Restrictions

Dear Mr. Guanciale:

I represent Varonis Systems Inc. ("Varonis") and write to you concerning your offer letter and AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT, which you signed on May 1, 2018 (the "Agreement").

Pursuant to the terms of the Agreement, you voluntarily agreed to refrain from accepting employment with a competitor of Varonis for one year from the date of termination of your employment with Varonis in the same or similar capacity to your role at Varonis. In addition, you have a contractual and legal obligation to protect Varonis' confidential business information against misappropriation or to benefit a third party. We would also remind you of your obligations according to the Agreement to refrain from soliciting Varonis employees and customers with whom you interacted during the one year prior to your employment with Varonis terminating.

In consideration for these modest restrictions, Varonis employed you in the position of Sales Engineer, compensated you at a high level and provided you access to its confidential and sensitive information. In addition, Varonis helped foster your relationship with Varonis' customers, with whom you interacted during your employment. In other words, you should not be reaching out to any customers that have used, inquired of or been solicited by you for Varonis' services at any time during the two-year period preceding the termination of your employment with Varonis or about whom you learned material non-public information, until your one year restricted period has expired.

Varonis understands that you started working for Cyera, a direct competitor of Varonis, in a similar capacity to your role at Varonis. This constitutes a clear breach of the Agreement and threatens misappropriation of Varonis Confidential Information.

Mr. Matthew Guanciale
March 21, 2025
Page 2

If you continue employment with Cyera in this role, Varonis will protect its rights under the Agreement, as well as its legal and statutory rights, by asserting legal claims against you and anyone who assists you in violating Varonis' rights. Please recall that Section 8 of the Agreement states that you "grant consent to notification by the Company to [your] new employer about [your] obligations under this Agreement for two years following termination of [your] employment."

Without derogating from nor waiving any other remedy at Varonis' disposal, we ask you to confirm in writing, by this coming ***Tuesday, March 25, 2025 on or before 9 am CT***, that you have not disclosed any Varonis Confidential Information to any unauthorized recipient and you have not solicited and will not solicit any client, whom you solicited, serviced, or managed while employed by Varonis.

Finally, this letter serves as formal written notice to you to preserve all documents and electronically stored information relating to this dispute, including e-mail, text messages, and social media posts, on all devices containing such information, including by suspending all routine document destruction policies and disabling the automatic delete functions on ephemeral messaging applications, such as WhatsApp, Snapchat, and Signal.

Very truly yours,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ Terese M. Connolly*

Terese M. Connolly

cc:    Steve Rog, Cyera US Inc.
       Via Email and Overnight Mail

171927883v2

# EXHIBIT C



111 East Wacker Drive, Suite 2600
Chicago, IL 60601-4208
Tel: 312.840.4424 | Cell: 708.267.3780
taftlaw.com

**Terese M. Connolly**
Partner
312.840.4424
TConnolly@taftlaw.com

March 19, 2025

**VIA EMAIL (STEVER@CYERA.IO) & FEDERAL EXPRESS**
Mr. Steve Rog
Vice President of Sales at Cyera
Cyera US Inc.
500 7th Ave.
New York, NY 10018

       Re:    Targeted Hiring of Varonis Employees

Dear Mr. Rog:

       Our law firm represents Varonis Systems, Inc. ("Varonis"). We have been retained to advise Varonis on the ongoing post-employment obligations that its former employees owe to Varonis and the potential remedies available for any breach of those obligations, including the inducement of this breach by a third party.

       Cyera has been hiring Varonis employees, including Thor Lynch, Justin Irvin, Daniel Post, Gabriel Willey, Matthew Guanciale, and Alex Weber[1]. Additionally, Varonis has become aware that Cyera is deliberately targeting certain Varonis sales employees for recruitment, including but not limited to Account Managers, Sales Engineers, and their supervisors. With regard to such sales personnel, Varonis introduces them to and fosters their relationship with key client, prospects and strategic partners and resellers. In addition, such employees have access while employed to Varonis confidential information and trade secrets that is needed to perform their work, including its sales strategies and methodologies. Varonis believes that Cyera wishes to exploit these rich connections and vast knowledge provided by Varonis to employees, in order to gain an unfair competitive advantage over Varonis.

       Given their access to important protectable business interests, each of these sales employees signs an employment agreement, in which they agree to certain post-employment

---

[1] We list Alex Weber as he too was targeted, but we acknowledge he is located in California and is not subject to the same restrictive covenants.

Cyera US Inc.
c/o Mr. Steve Rog
March 19, 2025
Page 2

obligations, including non-competition, non-solicitation, and non-disclosure of confidential information provisions. While we believe Cyera was aware of these employees' post-employment obligations when it recruited—and in some instances hired—them and at least has been since Cyera received a copy of the April 24, 2024 and November 11, 2024, cease and desist letters Varonis sent to Thor Lynch and Justin Irvin, respectively; please take this correspondence as additional formal notice of Varonis' current and former employees' obligations to Varonis.

From our understanding, Cyera hired these former Varonis employees and is targeting to hire current Varonis sales employees to perform substantially the same duties as they perform(ed) for Varonis. If true, this may be a violation of their non-compete, non-solicit, and/or confidentiality (as applicable) obligations to Varonis and their hire or continued employment (as applicable) would be a breach of their agreement.

Additionally, Varonis must reiterate its expectation that its employees adhere to their contractual and legal obligations—including refraining from using any confidential, proprietary, and trade secret information of Varonis, or from interfering with Varonis' contractual and business relationships with its (current and potential, as applicable) customers. Varonis is investigating and monitoring, and will continue to investigate and monitor, each of these employees for prior, continued, or future breaches of their post-employment covenants.

Additionally, if, during its investigation, it determines that Cyera or any of Cyera's employees or agents knowingly engaged in conduct to induce, facilitate, or assist any former Varonis employee to violate their post-employment obligations, Varonis is prepared to pursue all legal remedies available. Therefore, we must formally demand that you immediately cease and desist any conduct or actions that would interfere with any Varonis employee's obligations to it. Varonis will remain vigilant for any potential violations of its employees' obligations and will enforce its rights and pursue all legal remedies available to it.

Finally, while the purpose of this letter is to try to avoid any potential dispute, we must insist that you and your agents preserve all documents – including e-mails and other electronically stored information – that deal with any current or former Varonis employee's employment at both Varonis and Cyera, including the employee's clients at both employers, the employee's duties at both employers, and the employee's covenants/responsibilities to Varonis arising out of the employee's employment with Varonis.  This includes disabling any auto-delete or overwrite functions on any computers, servers, laptops, tablets, cell phones, smart phones, USB drives or portable hard drives, email, web mail, or other depositories of electronically stored information. Varonis will enforce its full rights vigorously with regard to the tortious interference of any third-party facilitating or inducing a violation of its employees' responsibilities to it and/or the targeted recruitment of Varonis employees to unfairly compete with it, and may treat any failure to preserve evidence as the intentional destruction of evidence.

Cyera US Inc.
c/o Mr. Steve Rog
March 19, 2025
Page 3

We appreciate your cooperation in these matters.

Very truly yours,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ Terese M. Connolly*

Terese M. Connolly