**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| VARONIS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW GUANCIALE and CYERA US INC., <br><br> Defendants. | C.A. No. _1:25-cv-00571-UNA_ |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

OF COUNSEL:
(*pro hac vice* forthcoming)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL  60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com

Dated:  May 8, 2025

Timothy R. Dudderar (No. 3890)
John A. Sensing (No. 5232)
Hannah L. Paxton (No. 6398)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000 – Telephone
tdudderar@potteranderson.com
jsensing@potteranderson.com
hpaxton@potteranderson.com

*Attorneys for Plaintiff Varonis Systems, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.      Varonis is entitled to a preliminary injunction. .................................................... 3

    A.      Varonis will suffer irreparable harm absent injunctive relief ................................ 3

        1.      Guanciale admits that a breach of the restrictive covenants inflicts irreparable harm ........................................................................ 3

        2.      Guanciale will inevitably disclose confidential and trade secret information to a direct competitor, inflicting irreparable harm ................ 4

        3.      Guanciale's use and disclosure of Varonis's confidential information will inflict irreparable harm. ................................. 8

    B.      Varonis is likely to succeed on the merits and (at the very least) can demonstrate a sufficient serious question going to the merits to make its claims fair grounds for litigation ................................................ 11

        1.      Delaware law governs the Employment Agreement ................................ 11

        2.      The basic elements of a valid contract and breach are established here. ............................................................................ 11

        3.      The restrictive covenants are reasonable in scope and duration. ............ 12

    C.      The balance of equities favors Varonis ................................................................ 16

    D.      Granting injunctive relief is in the public interest .............................................. 17

    E.      Varonis is entitled to injunctive relief for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) and the Delaware Uniform Trade Secrets Act, 6 Del. C. §§ 2001–2009. ............................................................... 18

CONCLUSION .................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Pro Maids, Inc. v. Layton*,
  2004 WL 1878784 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005) ....................11

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
  2022 WL 2177559 (D. Del. June 16, 2022)...........................................................................19

*Am. Totalisator Co. v. Autotote Ltd.*,
  1983 WL 21374 (Del. Ch. Aug. 18, 1983) ...........................................................................5, 6

*Am. Totalisator Sys., Inc. v. Automatic Totalisators (U.S.A.) Ltd.*,
  1978 WL 4479 (Del. Ch. Apr. 20, 1978)...............................................................................6, 8

*Atl. Diving Supply, Inc. v. Moses*,
  2014 WL 3783343 (E.D. Va. July 31, 2014) ......................................................................14, 15

*Avaya Inc., RP v. Telecom Labs, Inc.*,
  838 F.3d 354 (3d Cir. 2016)...................................................................................................11

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010)..................................................................................................4, 5

*Concord Steel, Inc. v. Wilmington Steel Processing Co.*,
  2008 WL 902406 (Del. Ch. Apr. 3, 2008) ...............................................................................4

*Del. Exp. Shuttle, Inc. v. Older*,
  2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .........................................................................4

*Faw, Casson & Co. v. Cranston*,
  375 A.2d 463 (Del. Ch. 1977)................................................................................................16

*Gas Oil Prods., Inc. of Del. v. Kabino*,
  1987 WL 18432 (Del. Ch. Oct. 13, 1987) ..............................................................................15

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
  774 F.3d 192 (3d Cir. 2014).....................................................................................................3

*HR Staffing Consultants LLC v. Butts*,
  627 F. App'x 1684 (3d Cir. 2015) ....................................................................................5, 8, 10

*Mallet and Company Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ...................................................................................................18

*Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*,
  2019 WL 2536104 (Del. Ch. June 20, 2019) ............................................................4

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms.*
  *Co.*,
  290 F.3d 578 (3d Cir. 2002) .................................................................................16

*Oakwood Laborat. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) .................................................................................18

*Opticians Ass'n of Am. v. Ind. Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990) ...................................................................................3

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) ................................................................................3, 9

*Research & Trading Corp. v. Pfuhl*,
  1992 WL 345465 (Del. Ch. Nov. 18, 1992) .......................................................14, 15

*Sensus USA, Inc. v. Franklin*,
  2016 WL 1466488 (D. Del. Apr. 14, 2016) ................................................... *passim*

*Singh v. Batta Envtl. Assocs., Inc.*,
  2015 WL 5458960 (Del. Ch. May 21, 2003) ..........................................................8

*TP Grp.-CI, Inc. v. Vetecnik*,
  2016 WL 5864030 (D. Del. Oct. 6, 2016) .................................................3, 13, 17, 18

*Tristate Courier & Carriage, Inc. v. Berryman*,
  2004 WL 835886 (Del. Ch. Apr. 15, 2004) ..........................................................11

*True N. Commc'ns Inc. v. Publicis S.A.*,
  711 A.2d 34 (Del. Ch. 1997) ..................................................................................4

*UtiliSave, LLC v. Miele*,
  2015 WL 5458960 (Del. Ch. Sept. 17, 2015) .........................................................6

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) ....................................................................................11

*Wilmington Trust Co. v. Consistent Asset Management Co.*,
  1987 WL 8459 (Del. Ch. Mar. 25, 1987) .............................................................20

**Statutes**

6 Del. C. §§ 2001–2009 .........................................................................................20

18 U.S.C. § 1832(a) ...........................................................................................18, 19

18 U.S.C. § 1836(b)(3)(A)(i)-(ii) ...................................................................18

18 U.S.C. § 1839(3) .......................................................................................18

18 U.S.C. § 1839(5) .......................................................................................19

18 U.S.C. § 1836(b) ..................................................................................18, 19

**Other Authorities**

Federal Rule of Civil Procedure 65 .................................................................3

https://www.comeet.com/jobs/cyera/17.008/careers/A2.B4E (last accessed Apr.
    11, 2025) .................................................................................................10

https://www.cyera.io/about (last accessed Apr. 18, 2025)................................8

## INTRODUCTION

Plaintiff Varonis Systems, Inc. ("Varonis" or the "Company") submits this Opening Brief in support of its Motion for Preliminary Injunction.[1] As discussed below, restrictions on Defendant Matthew Guanciale's ("Guanciale") post-employment activities, for one year only, are appropriate and necessary to protect Varonis's legitimate business interests and proprietary information. An injunction is essential to protect Varonis's confidential information and ensure that Guanciale will not be exploiting that knowledge and information to the benefit of his new employer, Cyera US Inc. ("Cyera"), and against the interests of his former employer, Varonis. Guanciale is bound by the Employment Agreement[2] he signed as a condition of his employment, including its restrictive covenants. The agreement bars Guanciale from working for any employer whose business or products compete with Varonis, for one year after his separation, from soliciting customers, prospective customers, and employees of Varonis, and from interfering with Varonis's business or its relationships. Further, a breach of any of these restrictions necessarily entails Guanciale's breach of the covenant prohibiting Guanciale from disclosing or using Varonis's confidential information for the benefit of anyone other than Varonis.

Guanciale has comprehensive knowledge about Varonis customers' deal terms and Varonis's pricing strategies, and is intimately familiar with the strengths and challenges of Varonis products and the features most popular with Varonis customers and potential customers, which give Varonis products a competitive advantage. Guanciale also has a deep understanding of Varonis's technology, which positioned him to assist Varonis's partners in developing technical expertise, mentor and train other Sales Engineers, and deliver presentations on Varonis's products to

---

[1] Varonis has filed a contemporaneous motion for expedited discovery in furtherance of its request for a preliminary injunction.

[2] The Employment Agreement is attached as Exhibit 1 to the Declaration of Dana Shahar submitted in support of this motion.

both, current and prospective customers and C-Level stakeholders. Cyera, whose business is centered on providing security management solutions that are similar to and compete with some of Varonis's products and services, now employs Guanciale in a substantially similar position performing substantially similar functions as when he worked for Varonis. It is hard to imagine a clearer violation of Guanciale's specific and unambiguous obligations under his Employment Agreement. Cyera essentially offers nothing but security management solutions. Unless enjoined, Guanciale inevitably will use or disclose Varonis's confidential information to benefit Cyera, a Varonis competitor, such as helping Cyera price its products against Varonis (*e.g.*, based on his knowledge of the Company's discounting practices and customers' pain points) or improve the competitor's products or their functionalities (*e.g.*, based on his knowledge of Varonis's unique technologies or processes, product development roadmaps, product integration capabilities, procedures and protocols for providing technical support and after-sales services, and competitive analyses, including analysis of Varonis's competitors' products). Compounding the danger to Varonis's business from Guanciale's employment with Cyera as a Senior Sales Engineer, Guanciale is also familiar with Varonis's competitive gaps and can exploit that knowledge to promote Cyera's products over Varonis's, and to enhance Cyera's selling pitch. This gives Cyera a powerful advantage in advancing its products that, until just weeks ago, Guanciale was actively competing against.

Varonis is entitled to an injunction pending trial in this matter barring Guanciale from continuing to work for Cyera as specified in the Employment Agreement, from soliciting certain customers, prospective customers, and employees of Varonis, and from disclosing to Cyera Varonis's trade secrets and confidential business information. Absent a preliminary injunction, Varonis has suffered and will continue to suffer irreparable harm in the form of lost customer and business

relationships, goodwill, and other irreparable injury for which there is no adequate monetary remedy. For these reasons, discussed more fully below, Varonis respectfully requests that the Court grant its motion and issue a preliminary injunction.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's complaint, as well as the Declaration of Gregory Pomeroy and the Declaration of Dana Shahar (and exhibits attached thereto), for a recitation of Plaintiff's factual allegations, which are incorporated herein by reference.

## ARGUMENT

### I.    Varonis is entitled to a preliminary injunction.

Pursuant to Federal Rule of Civil Procedure 65, a party is entitled to a preliminary injunction, if it demonstrates that: (1) it is likely to succeed on the merits; (2) denial of the application will result in irreparable harm; (3) the balance of equities does not disfavor granting injunctive relief; and (4) the injunctive relief is in the public interest. *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014).

#### A.    Varonis will suffer irreparable harm absent injunctive relief.

Irreparable harm is harm "of a peculiar nature" for which "compensation in money alone cannot atone." *Opticians Ass'n of Am. v. Ind. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (citation omitted). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Pappan Enters.*, *Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Varonis will suffer irreparable harm without injunctive relief.

##### 1.    Guanciale admits that a breach of the restrictive covenants inflicts irreparable harm.

"Under Delaware law, contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing preliminary injunctive relief." *TP Grp.-CI, Inc. v.*

3

*Vetecnik*, 2016 WL 5864030, at *2 (D. Del. Oct. 6, 2016) (cleaned up); *see also, e.g.*, *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2008 WL 902406, at *10–11 (Del. Ch. Apr. 3, 2008); *True N. Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34, 44 (Del. Ch. 1997). Guanciale explicitly acknowledged that his breach of the restrictive covenants set forth in the Employment Agreement inflicts irreparable harm to Varonis. Specifically, Guanciale acknowledged that the restrictive covenants were "necessary to protect the Company Confidential Information." (Emp't Agreement § 7(C).) As such, "any breach of threatened breach of such an agreement will cause irreparable injury and . . . money damages will not provide an adequate remedy." (*Id.* § 12(D) (capitalization omitted).)

### 2. Guanciale will inevitably disclose confidential and trade secret information to a direct competitor, inflicting irreparable harm.

Delaware law recognizes that a breached restrictive covenant causes irreparable harm. *Mountain W. Series of Lockton Cos., LLC v. Alliant Ins. Servs., Inc.*, 2019 WL 2536104, at *20 (Del. Ch. June 20, 2019); *Concord Steel*, 2008 WL 902406, at *10. Additionally, the information that Varonis seeks to prevent Guanciale from (mis)using or disclosing constitutes confidential and/or trade secret information that has long been recognized as warranting judicial protection via injunctive relief. Guanciale's breach of the restrictive covenants endangers several categories of Varonis's protectible interests, including but not limited to the following:

- Financial and business information, such as long-term plans, sales and marketing strategies, profit margins, pricing strategies, sales reports pertaining to the revenue generated by customers and/or Varonis's products, projects that Varonis was working on. (Pomeroy Decl. ¶¶ 4, 13, 19, 26, 51–54 ); *see Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at *7 (D. Del. Apr. 14, 2016); *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002).

- Proprietary methods and formulas, such as composition and formulations of products and products in development. (Pomeroy Decl. ¶¶ 4–5, 13, 22, 25); *Sensus USA*, 2016 WL 1466488, at *7; *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 113–14 (3d Cir. 2010).

- Customer information. (Pomeroy Decl. ¶¶ 4–5, 20–24, 27); *see Sensus USA*, 2016 WL 1466488, at *7; *Bimbo Bakeries USA*, 613 F.3d at 113–14.

These categories of information are not publicly known and have substantial commercial value to Varonis. (*See* Pomeroy Decl. ¶¶ 14–15, 24, 55.) Through Guanciale, a competitor with Varonis's confidential information could improve products or develop new products to fill a capability and/or competitive gap based on Varonis's customers and prospects' feedback (which was obtained through Varonis's collective efforts); target Varonis's customers and sales channels; develop products and design offerings tailored to Varonis's customers' uses; and undermine Varonis's product pricing—all of which damage Varonis's competitive advantage. (*Id.* ¶¶ 26–28, 35–36, 39, 56.) With knowledge of information entirely internal to Varonis, Guanciale is in a position to design or participate in the design of product offerings and sales initiatives for Cyera's benefit, *i.e.*, to induce customers and prospects to forgo or reduce business with Varonis. (*Id.* ¶¶ 37–39.) Similarly, Guanciale is especially equipped to leverage his yearslong relationships with key partners and customers to persuade them, using his knowledge about the Company's business and products, to prioritize or promote Cyera or its products over Varonis, especially when his current position requires exploiting this information. (*Id.* ¶¶ 5, 13, 20, 51–53.)

Courts have recognized that a former employee, whether ***inadvertently or not***, under certain circumstances may directly or indirectly use or disclose a former employer's confidential trade secret information. *See HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 173–74 (3d Cir. 2015) (finding that former employee's breach of non-compete provision would result in irreparable harm where the former employee had access to the employer's strategic plans and risked sharing this information to the detriment of his former employer). Further, the confidential information need not actually be disclosed or used; threatened disclosure may be sufficient to warrant injunctive relief. *Am. Totalisator Co. v. Autotote Ltd.*, 1983 WL 21374, at *5 (Del. Ch. Aug. 18, 1983)

(issuing temporary restraining order and preliminary injunction where it "would not be possible to separate the [employee's] known information and the subtle nuances of that knowledge from what could be an objective attempt by [employee] and [his new employer] to do their jobs . . . without that information . . . *it is difficult to see how it would not be used*." (emphasis added)).

Delaware courts recognize the "inevitable disclosure doctrine" and have acknowledged that preliminary injunctive relief may be warranted where there exists a substantial likelihood of inevitable disclosure of the plaintiff's trade secrets. *See, e.g.*, *Am. Totalisator Sys., Inc. v. Automatic Totalisators (U.S.A.) Ltd.*, 1978 WL 4479, at *3 (Del. Ch. Apr. 20, 1978); *Autotote*, 1983 WL 21374, at *5; *see also UtiliSave, LLC v. Miele*, 2015 WL 5458960, at *9 (Del. Ch. Sept. 17, 2015) (denying the defendant's motion to dismiss the plaintiff's complaint seeking to enforce a covenant restricting nondisclosure of confidential information based on the plaintiff's "colorable inevitable disclosure argument"). The risk of Guanciale's inevitable disclosure of confidential and trade secret information is particularly heightened here because Guanciale currently works for Varonis's direct competitor and actively advances competing products that compete with those on which he previously worked at Varonis and about which he acquired confidential business information.

Guanciale had substantial involvement in Varonis's strategic efforts to penetrate the data security market and to expand its share of that market—one in which Cyera now directly competes. (Pomeroy Decl. ¶ 13). Guanciale had access to and was intimately familiar with, among other things, Varonis's customers and prospective customers (including their deal terms, requirements, and timing for opportunities), its business arrangements with partners, business plans, costs and pricing strategies for Varonis's products, Varonis's products (including information about unique technologies or processes that give Varonis products a competitive advantage) and products

development roadmaps, product integration capabilities, procedures and protocols for providing technical support and after-sales services, competitive analyses (including competitor product analysis and methods that Varonis uses to position itself against those products) and marketing and sales strategies to advance Varonis products—products against which he is now competing on Cyera's behalf as a Senior Sales Engineer. (*Id.* ¶¶ 4, 51, 59). Guanciale knows Varonis's pricing strategies and discount structures, including what Varonis's customers pay and/or are willing to pay and when their product contracts or licenses are up for renewal. (*Id.* ¶¶ 31–33, 38). Guanciale also knows what Varonis's products can and cannot do and how Varonis positions itself against competitors like Cyera. (*Id.* ¶¶ 26, 37, 52, 54).

Guanciale cannot simply remove Varonis's confidential information from his head where it had been accumulating for seven years. It is impossible for Guanciale to wipe from his memory Varonis's pricing for a particular Varonis product or service that a Varonis customer paid when, on behalf of Cyera, Guanciale attempts to pitch and competitively price a similar competing Cyera product, whether to a new prospect or to the same Varonis customer who is either renewing Varonis's product or service or selecting an alternative option. (*Id.* ¶¶ 7, 32). The feat is even more implausible particularly when this is part of his new role as Senior Sales Engineer at Cyera and where Guanciale may have had a years-long relationship with that customer, which he had been tasked with nurturing for Varonis's benefit, and also may have been Varonis's sales lead on that expiring transaction. *See Sensus USA,* 2016 WL 1466488 at *7.

Guanciale began employment with Varonis's direct competitor, Cyera, in April 2025 as a Senior Sales Engineer. (Shahar Decl. Ex. 6.) Guanciale's new position at Cyera is very similar to his positions at Varonis and, in those positions, Guanciale was responsible for managing existing customers and partner relationships to drive sales of Varonis's security solutions. (Pomeroy Decl.

¶¶ 18–19, 51–54). Specifically, in his last role at Varonis as a Strategic Sales Engineer, Guanciale managed some of Varonis's most important customers and prospective customers, giving him access to highly valuable insights that now risk being used to Varonis's detriment. Indeed, Cyera describes itself as a "pioneer in the data security space." *See* https://www.cyera.io/about (last accessed Apr. 18, 2025); (Compl. ¶ 65.) In sum, Guanciale is now working for Cyera in a role substantially comparable to the ones he held at Varonis, impermissibly advancing products that compete with the very same products Guanciale worked to advance against competitors, such as his current employer, Cyera. Under such circumstances, disclosure is ***inevitable***. *See Automatic Totalisators*, 1978 WL 4479, at \*3.

### 3. Guanciale's use and disclosure of Varonis's confidential information will inflict irreparable harm.

Absent an injunction, Guanciale will be able to use Varonis's own confidential information against it, which will cause Varonis to lose business and goodwill. Guanciale's violation of the restrictive covenants threaten to cause Varonis irreparable harm by luring away business of a number of long-term customers that Varonis has carefully cultivated over the years. *Sensus USA*, 2016 WL 1466488, at \*7 (holding key employee possessed client information employer cultivated for years which would cause irreparable harm because employee managed large account clients in his customer-facing role). Indeed, it is well settled that the loss of future sales, goodwill, and customer information cannot be easily quantified. *HR Staffing*, 627 F. App'x at 170, 174 ("In the context of a preliminary injunction motion, grounds for irreparable injury include loss of trade . . . [and in the] context of a confidentiality provision, once a competitor has obtained the secrets, the cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss."); *Singh v. Batta Envtl. Assocs., Inc.*, 2015 WL 5458960, at \*9 (Del. Ch. May 21, 2003) ("The inadequacy of damages as a remedy, as well as the difficulty of calculating damages . . . constitute

irreparable harm."); *see Pappan Enters.*, 143 F.3d at 805 ("Grounds for irreparable injury include . . . loss of trade[.]").

Cyera has developed its own data security products and is positioned to compete and take business away from Varonis's products. (*See* Compl. ¶¶ 34–35, 66–69.) By joining Cyera, Guanciale is servicing Varonis's direct competitor. (*Id.* ¶¶ 11, 58.) It is highly foreseeable, if not inevitable, that he has used and/or will use Varonis's confidential information to counter the very products about which he acquired detailed knowledge and whose sales initiatives he helped formulate and direct.

Guanciale's violation of his nondisclosure, non-compete, non-solicitation, and non-interference restrictive covenants threaten to cause Varonis irreparable harm by luring away long-term customers that Varonis has cultivated for years with Guanciale's help. (*Id.* ¶ 32); *Sensus USA*, 2016 WL 1466488 at *7. Through its employment of Guanciale, who played a key role in the development of confidential business information related to the sale, integration, and development of Varonis's products, Cyera now has access to, and Guanciale inevitably will use, confidential information about Varonis's products and product roadmap. This includes information about Varonis's customers' and prospects' needs, preferences, deal terms, procedures and protocols for providing technical support and after sales services, as well as strategies for responding to competitors and securing business relationships. The disclosure or misuse of Varonis's confidential information will disadvantage Varonis and damage its market position, which Varonis developed through considerable investment of time, effort, and money.

In fact, a Senior Sales Engineer at Cyera plays a crucial role in driving revenue growth by identifying and capitalizing on sales opportunities that maximize the full potential of Cyera's products and services, much like Guanciale's role at Varonis. Further some of his key responsibilities

9

at Cyera include diagnosing and communicating customer business challenges, designing tailored information availability solutions, delivering compelling proof-of-value (PoV) presentations and use case demonstration at customer sites, consulting with key stakeholders, leading technical demonstrations to support the sales process, coordinating internal resources through cross-functional collaboration, supporting the development of a scalable and repeatable business model, acting as the primary technical contact for their expanding channel partner network, and representing Cyera at key marketing events.[3] These functions are nearly identical to those Guanciale performed at Varonis, as a Sales Engineer, Sales Engineering Team Lead and Manager, and Strategic Sales Engineer.

If Guanciale is allowed to continue using the information in his head that is based on Varonis's confidential information, Guanciale (and Cyera) will have an unfair advantage and be able to design products and pitch to customers and business partners using that same proprietary information. In doing so, Guanciale has put himself in an unfair, advantageous position to challenge and harm Varonis's business on behalf of his new employer, in violation of the Employment Agreement, given that his new role as Senior Sales Engineer at Cyera inevitably exploits his knowledge about Varonis. *See HR Staffing*, 627 F. App'x at 174 (affirming entry of preliminary injunction where the defendant "received information about [the employer's] strategic plans, and the risk of misuse of this information could lead to lost business opportunities and thereby harm [the employer]."). As a result of Guanciale's conduct and inevitable disclosure and use of confidential information, Varonis will lose customers, business relationships, and the goodwill it has built up over the years, none of which can be measured with monetary damages. *See, e.g.*, *Singh*,

---

[3] A description of the typical responsibilities of a Cyera Sales Engineer were found on a Cyera online job posting at https://www.comeet.com/jobs/cyera/17.008/careers/A2.B4E (last accessed Apr. 11, 2025).

2015 WL 5458960, at *9.

    **B.**    **Varonis is likely to succeed on the merits and (at the very least) can demonstrate a sufficient serious question going to the merits to make its claims fair grounds for litigation**.

        **1.**    **Delaware law governs the Employment Agreement**.

Varonis asserts a breach of contract claim. The parties explicitly chose Delaware law to govern Guanciale's Employment Agreement. (Emp't Agreement § 14(A).)

In Delaware, the elements of a breach of contract claim are: "(1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 389 (3d Cir. 2016); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Further, in order for a restrictive covenant to be enforceable, it must "(1) meet general contract law requirements, (2) be reasonable in scope and duration, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *Tristate Courier & Carriage, Inc. v. Berryman*, 2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004).

        **2.**    **The basic elements of a valid contract and breach are established here**.

The Employment Agreement satisfies the requirements of a valid contract: mutual assent and consideration. *See All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *3 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005). Varonis offered Guanciale employment and contemporaneously presented to him the Employment Agreement, which included restrictive covenants. The face of the Employment Agreement and its signatures show mutual assent. Guanciale has breached his restrictive covenants. His position at Cyera is similar to his positions at Varonis, performing essentially the same functions, for the benefit of a company that offers security management products and services similar to those offered by Varonis, *e.g.*, managing customer and partner relationships to drive sales of security solutions that perform and/or have many similar functions or

11

features, delivering tailored solutions, and acting as the main technical contact for key partners. (*See* Emp't Agreement § 7(A)(iii).) Thus, by joining Cyera's employ, Guanciale has breached the Employment Agreement and the harm to Varonis is irreparable and immeasurable. (*See id.* § 12(C)-(D).) Similarly, there is no way for Guanciale to perform his duties for Cyera without breaching his obligations to refrain from interfering with Varonis's business relations because his new role necessarily requires exploiting the knowledge he acquired while employed at Varonis. (*See* Pomeroy Decl. ¶¶ 36).

**3.**    **The restrictive covenants are reasonable in scope and duration**.

At the outset, Guanciale acknowledged that the restrictive covenants are "necessary to protect the Company Confidential Information." (Emp't Agreement § 7(C).) Guanciale also agreed that "[t]he time, geographic and scope limitations of my restrictive covenant obligations are fair and reasonable in all respects, especially in light of the Company's need to protect Company Information and the international scope and nature of the Company's business." (Emp't Agreement § 7(C).) Guanciale should be bound to the acknowledgments he made, which were given in consideration for his employment with the Company.

*Nondisclosure covenant.* Section 2 of the Employment Agreement prohibits Guanciale from (1) using Varonis's confidential information "for any purpose whatsoever other than for the benefit of the Company in the course of [his] employment" and from (2) disclosing it "to any third party without [Varonis's] prior written authorization." (Emp't Agreement § 2(B).) Section 2 defines "Confidential Information" as "information that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential," and provides numerous specific examples. (*Id.* § 2(A).) Exceptions to this definition encompass information "publicly known or made generally available" before Guanciale received it, information that

12

"becomes publicly known or made generally available after disclosure by [Varonis] to [Guanciale] through no wrongful action or omission" by him, and information in Guanciale's "rightful possession, without confidentiality obligations, at the time of disclosure by" Varonis, as shown by written records. (*Id.*) The nondisclosure covenant also contains temporal limitations. Guanciale's obligations with respect to specific confidential information cease "upon the earlier of (1) the date on which such information ceases to constitute Company Confidential Information under **Section 2.A,** and (2) "thirty-six (36) months after termination of . . . employment" for non-trade secret information. (*Id.* § 2(B).) Courts regularly enforce reasonable covenants like this one protecting an employer's confidential business information. *See, e.g.*, *TP Grp.*, 2016 WL 5864030, at *1–2 (issuing injunction prohibiting "use or disclosure of confidential information [employee] learned during the course of his employment"); *Sensus USA*, 2016 WL 1466488, at *1, *9 (same). Thus, the nondisclosure covenant is reasonable in scope.

*Non-solicitation covenants*. The Employment Agreement contains two non-solicitation covenants, both limited to the 12-month period following the end of Guanciale's employment. (Emp't Agreement § 7(B)(1)–(2).) The customer non-solicitation covenant prohibits Guanciale from contacting "for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's business in any way" any Varonis customer. The definition of "Customer" is limited to "persons or entities that have used, inquired of or been solicited by me for the Company's services" during the two years prior to the end of Guanciale's employment or about whom Guanciale "learned material non-public information" while employed by Varonis. (*Id.* § 7(B)(1).) The employee non-solicitation covenant prohibits Guanciale from (1) soliciting any Varonis employee or contractor to terminate their working relationship with Varonis, (2) soliciting any Varonis employee or contractor to "be

13

employed by or provide services to any person or entity other than" Varonis, and (3) hiring, employing, or engaging any Varonis employee or contractor. (*Id.* § 7(B)(2).) This covenant is limited to only employees and contractors who either were employed by or engaged with Varonis at the time Guanciale's employment ended or terminated their employment or engagement with Varonis in the 12-month period immediately before. (*Id.*) These covenants are well within the parameters of those regularly enforced by Delaware courts. *See, e.g.*, *Sensus USA*, 2016 WL 1466488, at *1 (issuing injunction and enforcing covenant prohibiting the defendant "from soliciting Sensus' customers or employees for two years"); *Atl. Diving Supply, Inc. v. Moses*, 2014 WL 3783343, at *1, *7 (E.D. Va. July 31, 2014) (applying Delaware law, issuing injunction, and enforcing 12-month covenants prohibiting solicitation of customers and vendors/suppliers); *Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992).

*Non-interference covenant*. The Employment Agreement also contains a separate 12-month non-interference covenant, overlapping partially but not entirely with the non-solicitation covenants. It prohibits Guanciale from "do[ing] anything to discredit or otherwise injure the reputation or goodwill of the Company," soliciting any "existing or prospective counterparty" of Varonis to divert its business away from Varonis, or interfering with Varonis's "relationship with any party or existing or prospective counterparty." (Emp't Agreement § 7(B)(3).) By limiting itself to apply to parties engaged in actual or prospective business with Varonis, this covenant advances Varonis's legitimate interests and is no broader than necessary to do so.

*Non-compete covenant*. The Employment Agreement's non-compete covenant prohibits Guanciale from working for "any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to [Varonis's] business," for the 12 months following the end of his employment. (Emp't

14

Agreement § 7(A).) The covenant also requires Guanciale to disclose in writing to Varonis the name and address of his new employer, his position there, and a general description of his duties and responsibilities, at least five days before starting his new employment. (*Id.*) Guanciale has not complied with this requirement. Although the non-compete covenant is not limited in geographic scope, "the absence of a geographical limitation does not render the restrictive covenant unenforceable per se." *Gas Oil Prods., Inc. of Del. v. Kabino*, 1987 WL 18432, at *2 (Del. Ch. Oct. 13, 1987). Delaware courts "are not averse to broad geographical scopes when they are necessary to protect the legitimate business interests of the party trying to enforce the covenant." *Atl. Diving*, 2014 WL 3783343, at *7 (footnote omitted) (quoting *O'Leary v. Telecom Res. Serv., LLC,* 2011 WL 379300, at *5 (Del. Super. Jan.14, 2011)); *see also Pfuhl*, 1992 WL 345465, at *12 (noting that even in the absence of a geographical scope, if "the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location." (emphasis omitted)). Here, the restriction lasts only 12 months. Varonis is seeking limited relief, specifically in the form of injunctive relief, to protect its goodwill, customer relationships, and legitimate business interests. Because Varonis operates on an international scale, the scope of the covenant reflects the global nature of its business activities and the potential impact of any breach across multiple geographic regions. Thus, a more expansive geographical limitation is justified under these circumstances. This covenant is based on the need to prevent harm to Varonis's established business, particularly in light of the competitive risks posed by Guanciale's actions. As such, this covenant is valid under Delaware law.[4]

---

[4] Even if the Court were to find that any covenant is overbroad in any respect, the parties have agreed to replace any such overbroad term with a valid one. (Emp't Agreement § 7(D)); *see, e.g.*, *Del. Express*, 2002 WL 31458243, at *14, *24 (issuing injunction modifying length of non-

### C.    The balance of equities favors Varonis.

"Before granting an injunction, a district court must balance the relative harm to the parties, *i.e.*, the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Here, the injury being suffered by Varonis if injunctive relief is not issued far outweighs any harm to Guanciale if it is issued. As a direct result of his employment with Varonis, Guanciale is in a position to interfere with Varonis's customer and key business relationships, as well as its opportunities, thereby unfairly damaging its competitive standing. This is precisely due to the access he had to confidential business information and relationships during his employment with Varonis. Varonis merely seeks to maintain the status quo and prevent Guanciale from breaching his contractual obligations and engaging in unfair business practices. The restrictive covenants do not prevent Guanciale from working; they only bar him, for just one year, from competing or providing services to a company that competes with Varonis, so as to ensure that he does not disclose or use Varonis's confidential business and trade secret information for his personal benefit or the benefit of his new employer.

By contrast, the potential harm to Guanciale is minimal, as he has conceded—Guanciale acknowledges that his obligations under the Employment Agreement are necessary to protect Varonis's confidential information (Emp't Agreement § 7(C)), and "consent[s] to the issuance of an injunction" as "any breach of threatened breach of such an agreement will cause irreparable injury." (*Id.* § 12(D); *see also id.* § 2(B) (acknowledging Varonis's legitimate business interests in its confidential information, which gives Varonis an advantage).) Guanciale is and will remain free

---

compete covenant from three years to two); *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 468–69 (Del. Ch. 1977) (revising the geographic reach of a non-compete covenant). The Court should give effect to the parties' intent in agreeing to these contractual terms.

to work on products that do not compete with Varonis and has the opportunity to work at any number of other companies where his work would not lead to the use or disclosure of Varonis's confidential information. (*See id.* § 7(C)) (Guanciale acknowledging that "[he] will not be precluded from gainful employment by abiding by the restrictions in this Agreement.")). Varonis is simply trying to prevent its investment in Guanciale from being weaponized against it. As such, the balance of the equities decidedly weighs in favor of Varonis. *See TP Grp.*, 2016 WL 5864030, at *2 ("Defendant's extensive knowledge of Plaintiff's confidential information would make 'his competition with plaintiff's business . . . particularly effective and unfair,' tipping the balance of equities in favor of enforcement." (quoting *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 4 (Del. Ch. 1987))).

### D.    Granting injunctive relief is in the public interest.

Denying injunctive relief would reward Guanciale's breach of contract and misconduct. Enforcing the covenants at issue in this case will not harm the public. "Parties who freely enter into binding agreements should expect to comply with the terms of those agreements." *Sensus USA*, 2016 WL 1466488, at *8. The Employment Agreement here "was entered into by two competent, business-savvy parties and was supported by consideration." *Id.* It also provides that due to the sensitivity of Varonis's confidential information, Varonis would be irreparably harmed by a violation of the restrictive covenants, and that injunctive relief may be sought as a result. (Emp't Agreement § 12(D).) "It is in the interest of the public to hold parties to the very terms upon which they negotiated and agreed to be bound." *Sensus USA*, 2016 WL 1466488, at *8. Additionally, "protecting Plaintiff's confidential information outweighs the temporary restrictions on Defendant's employment options." *TP Grp.*, 2016 WL 5864030, at *3. The time-limited restrictive covenants at issue in this case would not restrain competition. Cyera developed, marketed, and sold its security solutions before its employment of Guanciale and it will be able to continue doing so

17

without employing Guanciale—for one year—to provide services similar to the services Varonis provided and involving the sale and development of products with which Guanciale was involved and about which he obtained confidential information during his almost ten years of employment at Varonis.

### E. Varonis is entitled to injunctive relief for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) and the Delaware Uniform Trade Secrets Act, 6 Del. C. §§ 2001–2009.

Varonis also has a statutory right to injunctive relief. Varonis is entitled to injunctive relief under the Defend Trade Secrets Act ("DTSA"). The DTSA expressly allows courts to grant injunctive relief "to prevent an actual or threatened misappropriation," and "if determined appropriate by the court, requir[e] affirmative actions to be taken to protect the trade secret." 18 U.S.C. § 1836(b)(3)(A)(i)-(ii). Further, the DTSA prohibits both the actual and the attempted misappropriation of "trade secrets." *Id.* § 1832(a). Trade secrets include "all forms and types of financial, business . . . technical, economic, or engineering information, including . . . plans, compilations . . . methods, techniques, processes, procedures . . . tangible or intangible." *Id.* § 1839(3). To state a claim under the DTSA, a plaintiff must establish: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); 18 U.S.C. § 1839(5). Further, a plaintiff must adequately identify what it contends to be a trade secret. *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 381 (3d Cir. 2021).

Here, Varonis's information is related to interstate or foreign commerce due to the nature of Varonis's business, which focuses on servicing customers globally, providing security

management solutions both in the United States and in foreign countries. Further, the information

Varonis imparted to Guanciale throughout his employment with Varonis constitutes trade secrets,

including, without limitation, Varonis's unique competitive analyses, customer information, pric-

ing strategies, and product development roadmaps. The information described above derives inde-

pendent economic value, actual or potential, from not being generally known to, and not being

readily ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use. Varonis has also reasonably taken several steps to maintain its trade secrets as

confidential. By way of example, Varonis deploys confidentiality agreements with its employees,

circulates internal policies stressing the confidentiality of its business information, and executes

letters to departing employees reminding them of their post-employment obligations to keep con-

fidential Varonis's information.

In *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 2177559 (D. Del. June 16,

2022), this Court found sufficient evidence of misappropriation to deny summary judgment on the

plaintiff's claim under the Defend Trade Secrets Act based simply on the employee's access to the

former employer's trade secrets during his employment and his subsequent employment with a

competitor in a substantially similar role:

> Mr. Bulsara's argument seems to be there is no smoking gun, thus there is no evi-
> dence of misappropriation. This is simply not the case. There is no dispute the mis-
> appropriation at issue here is use and/or disclosure. There is evidence in the record
> of Mr. Bulsara's employment and job functions at Allscripts and now with Andor
> which are the same or substantially similar, with some instances of the same or
> similar work for the same clients. There is evidence Mr. Bulsara had access to All-
> scripts' trade secrets during his course of employment. . . . A reasonable juror could
> infer Mr. Bulsara knew of, and used or disclosed, Allscripts' trade secrets based on
> this circumstantial evidence.

*Id.* at *3.

Here, the similarity between Guanciale's prior responsibilities at Varonis and his current

position at Cyera as Senior Sales Engineer creates a substantial likelihood that Guanciale will

inevitably use and/or rely upon Varonis's confidential and proprietary information in performing his duties. Given Guanciale's yearslong tenure at Varonis, during which he gained extensive knowledge into the Company's customers, product development roadmap, competitive analyses, and product information, his contribution to Cyera derives solely from exploiting his knowledge gained exclusively at Varonis. Allowing Guanciale to utilize this information in service of Cyera will irreparably harm Varonis by eroding the considerable investments it has made in cultivating customer relationships, developing competitive strategies, and enhancing and protecting its proprietary technologies.

For the same reasons, Varonis is entitled to injunctive relief on its claim under the Delaware Uniform Trade Secrets Act ("DUTSA"), codified at 6 Del. C. §§ 2001–2009, which prohibits both the actual and threatened misappropriation of trade secrets. *See Wilmington Trust Co. v. Consistent Asset Management Co.*, 1987 WL 8459, at *3–4 (Del. Ch. Mar. 25, 1987) (citation omitted).

## CONCLUSION

Plaintiff Varonis Systems, Inc. respectfully requests that the Court grant its motion, issue a preliminary injunction, and issue such other and further relief as the Court deems just and proper.[5]

*[Signature follows on next page]*

---

[5] The Employment Agreement provides that "in the event the Company has a good faith basis for seeking injunctive relief, the Company shall be entitled to recover reasonable costs and attorneys' fees." (Emp't Agreement § 12(D) (capitalization omitted).) Varonis has a good faith basis for seeking injunctive relief for the reasons discussed above. Accordingly, Varonis intends to – and reserves all rights to – seek an award of its reasonable costs and attorneys' fees incurred in bringing this action and seeking this injunctive relief.

OF COUNSEL:
(*pro hac vice* forthcoming)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL  60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com

Dated:  May 8, 2025

POTTER ANDERSON & CORROON LLP


By:  */s/ John A. Sensing*
     Timothy R. Dudderar (No. 3890)
     John A. Sensing (No. 5232)
     Hannah L. Paxton (No. 6398)
     Hercules Plaza, 6th Floor
     1313 North Market Street
     P.O. Box 951
     Wilmington, DE 19801
     (302) 984-6000 – Telephone
     tdudderar@potteranderson.com
     jsensing@potteranderson.com
     hpaxton@potteranderson.com

*Attorneys for Plaintiff Varonis Systems, Inc.*