IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VARONIS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW GUANCIALE and CYERA US INC., <br><br> Defendants. | Civ. No. 1:25-cv-00571-UNA |

## DECLARATION OF GREGORY POMEROY

GREGORY POMEROY, declares pursuant to 28 U.S.C. § 1746 and subject to the penalty of perjury, that the following is true and correct:

1.  I am Senior Vice President of World Wide Sales at Varonis Systems, Inc. ("Varonis" or the "Company"), serving in this position since February 2024. I submit this declaration in support of Plaintiff's motion for a preliminary injunction and expedited discovery. I have personal knowledge of the matters asserted in this declaration.

2.  I have over 20 years of information security and sales experience, many of which include sales management and leadership roles at Varonis, where I have been employed in several capacities since 2008. I am responsible for driving revenue and leading sales operations across the world. As such, I am fully familiar with the functions Defendant Matthew Guanciale performed until his recent resignation, as well as the confidential and trade secret information that he had access to, and in-depth knowledge of, by virtue of his employment at Varonis.

### Guanciale's work at Varonis

3.  As Senior Vice President of World Wide Sales, I oversee Varonis's sales organization throughout the world, which included overseeing Guanciale in his capacities as Sales

Engineer, Sales Engineering Team Lead and Manager, and Strategic Sales Engineer.

4. From the beginning of his employment until his resignation, Guanciale was intimately involved in, and had detailed knowledge of, Varonis's products (including information about unique technologies or processes that give Varonis products a competitive advantage); product development roadmaps; product integration capabilities; procedures and protocols for providing technical support and after-sales services; and competitive analyses (including analysis of our competitors' products, their strengths and weaknesses, and the methods that Varonis employs to position itself against such products).

5. As Sales Engineer, from his hiring in 2018 until April 2023, and as a Strategic Sales Engineer from February 2024 until the end of his employment, Guanciale worked with Account Managers and partners with the technical aspects of Varonis's products and services, for both new and existing customers. Additionally, Guanciale worked with the sales team to understand customer needs and offer technical solutions, present and demo Varonis products to potential and existing customers, including presentations to C-Level Stakeholders, create and present technical proposals, advise customers on best practices for data security, cloud computing, and cybersecurity, develop sales strategies and account plans, keep up with industry trends and emerging technologies to position Varonis solutions, provide customer feedback to further product development, attend industry events including conferences to promote Varonis and build expertise, work with sales to exceed targets, integrate Varonis solutions into our customers' environment, and enhance the technical expertise of partners.

6. Guanciale was promoted to the position of Sales Engineering Team Lead and Manager, which he held from April 2023 to February 2024. In this role, he collaborated with sales management to identify new sales opportunities and improve the sales engineering methodology.

171948999v4

Guanciale was also responsible for hiring, mentoring, and assessing Sales Engineers in their pre-sales and account management responsibilities. This was a management and team leader position, in which Guanciale led the Sales Engineering team in adhering to sales methodologies and best practices ensuring optimal use of Varonis's software, mentored Sales Engineers ("SEs") continuously, developed their technical and non-technical pre-sales skills to secure new customers, managed existing accounts, evaluated SEs' technical capabilities to ensure they met the required knowledge levels and effectively performed their responsibilities, provided SEs with ongoing performance evaluations and identified growth opportunities, coached and provided feedback to help them meet objectives, reinforced sales methodologies, assisted SR/SE teams in their sales campaigns and customer management efforts, analyzed customer data, identified potential issues and delivered tailored solutions, articulated technical details of Varonis products and services, conducted product demonstrations, and partnered with sales management to identify opportunities for refining and standardizing best practices.

7. In February 2024, Guanciale took the position of Strategic Sales Engineer due to organizational restructuring at Varonis. Strategic Sales Engineers collaborate with strategic customers, who are typically larger and more significant. Consequently, Strategic Sales Engineers are generally more experienced.

8. Varonis is a pioneer in data security and analytics. Varonis focuses on protecting enterprise data—sensitive files and emails; confidential customer, patient, and employee data; financial records; strategic and product plans; and other intellectual property.

9. Varonis's data security platform detects cyber threats from internal and external actors by analyzing data, account activity, and user behavior. It helps prevent and mitigate risks by securing sensitive data while maintaining a secure environment through automation.

3

10. Varonis's products address additional important use cases, including data protection, data governance, Zero Trust architecture, compliance, data privacy, classification, and threat detection and response.

11. Varonis has customers spanning leading firms in the financial services, public, healthcare, industrial, insurance, energy and utilities, technology, consumer and retail, media and entertainment, and education sectors.

12. The market for data security solutions is very competitive. While a new entrant into the data security software market, Cyera US Inc. is a direct competitor to Varonis.

13. As a Sales Engineer, Sales Engineering Team Lead and Manager, and Strategic Sales Engineer, Guanciale was integral in Varonis's efforts to penetrate the data security market and expand Varonis's share of the available market in which Cyera is competing. In those positions, Guanciale had access to and was intimately familiar with, among other things, Varonis's customers and prospective customers (including their deal terms, requirements, and timing for opportunities), its business arrangements with partners, business plans, costs and pricing strategies for Varonis's products, Varonis's products and products in development, and marketing and sales strategies to advance those products. We consider this information highly confidential, and we would never want a competitor to have this information, which would be immeasurably detrimental to Varonis.

14. To secure our confidential business information, Varonis invests in and deploys multiple means to manage, control, and restrict access to its systems. Varonis has layers of systems with complex permission systems that are each managed in a different way. The Company's security measures restrict the number of people and/or the people who should have access to particular aspects of the Company's business. Thus, for example, information may be restricted to relevant sales teams or by territories and hierarchies.

15. Guanciale had access to layers of these systems and knowledge of the confidential information stored in and/or protected by them to enable to him to advance Varonis's business. Guanciale also acquired knowledge of confidential information during the course of performing his duties and contributed to and/or was the source of some of the protected confidential business information during his yearslong employment with Varonis (*e.g.*, derived from direct customer/prospective customer and partner relationships).

16. Guanciale cannot simply purge Varonis's confidential information from his head. It is implausible, for example, for Guanciale merely to block from his memory the price for a particular Varonis product or service a customer paid when attempting to pitch and competitively price a similar competing Cyera product to the same Varonis customer faced with either renewing Varonis's product or service or selecting an alternative option—particularly when Guanciale may have had a yearslong relationship with that customer, which he was tasked with nurturing for Varonis's benefit, and may have played a key role in that expiring transaction. As such, Guanciale's employment with Cyera essentially unlocks the gates for Cyera to access or benefit from Varonis's confidential business information.

17. A critical function of Guanciale's role as Sales Engineering Team Lead and Manager was to lead the Sales Engineering team in managing customers and maintaining access to them. To that end, Guanciale built and cultivated relationships with numerous prospects and customers to promote sales, ensuring exiting customers renew their Varonis licenses and expand their Varonis portfolio to additional products.

18. Additionally, in his role as Sales Engineer, he worked with Account Managers and key partners with the technical aspects of commercial activities, both for new and existing opportunities. He worked closely with our sales team to understand our customers' needs and deliver

tailored technical solutions. In this customer-facing role, he engaged regularly with our current customers, prospects, and former customers, tapping into our full customer base. During his time in this role, our Company helped develop his technical expertise, which he in turn, used to enhance the technical expertise of our partners.

19. Guanciale also has extensive knowledge of Varonis's products, product development roadmaps, products integration capabilities, procedures and protocols for providing technical support and after-sales services, and importantly, competitive analysis.

20. Guanciale knows how we work to become the preferred purveyor of security management solutions for customers and potential customers. If Cyera were to gain this knowledge, along with insight into the customer pools Varonis targets, it would place Varonis's business in jeopardy because Guanciale could leverage this knowledge, developed over years at Varonis's expense, to undermine Varonis's products and services.

21. Besides identifying and maintaining the Company's access to potential customers (with the Company's resources), Guanciale also played a critical role in securing customers and cultivating customer relationships. Inherent to this role, Guanciale acquired substantial knowledge of Varonis's customers' business needs and wants, as well as detailed and highly technical information about Varonis's products, products in development, and competitive strategies—the combination of which uniquely empowers Guanciale to damage Varonis's business.

22. Varonis considers the identities of its customers (and deal terms with them), as well as prospective customers who may have an interest in or need for the Company's products and prospects that do not use or need, declined to use, or do not like Varonis's products or services, to be highly confidential.

23. Varonis expended substantial efforts in developing information about customers

6

and prospective customers' particular needs and preferences, and the misuse or disclosure of such information will damage Varonis and erode its position as one of the leaders in data security and analytics.

24. By virtue of his positions as Sales Engineer, Sales Engineering Team Lead and Manager, and Strategic Sales Engineer, Guanciale was deeply involved in the sale of security products customized for existing and prospective customers. Customers and prospective customers regularly disclosed sensitive, non-public information about their information systems and particular business needs. With that information, Guanciale presented demonstrations of the Company's products tailored to address the customers' specific needs.

25. As part of the sales process, and among his chief responsibilities in partnering with Sales Management, Guanciale educated both existing and prospective customers about Varonis's capabilities and, as such, the Company relied on Guanciale's credibility and expertise in his data security solutions. For that reason, Guanciale had access to and knowledge of highly technical information about Varonis's products and product pipeline, as well as the Company's business plans and strategies. This means that Guanciale possesses privileged access to detailed information about the capabilities of Varonis's products, as well as information about challenges that Varonis's products face—information which Guanciale is in a position to convey to Cyera, a Varonis competitor, to strengthen its products and pitch when competing with Varonis products for a customer. This information is highly confidential and proprietary, and restricted to select personnel within the Company, which included Guanciale.

26. In addition to Guanciale's knowledge of the strengths and challenges of Varonis's products, Guanciale directly received, had knowledge of, access to information about functionalities customers and prospective customers needed, the degree to which they were satisfied with

171948999v4

Varonis's products in servicing their needs, and the scope of the customers and prospective customers' needs that Varonis's products and the products of its competitors were able to service. This was because part of his responsibilities included providing customer feedback to enhance our products and services.

27. Guanciale was also responsible for maintaining and cultivating customer relationships, including learning about customers and prospective customers' ongoing and anticipated future needs and requests for product features. In fact, Guanciale acted as the liaison between Varonis and its customers and one of its main channel through which Varonis learned about customers' feedback about Varonis's products, customers' technical issues, and product features that customers did not use or wanted and/or would need but did not have. Guanciale relayed this information to Varonis's engineering and/or technical team, to resolve those issues as well as strategize and identify functionalities to test, shelve, or further develop.

28. Exacerbating our concerns about the damage Varonis may suffer as a result of Guanciale's current employment with Cyera, Guanciale is able to use his knowledge about those functionalities Varonis's customers need, how, and for what purpose customers use security features, and what capabilities those customers are expected to need as their businesses grow or mature—which he learned solely through his employment with Varonis.

29. Due to Guanciale's critical role in maintaining customer relationships, so that he could address customers' business needs, Varonis educated Guanciale about the Company's near-term, immediate term, and long-term product roadmap. Through meetings and other updates, Guanciale was apprised of the Company's product pipeline to enable Guanciale to provide an estimate as to whether and when certain products and/or features would be deployed and strategize a response insofar as products or features were not in development.

30.     At the time of his separation from employment, Guanciale had (and continues to have) knowledge of Varonis's product roadmap. Unauthorized disclosure could result in significant commercial harm to Varonis.

31.     In his capacity working with the sales team conducting Varonis's transactions with prospective and existing customers, Guanciale acquired knowledge of the amounts Varonis's customers paid and/or were willing to pay for products or services.

32.     Similarly, Guanciale accumulated approximately seven years' worth of information concerning the Company's licensing and pricing strategies, including Varonis's costs and what Varonis would be willing to price certain products and features either to secure a new transaction or obtain a specific customer's renewal of Varonis's products or services.

33.     Guanciale was aware of the extent and the circumstances under which Varonis could and/or would offer discounts.

34.     In sum, Guanciale was uniquely situated as the nexus between Varonis and its customers, prospective customers, and business partners, and has seven years' worth of knowledge of Varonis's highly restricted and confidential information—which, if accessed or used on behalf of its competitors, poses a grave commercial threat.

35.     For example, Guanciale knows not only the identity of Varonis's customers but also when customers' contracts with Varonis are scheduled for renewal and what products customers use. And since Guanciale also knows the identities of former customers who no longer use Varonis's products, he is uniquely positioned to poach specific present and former customers of Varonis. Additionally, Guanciale knows what products those customers use and/or need, which enables Guanciale to pitch, on behalf of Cyera, to prospective customers and/or offer deals tailored to their needs or preferences—all knowledge acquired solely by virtue of his years long employment with

Varonis.

36. As a primary face of Varonis for many of the Company's customers and business partners, Guanciale is able to leverage his credibility as a former insider and exploit this knowledge about our products' challenges to the advantage of Cyera.

37. Coupled with Guanciale's wide-ranging knowledge about Varonis's customers and their technological needs and preferences, Guanciale's in-depth, technical knowledge of the strengths and limitations of our products uniquely positions Guanciale to damage the Company's business and competitive advantage to an extent that cannot be measured or repaired. Guanciale has a deep understanding of Varonis's product capabilities and challenges, as well as our strategic positioning against competitors like Cyera. This expertise allows Guanciale to identify key differentiators and offer valuable insights to Cyera so that they can effectively position themselves when selling against Varonis. Furthermore, Guanciale can guide Cyera in refining its product development strategies to capitalize on areas where Varonis has challenges, giving Cyera a competitive edge in the market.

38. Additionally, with access to Guanciale's knowledge of what Varonis's customers pay and/or are willing to pay, as well as Varonis's pricing strategies and discount structures, Cyera is able to advantageously price its products to Varonis's customers and prospective customers and undercut Varonis's existing business relationships.

39. Guanciale also has the ability to compound the damage he is causing to Varonis by developing, in competition with Varonis, Cyera's sales teams and sales capabilities using training and confidential information he acquired from his employment at Varonis.

40. Varonis places immeasurable value in the information Guanciale has about the Company's customers, its products, and its strategies for securing deals and differentiating

171948999v4

Varonis's products from other competitors. The disclosure of this information would result in an immeasurable loss of Varonis's business and market position.

**Guanciale's employment at Cyera and violation of the Employment Agreement**

41. On March 11, 2025, Guanciale informed his manager Scott Shafer that he was resigning and going to Cyera, Varonis's direct competitor. He also communicated this same information to the Account Managers that he worked with, Gus Osorio and Richard Haddad.

42. On March 17, 2025, Guanciale officially submitted his two weeks' notice of resignation from Varonis.

43. Sam Wethje, Vice President of North America Sales, spoke with Guanciale, and then I had a conversation with Guanciale. Guanciale's direct manager, Scott Shafer, also reached out to encourage him to reconsider his decision to leave Varonis.

44. I was surprised to learn that Guanciale was moving to a direct competitor. Under those circumstances, Guanciale's continued access to highly confidential information, as well as relationships with Varonis customers and business partners (and strategic information about them), posed an unacceptable threat to Varonis's business.

45. Varonis invests substantial time and resources to secure placement of its product and cultivate goodwill and social capital with customers and key partners, as well as to aggregate intelligence and convert those relationships into sales.

46. Given the threat posed by Guanciale's employment with a competitor, although Guanciale gave two weeks' notice, I decided to exit him immediately and his last date of employment was March 18, 2025.

47. On March 19, 2025, Varonis Human Resources emailed Guanciale a letter providing him administrative information related to his termination, providing the company's

acknowledgement of his termination, and reminding him of his post-employment obligations. Additionally, Varonis sent Guanciale a copy of the "Termination Certification" (which he originally received upon signing the Employment Agreement) via DocuSign for Guanciale's completion. Despite receiving and viewing the Termination Certification via DocuSign on the same date Varonis emailed it, Guanciale failed to complete and provide the Termination Certification to the Company as he covenanted. Finally, he has failed to provide a description of his new role as required by the Employment Agreement.

48. On March 21, 2025, Varonis's legal counsel emailed Guanciale a letter reminding him of his obligations under the Employment Agreement and requesting Guanciale's confirmation that he intended to honor his commitments by March 25, 2025.

49. Following his separation, Varonis sent Guanciale several communications, but Guanciale has failed to reply to the Company's entreaties to date to either certify his compliance with the post-employment covenants or confirm he will abide by them.

### Danger to Varonis from Guanciale's employment at Cyera

50. Guanciale's employment with Cyera, in a capacity similar to his role at Varonis, places him in a position where he, by virtue of his position advocating Cyera's products and services, will provide Cyera assistance in competing with and undercutting Varonis and its data security products, with which Cyera competes directly.

51. Indeed, with his years of experience dedicated exclusively to the development, marketing, and sale of Varonis's data security products and solutions, there is little or no function Guanciale could perform for or value he could bring to Cyera's sales operations other than helping Cyera compete with Varonis. Given that Guanciale is now employed as a Senior Sales Engineer at Cyera, his employment with Cyera also places Guanciale in a position by which Varonis's

confidential information will inevitably be used for the benefit for or disclosed to Cyera.

52. Given his knowledge of and access to Varonis's customers and prospective customers, Guanciale can disclose Varonis's confidential information that Guanciale knows only as a result of his employment with Varonis. This information includes purported challenges of Varonis's products that can be used to sway customers and business partners to sell or advocate competitors' products. Guanciale can now use this same information to inform his new employer about market opportunities to develop a capability to fill any alleged gaps left by Varonis to attract Varonis's existing or prospective customers.

53. Because of the relationships Guanciale developed with the Company's customers and business partners and the knowledge he has about Varonis's deal terms, Guanciale also knows the Company's costs and profit margins under the Company's current arrangements. Varonis would never want a competitor to know about its business relationships with customers or business partners or the terms of any agreements between Varonis and any customer or business partner. A competitor's access or knowledge of such information would enable a competitor to undercut Varonis and obstruct its commercialization efforts and business relationships.

54. If Guanciale is allowed to continue his employment with Cyera, it will cause irreparable harm to Varonis. Cyera's employment of Guanciale—with access through him to information about Varonis's products, customers and business partners, pricing strategies, and the Company's business plans—poses an irremediable threat. Once disclosed, the Company's confidential information cannot be recovered, and the competitor's knowledge cannot be expunged.

55. Varonis did not consent to Guanciale's employment with a direct competitor to Varonis's business and products. Guanciale has wide-ranging and deep knowledge of all aspects of Varonis's products, sales and marketing plans, customers and their product needs and deal pricing,

Docusign Envelope ID: 2EC34A52-1E5D-4CB2-8EF7-C574CC19E1E1

business relationships, as well as other non-public information he had access to during his employment with Varonis.

56. Guanciale's employment with Cyera, for the one year following his voluntary separation of employment from Varonis, will damage Varonis's business relationships and competitive advantage and cause losses to Varonis that cannot be measured or repaid with monetary damages.

57. Indeed, in signing his Employment Agreement, Guanciale acknowledged that he would irreparably harm the Company by breaching his post-employment non-disclosure, non-competition, non-solicitation, and non-interference obligations owed to Varonis.

58. Guanciale further acknowledged that his acceptance of the post-employment non-disclosure, non-competition, and non-solicitation obligations owed to Varonis were material to Varonis's decision to employ Guanciale, and Guanciale further acknowledged that the limited restrictions were reasonable given the importance and sensitivity of the information he acquired solely by virtue of his yearslong employment with Varonis.

59. For all of the reasons set forth in this declaration, it is imperative that a temporary restraining order and preliminary injunction be issued enjoining Guanciale from working for Cyera until March 18, 2026, extended by any period of time in which Guanciale has or will be employed by Cyera, and requiring him to comply with all terms of the Employment Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April 17, 2025 | 15:42:03 EDT

Signed by:

GREGORY POMEROY

171948999v3