IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VARONIS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW GUANCIALE and CYERA US INC., <br><br> Defendants. | Civ. No. 1:25-cv-00571-UNA |

## DECLARATION OF DANA SHAHAR

DANA SHAHAR declares, pursuant to 28 U.S.C. § 1746 and subject to the penalty of perjury, that the following is true and correct:

1. I am the Chief Human Resources Officer (CHRO) at Varonis Systems, Inc. ("Varonis" or the "Company"), serving in that position since October 2018. I have been employed at Varonis since May 2013 in various roles in the HR department and I am currently the head of Varonis's entire global HR operation. I submit this Declaration in support of Varonis's motion seeking a preliminary injunction and expedited discovery. I make this declaration of the facts set forth below based on my personal knowledge and the Company's books and records.

2. Varonis employed Defendant Matthew Guanciale starting on or about May 21, 2018, until March 18, 2025, most recently in the position of Strategic Sales Engineer. This was a customer-facing position, in which Guanciale supported Varonis's Account Managers and partners with the technical aspects of commercial activities for new and existing opportunities.

3. In this role, Guanciale's additional responsibilities included working with the sales team to understand customer needs and offer technical solutions, presenting and demonstrating Varonis products to customers, potential customers, and C-Level stakeholders, understanding

1

individual customers' specific needs, integrating Varonis's software solutions in the customer's software environment, creating and presenting technical proposals with detailed plans and integration strategies, advising customers on best practices for data security, cloud computing and cybersecurity, developing sales strategies and account plans with the sales team to meet revenue goals, keeping up with industry trends and emerging technologies to position our Company's solutions, providing customer feedback to further product development, attending industry events including conferences to promote Varonis and build expertise, training other Sales Engineers, integrating Varonis solutions into a customer's environment, overseeing the progress of product presentations, and enhancing the technical expertise of key partners.

    4.    From April 2023 to February 2024, Guanciale worked as a Sales Engineering Team Lead and Manager, whose main responsibilities included hiring, mentoring, and overseeing the team of Sales Engineers in their pre-sales and account management responsibilities. In this role, he led the Sales Engineering team in adhering to sales methodologies and best practices, ensured optimal use of the Customer Relationship Management (CRM), mentored Sales Engineers, managed existing accounts to find upselling opportunities, evaluated other Sales Engineers' technical capabilities, provided growth opportunities in both technical and sales competencies, coached other Sales Engineers, assessed customer information, identified and addressed problem areas, and formulated relevant solutions and presented solutions effectively. He also collaborated with sales management to identify opportunities for refining and standardizing best practices.

    5.    In February 2024, Guanciale took the position of Strategic Sales Engineer due to organizational restructuring at Varonis. Strategic Sales Engineers collaborate with strategic customers, who are typically larger and more significant. Consequently, Strategic Sales Engineers are generally more experienced.

2

6. Pursuant to the offer letter and At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement ("Employment Agreement"), which Guanciale signed as a condition of his employment with Varonis, Guanciale was required to immediately provide Varonis with an executed "Termination Certification" upon his separation from employment with Varonis. A copy of the Employment Agreement is attached to this declaration as **Exhibit 1**.

7. By signing the Termination Certification, Guanciale would be certifying, among other things, that he would honor his continuing post-employment obligations to Varonis. This includes confirming that he would refrain from using or disclosing Varonis's confidential information and would comply with the non-competition and non-solicitation provisions of the Employment Agreement. (*See* Emp't Agreement § 6.) Specifically, the Termination Certification stated, in relevant part:

> I further agree that, in compliance with the [Employment] Agreement, I will preserve as confidential and will not use or disclose without prior authorization any and all Company Confidential Information and Associated Third Party Confidential Information, including trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.
>
> I also agree that for twelve (12) months from this date [of the Termination Certification], I will comply with the non-competition and non-solicitation provisions, as set forth in Paragraph 7 of the [Employment] Agreement.

(Emp't Agreement Ex. B.)

8. Additionally, the Termination Certification required Guanciale to identify his new employer as well as his position there—information necessary for Varonis to assess Guanciale's compliance with his post-employment non-disclosure, non-competition, non-solicitation, and non-

interference obligations owed to Varonis. (*Id.*)

9. On March 11, 2025, Guanciale informed his manager, Scott Shafer, that he intended to start employment with Cyera, Varonis's direct competitor. He also communicated this same information to the Account Managers he worked with, Gus Osorio and Richard Haddad.

10. On March 17, 2025, Guanciale submitted his two weeks' notice of resignation from Varonis.

11. Sam Wethje, Vice President of North America Sales, initially spoke to Guanciale. Greg Pomeroy, Senior Vice President of Worldwide Sales, spoke to him after. Finally, Mr. Shafer urged him to reconsider his decision to leave Varonis.

12. Afterward, Mr. Pomeroy decided to immediately exit Guanciale on March 18, 2025.

13. On March 19, 2025, Varonis Human Resources sent an email to Guanciale providing him with administrative information related to his separation. (**Exhibit 2.**) The email attached a letter from me to Guanciale, acknowledging his resignation and reminding him of his post-employment obligations to Varonis in the Employment Agreement. (**Exhibit 3.**)

14. That same day, Varonis sent Guanciale a copy of the Termination Certification, which he originally received upon signing the Employment Agreement, via DocuSign for Guanciale's completion.

15. According to DocuSign's metadata, Guanciale viewed the Termination Certification on March 19, 2025, at approximately 1:05 p.m., but did not sign it. (**Exhibit 4.**)

16. Despite receiving and viewing the Termination Certification via DocuSign on March 19, 2025 at 1:05 p.m., Guanciale has failed and/or refused to complete and provide the Termination Certification to Varonis.

17. On March 21, 2025, Varonis's legal counsel emailed Guanciale a letter about his continuing post-employment obligations to Varonis. The letter, which is attached to this declaration as **Exhibit 5**, reminded Guanciale, among other things, that he signed the Employment Agreement as a condition of his employment and is bound by non-competition and non-solicitation obligations for one year after his separation. Additionally, the letter reiterated that he is prohibited from disclosing or using Varonis's confidential and sensitive business information other than for Varonis's benefit.

18. More specifically, pursuant to his Employment Agreement, Guanciale may not (i) be employed by, or otherwise act for the benefit of, any company whose business or products are in any way competitive with or similar to Varonis's business or products, (ii) contact any of Varonis's customers, including those who have inquired about or been solicited for the Company's services or products at any time for the two years preceding Guanciale's separation of employment with Varonis, or (iii) solicit, induce, encourage, or attempt to solicit, induce, or encourage, any party not to conduct business with the Varonis, or divert business from the Company, or to cease, limit, or reduce business between any third party and the Company, and/or interfere with Varonis's relationship with any party or existing or prospective business relation of the Company, for at least one year from the separation of his employment with Varonis, *i.e.*, until March 18, 2026. (Emp't Agreement § 7(A)–(B).)

19. The March 21, 2025 letter also informed Guanciale that Varonis considers Cyera a competitor and that his employment with Cyera constitutes a breach of the Employment Agreement, as well as poses a risk of misappropriating Varonis's confidential information.

20. Varonis further advised Guanciale that the Company would be fully prepared to defend its rights under the Employment Agreement and asked that Guanciale confirm to Varonis,

by March 25, 2025, that he has not disclosed any Varonis Confidential Information to any unauthorized recipient and has not solicited and will not solicit any Varonis customer whom he solicited, serviced, or managed while employed by Varonis.

21. According to Guanciale's LinkedIn Profile, a screenshot of which is attached as **Exhibit 6** (last accessed Apr. 24, 2025), Guanciale lists his employment with Varonis as having ended on March of 2025, and lists new employment with Varonis's direct competitor.

22. Guanciale lists Cyera as his new employer, beginning employment in April 2025 as a Senior Sales Engineer. (*Id.*)

23. Under the terms of the Employment Agreement, Guanciale covenanted, "I agree to provide written notification to the Company as to the name and address of my new employer, the position that I expect to hold, and a general description of my duties and responsibilities, at least five (5) business days prior to starting such employment." (Emp't Agreement § 7(A).)

24. To date, Guanciale has provided no reply to Varonis's March 21, 2025 letter. Guanciale has also provided no written notification of the identity of his new employer or a general description of his duties, as required in the Employment Agreement.

25. Guanciale has also not returned a completed and signed Termination Certification, either. (*See id.* § 6.)

26. In executing the Employment Agreement, Guanciale acknowledged and agreed that Varonis was and is engaged in a competitive business; Guanciale obtained knowledge of and access to Varonis's confidential information, as well as developed relationships with Varonis's customers and business partners, by virtue of his position, training, and experience with the Company; and the disclosure or improper use of the Varonis's confidential information would seriously damage the Company and place Varonis at a serious competitive disadvantage. (*See id.* § 7(C).)

27. Varonis did not consent to Guanciale's current employment with Cyera or otherwise release Guanciale of any of his obligations under the Employment Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Date: April 17, 2025 | 15:20:03 EDT

*Dana Shahar*
DANA SHAHAR

171949149v3