# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VARONIS SYSTEMS, INC.,

        Plaintiff,

    v.

MATTHEW GUANCIALE and CYERA
US INC., and DAVID SCHMID,

        Defendants.

C.A. No.: 1:25-cv-00571-UNA

## OPENING BRIEF OF DEFENDANT CYERA US INC. IN SUPPORT OF ITS MOTION TO DISMISS

Dated: July 16, 2025

**OF COUNSEL**

Adam R. Roseman, Esq. (*pro hac vice*)
REED SMITH LLP
1717 Arch St., Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8103
aroseman@reedsmith.com

Garrett Parks, Esq. (*pro hac vice*)
REED SMITH LLP
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
gparks@reedsmith.com

Respectfully submitted,

**REED SMITH LLP**

*/s/ Justin M. Forcier*
Brian M. Rostocki (No. 4599)
Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7500
brostocki@reedsmith.com
jforcier@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

I.      SUMMARY OF ARGUMENT.................................................................................1

II.     BRIEF STATEMENT OF THE ALLEGATIONS.............................................................2

     A.     The Parties ..........................................................................................2

     B.     The Individual Defendants' Restrictive Covenants .................................2

     *C.*     Guanciale's Employment with Plaintiff and Cyera. .................................4

     D.     Schmid's Employment with Plaintiff and Cyera. ....................................5

     E.     Plaintiff's Allegations Against Cyera. ....................................................6

III.    PROCEDURAL HISTORY ......................................................................................6

IV.     ARGUMENT .......................................................................................................8

     A.     Legal Standard. ...................................................................................8

     B.     Plaintiff's Tortious Interference Claims (Counts V & VI) Fail as a Matter of Law..8

         1.     The Restrictive Covenant Agreements' Non-Competes are Invalid and Unenforceable. ..............................................................................9

             a.     The Non-Competes are Geographically Overbroad. .........................9

             b.     Plaintiff Cannot Establish the Non-Competes are Tied to a Legitimate Business Interest. ...........................................................11

         2.     Plaintiff Cannot Establish the Remaining Elements of its Tortious Interference Claims. ......................................................................11

         3.     Delaware's Anti-Bootstrapping Doctrine Bars Plaintiff's Tortious Interference Claims. ......................................................................12

         4.     Plaintiff's Tortious Interference Claims are also Preempted by the DUTSA. .......................................................................................13

     C.     The FAC Fails to State a Claim Under the DTSA (Count III). ...............14

         1.     Plaintiff Fails to Identify the Trade Secrets at Issue With Sufficient Specificity. ...................................................................................14

         2.     The FAC Does Not Allege Actual or Threatened Misappropriation, and the Inevitable Disclosure Doctrine Does Not Support a DTSA Claim..............16

     D.     The DUTSA Claim Fails as a Matter of Law (Count IV).......................19

V.      CONCLUSION...................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,
    631 F. Supp. 2d 504 (D. Del. 2009).....................................................................13

*AlixPartners, LLP v. Mori*,
    2022 LEXIS 85 (Del. Ch. Apr. 14, 2022)...........................................................19

*Aon PLC v. Alliant Ins. Servs., Inc.*,
    2023 LEXIS 102153 (N.D. Ill. June 9, 2023).....................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................8

*AWP, Inc. v. Henry*,
    2020 LEXIS 222087 (N.D. Ga. Oct. 28, 2020) ..................................................18

*Battaglia Mgmt., Inc. v. Abramowicz*,
    2024 LEXIS 113061 (D. Del. June 26, 2024)......................................................17

*Beard Research, Inc. v. Kates*,
    8 A.3d 573 (Del. Ch. 2010)................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................8

*Clouser v. Marie*,
    2022 LEXIS 64 (Del. Super. Feb. 14, 2022) .....................................................12

*Contra Eastman Chem. Co. v. AlphaPet Inc.*,
    2011 LEXIS 127757 (D. Del. Nov. 4, 2011) .....................................................15

*Cotiviti, Inc. v. Deagle*,
    501 F. Supp. 3d 243 (S.D.N.Y. 2020)................................................................19

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
    2022 LEXIS 231674 (D. Del. Dec. 27, 2022) ...................................................19

*Flexible Techs., Inc. v. SharkNinja Operating LLC*,
    2019 LEXIS 55794 (D. Del. Mar. 29, 2019) .....................................................14

*Flores v. Strauss Water Ltd.*,
    2016 LEXIS 145 (Del. Ch. Sept. 22, 2016) .........................................................8

*Focus Fin. Partners, LLC v. Holsoppel*,
    250 A.3d 939 (Del. Ch. 2020)......................................................................19, 20

*Fortline v. McCall*,
    2024 LEXIS 317 (Del. Ch. Sept. 5, 2024).........................................................10

*FP UC Holdings, LLC v. Hamilton*,
  2020 LEXIS 110 (Del. Ch. Mar. 27, 2020) ...............................................................9

*Fres-co Sys. USA v. Hawkins*,
  690 F. App'x 72 (3d Cir. 2017) .............................................................................18

*Frontline Techs. Parent, LLC v. Murphy*,
  2023 LEXIS 336 (Del. Ch. Aug. 23, 2023) .............................................................11

*Greenstar Techs., LLC v. Gouru*,
  2025 LEXIS 86583 (D.N.J. May 5, 2025) ...............................................................15

*Halpern Med. Servs., LLC v. Geary*,
  2012 Del. Ch. LEXIS 37 (Del. Ch. Feb. 17, 2012) ....................................................2

*Hub Grp., Inc. v. Knoll*,
  2024 LEXIS 250 (Del. Ch. July 18, 2024) ...............................................................9

*Idexx Lab'ys v. Bilbrough*,
  2022 LEXIS 136676 (D. Me. Oct. 4, 2022) .............................................................17

*Intertek Testing Services NA, Inc. v. Eastman*,
  2023 LEXIS 66 (Del. Ch. Mar. 16, 2023) ...............................................................11

*Intertek Testing Servs. v. Eastman*,
  2023 LEXIS 66 (Del. Ch. Mar. 16, 2023) ...............................................................10

*Kinship Partners, Inc. v. Embark Veterinary, Inc.*,
  2022 LEXIS 2804 (D. Or. Jan. 3, 2022) .................................................................17

*Kodiak Bldg. Partners LLC v. Adams*,
  2022 LEXIS 288 (Del. Ch. Oct. 6, 2022) ...............................................................11

*Kuroda v. SPJS Holdings, LLC*,
  971 A.2d 872 (Del. Ch. 2009) ..............................................................................13

*Labyrinth, Inc. v. Urich*,
  2024 LEXIS 15 (Del. Ch. Jan. 25, 2024) ...............................................................11

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
  755 F. Supp. 635 (D. Del. 1991) ......................................................................13, 14

*Lithero v. AstraZeneca Pharms., LP*,
  2020 LEXIS 145592 (D. Del. Aug. 13, 2020) .........................................................19

*Luscavage v. Dominion Dental USA, Inc.*,
  2007 LEXIS 88 (Del. Super. Mar. 20, 2007) ............................................................8

*Medafor, Inc. v. Starch Medical Inc.*,
  2009 LEXIS 61345 (D. Minn. July 16, 2009) .........................................................15

*Oakwood Lab'ys LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021)...................................................................14

*Payscale Inc. v. Norman & Bettercomp, Inc.*,
    2025 LEXIS 141 (Del. Ch. June 9, 2025)..............................................9

*Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*,
    2020 LEXIS 113688 (D. Del. June 29, 2020).......................................14

*President v. Gov't of the V.I.*,
    2025 U.S. App. LEXIS (3rd Cir. Jan. 27, 2025)....................................8

*Sunbelt Rentals, Inc. v. McAndrews*,
    552 F. Supp. 3d 319 (D. Conn. 2021)...................................................17

*UtiliSave, LLC v. Miele*,
    No. 10729, 2015..................................................................................17

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
    2021 LEXIS 145787 (D. Del. Aug. 4, 2021).........................................12

*W.L. Gore & Assocs. v. Wu*,
    No. 263-N, 2006.................................................................................17

**Statutes**

6 Del. C. § 2001, *et seq.*......................................................................19

6 Del. C. § 2007(a)...............................................................................13

18 U.S.C. § 1836(b)(1)..........................................................................16

18 U.S.C. § 1836(b)(3)(A)(i)..................................................................16

18 U.S.C. § 1836(b)(3)(A)(ii)(I).............................................................17

18 U.S.C. § 1836(c)..............................................................................18

18 U.S.C. § 1839(3)..............................................................................14

18 U.S.C. § 1839(5)(B)(ii)(II)................................................................16

**Rules**

Fed. R. Civ. P. 8(a)(2)............................................................................8

Fed. R. Civ. P. 12(b)(6).........................................................................8

# I.    SUMMARY OF ARGUMENT

Plaintiff Varonis Systems, Inc.'s ("Plaintiff") exhausting First Amended Complaint ("FAC") peddles paranoia and speculation but does not allege any actual wrongdoing by Defendants or that Plaintiff has suffered any harm. The FAC alleges only that individual defendants Matthew Guanciale and David Schmid ("Individual Defendants") must be prohibited from working in their chosen profession because they breached invalid worldwide non-competes to join defendant Cyera US, Inc. ("Cyera") (together, "Defendants"), and there is no conceivable way they can work at Cyera without – at some hypothetical future time – using Plaintiff's ill-defined trade secrets and allegedly confidential information. The FAC is grounded not on actual or threatened injury, but rather on unfounded future potential harm and each of the causes of action fail as a matter of law.

*First*, Plaintiff's tortious interference with contract claims (Counts V & VI) against Cyera fail because: (1) the worldwide non-competes Cyera allegedly interfered with are unenforceable; (2) Plaintiff failed to plead facts sufficient to establish the other elements of tortious interference (intent, causation, and actual injury); (3) the claims are barred by the Delaware anti-bootstrapping rule; and (4) the claims are preempted by the Delaware Uniform Trade Secrets Act ("DUTSA").

*Second*, Plaintiff's Defend Trade Secrets Act ("DTSA") and DUTSA claims (Counts III & IV) against Cyera also fail as a matter of law. For starters, Plaintiff has not sufficiently described its purported trade secrets to state a DTSA claim. More fatally, the FAC does not make a single allegation that Defendants have in fact misappropriated (or in fact threaten to misappropriate) Plaintiff's trade secrets or confidential information. Rather, Plaintiff's claim is based solely on the inevitable disclosure doctrine, which cannot form a basis for a DTSA claim. Plaintiff's DUTSA claim fails for a different reason. The DUTSA only applies to trade secret misappropriation that occurs in Delaware. Plaintiff, however, does not allege that any unlawful conduct occurred in

Delaware. Accordingly, the FAC should be dismissed in its entirety for failure to state a claim.[1]

## II.    BRIEF STATEMENT OF THE ALLEGATIONS[2]

### A.    The Parties

Plaintiff is a data security and analytics corporation, incorporated in Delaware, and has a principal place of business in Miami, Florida. FAC (D.I. 18) at ¶¶ 1, 14. Plaintiff alleges Cyera is a direct competitor, incorporated in Delaware, and has a principal place of business in New York, New York. *Id.* ¶¶ 4-5. Guanciale is a former employee of Plaintiff, current Cyera employee, and a Florida resident. *Id.* ¶¶ 2-3, 5. Schmid is a former employee of Plaintiff, current Cyera employee, and a Georgia resident. *Id.* ¶¶ 6-8.

### B.    The Individual Defendants' Restrictive Covenants

As a condition of their employment, Plaintiff required the Individual Defendants to sign At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreements ("Restrictive Covenant Agreements").[3] *Id.* ¶¶ 9, 22 and Exhibits 1-2 (D.I. 18-2). Plaintiff does not allege the Individual Defendants had the ability to negotiate or bargain with Plaintiff regarding the terms in the Restrictive Covenants. *See generally id.*

The Restrictive Covenant Agreements have identical definitions of "Company Confidential Information"[4] and restrictions on the use of the same. Specifically, the Individual Defendants are

---

[1] Given Plaintiff's lack of urgency in litigating this case and in filing the FAC, and given this Motion and the Individual Defendants' Motion to Dismiss, which, if successful, would dismiss this case in its entirety, Cyera concurrently opposes Plaintiff's Motions for Expedited Discovery (D.I. 7, 23) and requests a stay of Plaintiff's Motions for Preliminary Injunction (D.I. 3, 19)

[2] For purposes of this motion only, Cyera accepts the allegations in the FAC as true.

[3] Cyera does not waive and expressly reserves all rights and defenses to the allegations in the FAC, including, but not limited to, compelling this case to arbitration pursuant to the terms of the Restrictive Covenant Agreements entered into between Guanciale and Plaintiff on or around May 1, 2018 and entered into between Schmid and Plaintiff on or around November 18, 2019 (*see* Exhibits 1 & 2 to the FAC at D.I. 18-2). *See Halpern Med. Servs., LLC v. Geary*, 2012 Del. Ch. LEXIS 37, at *10 (Del. Ch. Feb. 17, 2012) (finding defendant did not waive right to invoke arbitration by filing motion to dismiss).

[4] "Confidential Information" means information that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not

2

prohibited from disclosing Plaintiff's "Confidential Information" until the earlier of (1) the date

the information is not considered "Confidential Information" under the Restrictive Covenant

Agreements; or (2) thirty-six (36) months after their employment ends (so long as the Confidential

Information does not constitute a "trade secret" under applicable law.). FAC, Ex. 1-2.

The Restrictive Covenant Agreements also include identical post-employment non-

competes, which Plaintiff alleges are valid and enforceable under Delaware law:

### 7.    <u>COVENANT NOT TO COMPETE AND NO SOLICITATION</u>

A.    *Covenant Not to Compete*. I agree that during the course of my
employment and for a period of twelve (12) months immediately following my
termination of employment for any reason, whether such termination is initiated
by the Company or me, I will not, directly or indirectly, without the prior written
consent of the Company, whether paid or not: (i) serve as a partner, principal,
licensor, licensee, employee consultant, contractor, officer, director, manager,
agent, affiliate, representative, advisor, promoter, associate, investor, creditor or
otherwise in any other capacity for, (ii) own purchase, organize, or take
preparator steps for the organization or competition of, or (iii) build design,
finance, acquire, lease, operate, manage, control, invest in, advise, work or
consult for or otherwise join, participate in or affiliate myself with, ***any business
whose business, products or operations are in any respect competitive
(including by planning or proposing to be competitive) with or otherwise
similar to the Company's business***. ***<u>The foregoing covenant shall cover my
activities in every part of the world</u>***. . . .

FAC, Ex. 1-2 (emphasis added). The non-competes do not define "competitive," "Company

business", or any of the other relevant terms. *Id.* The FAC does not provide context or clarification

regarding the meaning of the undefined terms in the non-competes. Likewise, the FAC does not

explain why the non-competes must cover "every part of the world." *See generally* FAC.

---

generally known and which the Company wishes to maintain as confidential. Company
Confidential Information includes both information disclosed by the Company to me, and
information developed or learned by me during the course of my employment with the Company.
Company Confidential Information also includes all information of which the unauthorized
disclosure could be detrimental to the interests of Company, whether or not such information is
identified as Company Confidential Information. The Restrictive Covenant Agreements provide
examples of Confidential Information. Confidential Information also includes all Company trade
secrets. FAC Ex. 1-2, § 2(A).

The Restrictive Covenant Agreements also prohibit the Individual Defendants for twelve (12) months after their employment ends from any type of contact whatsoever including, but not limited to, any manner of soliciting or attempting to solicit Plaintiff's customers, employees, contractors, or interfering with or attempting to interfere with Plaintiff's business relationships. FAC, Ex. 1-2, § 7(B). "Customer" is defined broadly to include not only existing Plaintiff customers but also "all persons or entities that have used, inquired of or been solicited by me for the Company's services . . . or about how I have learned material non-public information." *Id.*

### C.    Guanciale's Employment with Plaintiff and Cyera.

Guanciale began his employment with Plaintiff on May 21, 2018. *Id.* ¶ 18. Guanciale was initially a Sales Engineer and Varonis then promoted him to Sales Engineering Team Lead and Manager, where he oversaw a team of Sales Engineers. *Id.* ¶ 20. His last position at Plaintiff was Strategic Sales Engineer where he was responsible for working with certain customers and prospective clients. *Id.* Throughout his employment, Guanciale allegedly developed relationships with existing and prospective customers. *Id.* ¶¶ 31-48. Towards that end, he educated customers about Plaintiff's capabilities, and he created and presented demonstrations of Plaintiff's products tailored to address each customer's needs. *Id.* ¶¶ 44-45.

According to Plaintiff, Guanciale had access to and knowledge of it trade secrets, and specifically "specialized technical information about Varonis' products and product pipeline, as well as the Company's business plan and strategies." *Id.* ¶ 45. Plaintiff also alleges he knows information about the capabilities of Plaintiff's product services, the challenges Plaintiff's products face, and Plaintiff's "near-term, immediate term, and long-term product roadmap." *Id.* ¶ 47-48; 51.

Plaintiff alleges that Guanciale had access to Plaintiff's sensitive and confidential information regarding Plaintiff's existing and prospective customers. *Id.* ¶¶ 40-42; 48. He allegedly obtained knowledge about Plaintiff's customer pricing, customers' preferences and needs, pricing

strategies, products customers used and did not use, customer feedback about products, when customer contracts were due for renewal, and how customers used its data security tools. *Id.* ¶ 44.

On March 17, 2025, Guanciale submitted his resignation to Plaintiff with two weeks' notice. *Id.* ¶ 58. The next day, Plaintiff's Senior Vice President of Worldwide Sales Greg Pomeroy cut off Guanciale's access to Plaintiff's computer and software system and immediately ended his employment. *Id.*

In April 2025, Guanciale began his employment as a Senior Sales Engineer with Cyera. *Id.* ¶ 63. Based solely on Guanciale's new job title, Plaintiff alleges he is performing "many of the same functions" that he did for Plaintiff during his employment, including "drive sales security solutions." *Id.* ¶¶ 69; 74.[5] Because of this, Plaintiff alleges that Guanciale is "inherently likely" to violate the Restrictive Covenant Agreement and will inevitably use or disclose Plaintiff's "confidential business information and plans" to unfairly compete with Plaintiff. *Id.* ¶ 47; 54; 73. Plaintiff, however, has not alleged Guanciale took any trade secrets from Plaintiff or that he has used or disclosed any of Plaintiff's trade secrets or confidential information since he joined Cyera or actually threatened to do so. *See* FAC.

### D.    Schmid's Employment with Plaintiff and Cyera.

Schmid began his employment with Plaintiff on December 9, 2019. *Id.* ¶ 76. Schmid was a Sales Engineer until August 1, 2023, and assisted Plaintiff's sales team with technical aspects of Plaintiff's products and services for customers. *Id.* ¶ 77. Schmid was then promoted to Senior Sales Engineer and allegedly managed some of Plaintiff's most important customers and prospective customers. *Id.*

Plaintiff alleges Schmid acquired in-depth knowledge of Plaintiff's products and related

---

[5] The FAC has a numbering error that occurs on page 16. To avoid confusion, Cyera refers to the paragraphs as numbered through the remainder of the FAC.

business plans, services, and technical information. *Id.* ¶¶ 78, 87. Schmid also worked with Plaintiff's sales team to offer technical solutions, demo products, provide advice, and develop strategies and account plans for Varonis customers. *Id.* ¶ 88. Plaintiff alleges that to perform his job, Schmid had access to Plaintiff's confidential information. *Id.* ¶¶ 89, 91. Plaintiff alleges that Schmid was customer-facing in his roles. *Id.* ¶¶ 88, 92.

On April 22, 2025, Schmid resigned from his position at Plaintiff and was immediately terminated. *Id.* ¶¶ 105-106. In May 2025, Plaintiff discovered Schmid had joined Cyera. *Id.* ¶ 108.

Plaintiff alleges Schmid's "current position at Cyera mirrors his former role at Varonis" and involves "similar responsibilities that could leverage Varonis' proprietary information." *Id.* ¶ 112. As such, Plaintiff claims that "[a]llowing Schmid to continue in this capacity at Cyera poses a risk of irreparable harm." *Id.* ¶ 113. Plaintiff, however, has not alleged that Schmid took any trade secrets from Plaintiff or that he has used or disclosed any of Plaintiff's trade secrets or confidential information since he joined Cyera or actually threatened to do so. *See generally* FAC.

E.    **Plaintiff's Allegations Against Cyera.**

Plaintiff alleges Cyera is a competitor in the data security and data security posture management space and both offer similar "tools and functions" for these services. *Id.* ¶¶ 65-68. According to Plaintiff, Cyera "knowingly and intentionally" employs the Individual Defendants in violation of their Restrictive Covenant Agreements. *Id.* ¶¶ 151, 157. Plaintiff claims the Individual Defendants' use or disclosure of its trade secrets to Cyera is "inevitable." *Id.* ¶¶ 132, 143. Plaintiff then further speculates that "[a]s a receiver and beneficiary of this information, Cyera, too, threatens to misappropriate Varonis' trade secrets" and by virtue of employing the Individual Defendants, Cyera has engaged in actual or threatened misappropriation. *Id.* ¶¶ 133-134, 144-148.

III.   **PROCEDURAL HISTORY**

On March 19, 2025, Plaintiff sent Guanciale and Cyera a cease-and-desist letter regarding his alleged post-employment restrictive covenants. *Id.* ¶ 64. On March 28, Cyera responded to

6

Plaintiff (disputing the allegations). *Id.* Plaintiff subsequently abandoned further substantive communications with Cyera and instead, on May 8, filed the initial complaint alleging (1) breach of contract by Guanciale for the alleged breach of his Restrictive Covenants Agreement (2) violations of the DTSA and DUTSA against Guanciale and Cyera; and (3) purported tortious interference by Cyera with Plaintiff's contractual rights by hiring Guanciale. Plaintiff also filed motions for preliminary injunction and expedited discovery ("Guanciale Motions"). D.I. 1-7.

On May 20, counsel for Plaintiff, Cyera, and Guanciale met and conferred to discuss an expedited discovery and briefing schedule related to the Guanciale Motions. D.I. 13. During that conference, Plaintiff's counsel represented it was preparing to file an amended complaint. *Id*. As such, Cyera and Plaintiff agreed to stay Cyera's deadline to respond to the Guanciale Motions.[6] *Id.* On May 30, the parties agreed to extend Cyera's responsive pleading deadline to June 13. D.I. 14. On June 13, Plaintiff filed an Unopposed Motion for Leave to File an Amended Complaint. D.I. 16. Six days later, on June 18, Plaintiff filed the FAC, a motion for expedited discovery, and a motion for preliminary injunction against Mr. Schmid (the "Schmid Motions"). D.I. 18-23.

The allegations against Schmid are substantially similar to those against Guanciale. *Compare* D.I. 1 to D.I. 18. The FAC alleges the same causes of action and adds (1) a breach of contract claim against Schmid (Count II); (2) Schmid as a defendant to the DTSA and DUTSA claims (Counts III-IV), and (3) alleges Cyera tortiously interfered with both Individual Defendants' Restrictive Covenant Agreements (Counts V-VI). *See* D.I. 18. The posture of the case shows Plaintiff's lack of urgency and the weakness of its claims. Cyera moves to dismiss the FAC in its entirety.[7]

---

[6] At that time, Guanciale had not yet been served; his deadlines had not yet begun to run.

[7] Granting Defendants' motions to dismiss will moot the Guanciale Motions and the Schmid Motions. In the interim, Cyera requests that the Court deny or, alternatively, stay the Guanciale Motions and the Schmid Motions.

## IV.    ARGUMENT

### A.    Legal Standard.

Rule 8(a)(2) requires that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 [] does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Further, "a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Because the FAC fails to meet the requirements of Rules 8(a) and 12(b)(6), this Court should dismiss for failure to state a claim.

### B.    Plaintiff's Tortious Interference Claims (Counts V & VI) Fail as a Matter of Law.[8]

A tortious interference with contract claim fails unless the plaintiff shows "(1) a ***valid*** contract, (2) about which the defendant[] ha[s] knowledge, (3) an intentional act by the defendant[] that is a significant factor in causing the breach of the contract, (4) without justification and (5) which causes injury." *Flores v. Strauss Water Ltd.*, 2016 LEXIS 145, at *33 (Del. Ch. Sept. 22, 2016) (emphasis added); *see also Luscavage v. Dominion Dental USA, Inc.*,

---

[8] "A federal court exercising supplemental jurisdiction over state or territorial law claims must apply the substantive law of the appropriate state or territory." *President v. Gov't of the V.I.*, 2025 U.S. App. LEXIS, at *2 (3rd Cir. Jan. 27, 2025).

2007 LEXIS 88, at *6 (Del. Super. Mar. 20, 2007) (overruled in part on other grounds) ("to succeed under [a tortious interference with contract] theory, there must be an actual breach of a valid and enforceable contract"). Even if Plaintiff could establish all five elements, these claims remain ripe for dismissal because they are barred by Delaware's anti-bootstrapping doctrine and preempted by the DUTSA.

### 1. The Restrictive Covenant Agreements' Non-Competes are Invalid and Unenforceable.[9]

When a tortious interference claim is premised on the alleged violation of a non-compete and that claim fails, so too does the tortious interference claim. *See Payscale Inc. v. Norman & Bettercomp, Inc.*, 2025 LEXIS 141, at *20-21 (Del. Ch. June 9, 2025) ("The parties' briefing concedes that [the tortious interference with contract claim] turns on the enforceability of a contract, and therefore rises or falls on [the breaches of non-compete and non-solicitation claims]."). Under Delaware law, non-competes are unenforceable unless they are "(1) reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking enforcement, and (3) survive a balancing of the equities." *FP UC Holdings, LLC v. Hamilton*, 2020 LEXIS 110, at *14 (Del. Ch. Mar. 27, 2020) (citation omitted). For this reason, "agreements not to compete must be closely scrutinized as restrictive of trade." *Payscale Inc.*, 2025 LEXIS 141, at *20-21. As such, "to determine the reasonableness of the Non-Compete, the Court must read the contractual language as a whole, in the context of the employment relationship." *Hub Grp., Inc. v. Knoll*, 2024 LEXIS 250, at *21 (Del. Ch. July 18, 2024).

### a. The Non-Competes are Geographically Overbroad.

Restrictive covenants "with an expansive geographic reach" may only be enforced "if the

---

[9] Cyera adopts and incorporates by reference the Individual Defendants' arguments against enforceability of the non-competes and non-solicitation provisions, as well as their arguments that the Court should not "blue pencil" the restrictive covenants to make them enforceable because there was no meeting of the minds as to what would constitute enforceable restrictions.

covenant appropriately covers the market where the covenantee has economic interests." *Intertek Testing Servs. v. Eastman*, 2023 LEXIS 66, at *8-10 (Del. Ch. Mar. 16, 2023) (granting motion to dismiss when non-compete covered "anywhere in the world"); *see also Payscale Inc.*, 2025 LEXIS 141 at *20-21 (finding nationwide noncompete overbroad); *Fortline v. McCall*, 2024 LEXIS 317 (Del. Ch. Sept. 5, 2024) (denying preliminary injunction when non-compete covered entire United States); *Knoll*, 2024 LEXIS 250, at *21 (denying preliminary injunction when non-compete covered at least 4 countries and over 42,000 United States zip codes); *FP UC Hldgs.*, 2020 LEXIS 110, at *15 (finding noncompete overbroad when covering entire United States).

Here, the non-competes prohibit the Individual Defendants for twelve (12) months following their separation from Plaintiff from becoming employed ***anywhere in the world*** with any business that meets Plaintiff's undefined, vague and ambiguous description of "competitive." *See* FAC Ex. 1-2. Put another way, the Individual Defendants are "prohibited from working anywhere in the [world], in almost any role, for any company engaged in business that [Varonis] . . . [is] conducting or had proposed to conduct as of [the Individual Defendants'] departure." *Payscale*, 2025 LEXIS 141 at 10. And the FAC makes no effort to explain why and how the Individual Defendants work at Plaintiff requires subjecting them to a worldwide prohibition against basically any type or form of employment in their profession for a year. *See generally* FAC. As such, the Restrictive Covenant Agreements' non-competes are invalid as "overly expansive" and can only be enforceable if Plaintiff shows their broad geographic scope are needed to protect its real, legitimate business interests. *Eastman*, 2023 LEXIS 66, at *8-10.[10]

---

[10] The non-competes' restricted activities are also overbroad because they not only prohibit the Individual Defendants from employment with a "competitive business" (which is undefined in the Restrictive Covenant Agreements), but from having virtually any affiliation–in any capacity–with a "competitive business" anywhere in the world. *Adams*, 2022 LEXIS 288, at *23-24 (finding long list of restricted activities broader than necessary to protect company's legitimate business interests).

### b. Plaintiff Cannot Establish the Non-Competes are Tied to a Legitimate Business Interest.

A non-compete may not be "broader than necessary" to protect an employer's "legitimate business interest." *Kodiak Bldg. Partners LLC v. Adams*, 2022 LEXIS 288, at *21-24 (Del. Ch. Oct. 6, 2022). A noncompete will not be enforced when the party seeking to enforce the covenant "goes beyond those legitimate business interests" and renders them "overbroad and unenforceable." *Id.* at 20-21.[11] Here, the FAC does not allege Plaintiff's business is worldwide, that the Individual Defendants worked worldwide, that the Individual Defendants regularly worked with international clients, or that the non-competes, when applied to the Individual Defendants and their back-end sales engineer roles, serve any legitimate worldwide business interest that warrants protection at the expense of Individual Defendants being able to pursue employment in their chosen profession. *See generally* FAC. As such, Plaintiff cannot show these worldwide prohibitions when applied to Individual Defendants are "no broader than necessary" to protect any cognizable worldwide reasonable business interest of Plaintiff. *Adams*, 2022 LEXIS 288, at *21-24.

### 2. Plaintiff Cannot Establish the Remaining Elements of its Tortious Interference Claims.

As noted above, when a tortious interference claim is premised on the alleged violation of a non-compete and that claim fails, so too does the tortious interference claim. *See Payscale Inc.*, 2025 LEXIS 141, at *20-21. Even if the non-competes are enforceable – they are not – Plaintiff cannot establish the remaining elements of its tortious interference claims (injury, knowledge, intent, "substantial factor" causing breach). *See Strauss Water Ltd.*, 2016 LEXIS 145, at *33. For

---

[11] Delaware courts routinely dismiss breach of contract claims where a restrictive covenant is facially overbroad. *See e.g., Labyrinth, Inc. v. Urich*, 2024 LEXIS 15, at *55 (Del. Ch. Jan. 25, 2024) (finding restrictive covenants unreasonable on motion to dismiss); *Frontline Techs. Parent, LLC v. Murphy*, 2023 LEXIS 336, at *5 (Del. Ch. Aug. 23, 2023) (granting motion to dismiss on restrictive covenant breach of contract claim); *Intertek Testing Services NA, Inc. v. Eastman*, 2023 LEXIS 66, at *9-11 (Del. Ch. Mar. 16, 2023) (granting motion to dismiss because restrictive covenants were overbroad under Delaware law).

example, the FAC does not allege any real injury (or actual threat of injury) because Cyera hired

the Individual Defendants or since they have been working at Cyera the past several months

(Plaintiff has had months to investigate and uncover facts to allege a cognizable injury and has

pleaded nothing of the sort). *See generally* FAC. As such, Plaintiff's tortious interference claims

fail as a matter of law.

### 3.   Delaware's Anti-Bootstrapping Doctrine Bars Plaintiff's Tortious Interference Claims.

It is well-established that:

> Delaware law requires a plaintiff bringing a claim based on breach of contract to sue
> in contract not in tort to prevent gratuitous bootstrapping of contract claims into tort
> claims. To this end, while the same circumstances may give rise to a breach of
> contract and tortious interference claim, a plaintiff bringing the latter claim must
> allege breach of an independent duty imposed by law, rather than a duty which arises
> by mere agreement of the parties. Even an intentional, knowing, wanton, or
> malicious action by the defendant will not support a tort claim if the plaintiff cannot
> assert wrongful conduct beyond the breach of contract itself.

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 LEXIS 145787, at *35-36 (D. Del.

Aug. 4, 2021) (internal punctuation omitted). Put another way, the anti-bootstrapping rule applies

"when a plaintiff attempts to transmute a breach of contract claim into a [tort] claim by adding

conclusory allegations to its breach of contract claim." *Clouser v. Marie*, 2022 LEXIS 64, at *13

(Del. Super. Feb. 14, 2022) (rule bars a tort claim "where the plaintiff merely sprinkles the

complaint with terms like 'fraudulently induced'"). Thus, Plaintiff's tortious interference claims

fail unless Plaintiff alleges facts to show Cyera (i) owed Plaintiff "an independent duty imposed

by law;" and (ii) breached such a duty. *VoterLabs, Inc.*, 2021 LEXIS 145787 at *35-36.

Here, the FAC attempts to re-cast its breach of contract claims against the Individual

Defendants into tort claims against Cyera by "sprinkling" in conclusory allegations about "tortious

interference" but fails to plead any independent duty owed by Cyera to Plaintiff. *See generally*

FAC. Counts V and VI of the FAC allege only that Cyera was aware of the Individual Defendants'

supposedly valid non-compete provisions and went ahead and employed them anyway, which "directly resulted in a breach of contract." *See* FAC ¶¶ 149-159. Cyera did not breach the Individual Defendants' Restrictive Covenant Agreements (it merely made offers of employment to them), and Plaintiff has failed to identify and allege an independent duty owed to it by Cyera, or a breach of any independent duty. As such, Plaintiff's tortious interference claims walk straight into the anti-bootstrapping rule. *See Kuroda v. SPJS Holdings, LLC,* 971 A.2d 872, 889-890 (Del. Ch. 2009) ("While the complaint recites the standard for pleading a tort claim along with a contract claim; it is devoid of any substantive allegation that defendants violated a duty in tort.").

### 4.    Plaintiff's Tortious Interference Claims are also Preempted by the DUTSA.

The DUTSA "eliminate[s] other tort causes of action founded on allegations of trade secret misappropriation." *Leucadia, Inc. v. Applied Extrusion Techs, Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991); 6 Del. C. § 2007(a). DUTSA preemption applies any time a tort claim is "grounded in the same facts which purportedly support the misappropriation of trade secret claims." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010) (quotation omitted). Thus, "if the same facts are used to establish all the elements of both claims," then the tort claim is superseded. *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009).

Plaintiff's tortious interference claims are premised on the same facts as its misappropriation with trade secret claims under the DUTSA. *See generally,* FAC. Throughout all the causes of action, Plaintiff repeats and relies on its allegations that Cyera is a competitor, who hired the Individual Defendants in violation of the Restrictive Covenant Agreements' non-competes for the purpose of misappropriating Plaintiff's trade secrets, which will "inevitably" occur. *Id.* ¶¶ 1-8, 116-118 (Count I), 122-124 (Count II), 131-134 (Count III), 143-146 (Count IV), 150-153 (Count V), and 156-159 (Count VI). Plaintiff's tortious interference and trade secret claims each allege Plaintiffs will suffer harm because Individual Defendants now work for Cyera and will inevitably disclose and use

Plaintiff's trade secrets for Cyera's benefit. *Id.* ¶¶ 131-134 (Count III), 143-146 (Count IV), 150-153 (Count V), and 156-159 (Count VI). Because Plaintiff has not alleged any "independent duty" Cyera owes to it (or a breach of that duty) to save the tortious interference claims, it also means they are preempted by the DUTSA (if that claim is not also dismissed for the reasons set forth below).

### C.    The FAC Fails to State a Claim Under the DTSA (Count III).

To establish a DTSA misappropriation claim, Plaintiff must show (1) the existence of a trade secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal quotation marks and citations omitted). Plaintiff's DTSA claim fails because the FAC does not (1) identify what the alleged "trade secrets" are; and (2) allege Defendants misappropriated or threatened to misappropriate Plaintiff's trade secrets.

### 1.    Plaintiff Fails to Identify the Trade Secrets at Issue With Sufficient Specificity.

A plaintiff must identify a "trade secret with sufficient particularity" to provide defendant notice of what they are accused of misappropriating and for a court to assess whether misappropriation has or is threatened to occur. *Flexible Techs., Inc. v. SharkNinja Operating LLC*, 2019 LEXIS 55794 at *5-6 (D. Del. Mar. 29, 2019).[12] Trade secrets "need not be disclosed in detail in a complaint alleging misappropriation" because doing so would result in public disclosure of the alleged trade secrets. *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991). A plaintiff, however, must do more than merely allege broad categories of information when identifying alleged trade secrets. *See e.g.*, *Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, 2020 LEXIS 113688, at *4-5 (D. Del. June 29, 2020) (dismissing

---

[12] Under the DTSA, a trade secret is information that (i) "the owner thereof has taken reasonable measures to keep . . . secret" and (ii) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of [such] information." 18 U.S.C. § 1839(3).

DTSA claim without prejudice because plaintiff only identified broad categories of alleged trade secrets like "product specifications, product forecasts, and definition designs"); *Greenstar Techs., LLC v. Gouru*, 2025 LEXIS 86583, at *2 (D.N.J. May 5, 2025) (dismissing DTSA claim where plaintiff defined trade secrets broadly as plaintiff's "software platform", "AI applications and "IoT technology"); *see also Medafor, Inc. v. Starch Medical Inc.*, 2009 LEXIS 61345, at *3 (D. Minn. July 16, 2009) (finding that defining trade secrets as "business methodologies, formulas, devices, and compilations of information, including suppliers and customers" lacked sufficient particularity under DTSA).[13]

Here, Plaintiff's description of the trade secrets at issue fails to "identify the gravamen of its trade secret misappropriation claim." *Eastman*, 2011 LEXIS 127757, at *16. Instead, the FAC recites broad categories of information the Individual Defendants allegedly had access to, including:

> current and prospective customer details, business arrangements, price strategies, product information (including unique technologies processes that give Varonis a competitive advantage), product development roadmaps, product integration capabilities, procedures and protocols for providing technical support and after-sales services, marketing strategies, and importantly, competitive analyses (including analysis on competitor's products including their strengths and weaknesses).

FAC ¶¶ 34; 89.

The FAC also alleges the Individual Defendants had access to "specialized technical information about Varonis' products and product pipeline, as well as [Varonis'] business plans and strategies" (FAC, ¶ 45), the capabilities of Plaintiff's product services and the challenges Plaintiff's products face. (*Id.* ¶¶ 47-48; 99), and "sensitive and confidential information" regarding existing and prospective customers, their preferences, and pricing *Id.* ¶¶ 40-42; 48; 93-95. These are broad categories of information, not specific trade secrets (Defendants and this Court are left to guess,

---

[13] *Contra Eastman Chem. Co. v. AlphaPet Inc.*, 2011 LEXIS 127757, at *15, at *18 (D. Del. Nov. 4, 2011) ("When trade secrets are identified by reference to a trade name . . . courts in this circuit have refused to dismiss misappropriation claims.").

what about a customer list is protected, which protocols are proprietary, etc.), and the FAC fails to provide Defendants with fair notice of the scope of Plaintiff's trade secret misappropriation claim.[14]

### 2.    The FAC Does Not Allege Actual or Threatened Misappropriation, and the Inevitable Disclosure Doctrine Does Not Support a DTSA Claim.

The DTSA provides a civil cause of action to a person or entity if a trade secret is "misappropriated" and is related to a product or service used in, or intended for use, in interstate commerce. 18 U.S.C. § 1836(b)(1); 1839(4). Among other ways, "misappropriation" under the DTSA occurs when an individual discloses or uses the trade secret without express or implied consent and who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). The DTSA prohibits both actual and threatened misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(i).

As an initial matter, Plaintiff does not allege – nor could it – that Defendants have actually acquired, used, or disclosed Plaintiff's trade secrets. *See generally*, FAC. Instead, Plaintiff seeks to prevent Cyera from employing the Individual Defendants and/or to place conditions on their employment because Individual Defendants may inevitably disclose Plaintiff's trade secrets, which they possess solely in their minds. *See* FAC, ¶132. According to Plaintiff, the Individual Defendants will inevitably disclose its trade secrets during their employment with Cyera because they had access to Plaintiff's trade secrets during their employment and their positions with Cyera are substantially similar to their prior positions at Plaintiff. *Id.* ¶¶ 131-132. Thus, Cyera's employ of them "constitutes actual and/or threatened misappropriation" *Id.* ¶ 133.

---

[14] Plaintiff's Complaint and FAC are both publicly filed (not under seal) and, therefore, impliedly concedes that none of the allegations include actual, protectable trade secrets or confidential information, which underscores Plaintiff's failure to identify any such material.

The DTSA's plain language shows the inevitable disclosure doctrine is inapplicable to DTSA claims. Under the DTSA, a court may grant injunctive relief only "to prevent any actual or threatened misappropriation" so long as the order does not "prevent a person from entering into an employment relationship, and that the conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(ii)(I). But the inevitable disclosure doctrine permits relief without "proof of actual or an identified threat of disclosure" when a person with certain information will inevitably use the information at some point during their new employment. Thus, contrary to the DTSA, the inevitable disclosure doctrine "allows relief based 'merely on the information the person knows.'" *Idexx Lab'ys v. Bilbrough*, 2022 LEXIS 136676, at *9-15 (D. Me. Oct. 4, 2022).

Though Delaware courts have recognized the inevitable disclosure doctrine to pursue claims under state trade secret law or breach of contract,[15] no Delaware court has directly addressed whether the inevitable disclosure doctrine provides a basis to pursue a DTSA claim.[16] Last year, however, this Court dismissed a DTSA claim where plaintiff appeared to allege a DTSA claim based solely on the inevitable disclosure doctrine. *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 LEXIS 113061, at *10 (D. Del. June 26, 2024). This Court found allegations that "[defendant] has, is and/or is planning in the future to misappropriate [plaintiff's] trade secrets by disclosing and/or using that information in the course of her" new employment and that defendant's new employer has acquired plaintiff's trade secrets insufficient to establish a DTSA claim. *Id.*

---

[15] *See W.L. Gore & Assocs. v. Wu*, No. 263-N, 2006 LEXIS 176, at *58 (Del. Ch. Sep. 15, 2006) (granting injunctive relief based on inevitable disclosure of former employer's trade secrets); *UtiliSave, LLC v. Miele*, No. 10729, 2015 LEXIS 242, at *30 (Del. Ch. Sep. 17, 2015) (declining to dismiss breach of contract claim based on inevitable disclosure doctrine).
[16] Whether the inevitable disclosure doctrine provides a basis for a claim under the DTSA in the absence of actual or overtly threatened disclosure is an unsettled area of law. *See Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 331 (D. Conn. 2021)

Numerous federal courts have found the DTSA does not authorize application of the inevitable disclosure doctrine. *See Idexx Lab'ys*, 2022 LEXIS 136676, at *9-15; *see also Kinship Partners, Inc. v. Embark Veterinary, Inc.*, 2022 LEXIS 2804, at *19 (D. Or. Jan. 3, 2022) (finding DTSA's plain language "provides no avenue" for court to grant plaintiff's requested relief based on inevitable disclosure doctrine because such relief impermissibly restrains employment); *AWP, Inc. v. Henry*, 2020 LEXIS 222087, at *13 (N.D. Ga. Oct. 28, 2020) (dismissing DTSA claim that was based solely on inevitable disclosure of trade secrets); *Aon PLC v. Alliant Ins. Servs., Inc.*, 2023 LEXIS 102153, at *13 (N.D. Ill. June 9, 2023) ("While 'inevitable disclosure' can be a viable theory under state law, it appears to be foreclosed under the DTSA.").

Courts that have applied the inevitable disclosure doctrine to DTSA claims have done so only in diversity jurisdiction actions or failed to distinguish between federal recognition of the doctrine versus state recognition of the doctrine. For example, in *Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72 (3d Cir. 2017), the Third Circuit applied the inevitable disclosure doctrine to a DTSA claim. *Fres-co*, however, is easily distinguishable. *Fres-co* was a diversity jurisdiction suit and the court applied Pennsylvania law in favor of the inevitable disclosure doctrine in a preliminary injunction analysis that hinged on various causes of action, including both a DTSA and state law trade secret claim. *Fres-co*, 690 F. App'x at 76, fn. 1. The *Fres-co* court assessed the viability of the inevitable disclosure doctrine without distinguishing between recovery under the DTSA and Pennsylvania trade secret law. *Id.* at 76. Thus, *Fres-co* holds only that a court may apply the inevitable disclosure doctrine based on state law to grant injunctive relief when acting under its diversity jurisdiction.

Unlike in *Fres-co*, Plaintiff alleges the sole source of this Court's jurisdiction is the federal DTSA claim. FAC, ¶ 11; 18 U.S.C. § 1836(c). And unlike in diversity jurisdiction actions, this Court should not consider Delaware's use of the inevitable disclosure doctrine when evaluating the DTSA

claim. Rather, this Court should follow the district courts that have directly addressed whether the inevitable disclosure doctrine applies to claims under the DTSA and find it does not. As such, this Court should dismiss Count III because Plaintiff has not alleged an actionable DTSA claim.[17]

### D.    The DUTSA Claim Fails as a Matter of Law (Count IV).

Plaintiff's DUTSA, 6 Del. C. § 2001, *et seq.*, claim also fails, but for a different reason; the statute does not apply to conduct that occurred outside Delaware.

Delaware law does not apply to conduct in other states unless there is evidence the legislature intended it to. . . . " *Focus Fin. Partners, LLC v. Holsoppel*, 250 A.3d 939, 970 (Del. Ch. 2020). There is no evidence the legislature intended the DUTSA to apply to conduct that occurs outside of Delaware and Delaware courts have held that the DUTSA lacks extraterritorial effect. *Id.*; *accord* e.g., *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 261-62 (S.D.N.Y. 2020) ("[T]his cause of action should be dismissed because it is alleged under the wrong state's trade secret statute."). Thus, Delaware courts do not apply the DUTSA where the complaint fails to allege any misappropriation occurred in Delaware. *Focus Fin.*, 250 A.3d at 970; *AlixPartners, LLP v. Mori*, 2022 LEXIS 85, at *37 (Del. Ch. Apr. 14, 2022) (dismissing DUTSA claim where alleged misappropriation occurred in Italy even though plaintiff was Delaware entity and defendant was partner in a Delaware limited liability partners); *Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 LEXIS 231674, at *12-13 (D. Del. Dec. 27, 2022) (dismissing DUTSA claim where First Amended Complaint failed to allege any misappropriation occurred in Delaware).

Here, the FAC does not allege any conduct, let alone any actual or threatened misappropriation, occurred in Delaware. *See generally*, FAC. Rather, Plaintiff explicitly alleges that

---

[17] Plaintiff's sole basis for original jurisdiction in this Court is the DTSA claim. FAC ¶ 11. Provided the Court agrees Plaintiff has failed to state a viable DTSA claim and dismisses it, Cyera respectfully requests the Court exercises its discretion to dismiss Plaintiff's remaining state law claims. *See Lithero v. AstraZeneca Pharms., LP*, 2020 LEXIS 145592 at * 2-3, 5 (D. Del. Aug. 13, 2020).

its and Cyera's principal place of business is Florida and New York respectively. *Id.* ¶¶ 1, 4. Plaintiff then alleges Guanciale resides and works in Land O'Lakes, Florida and that Schmid resides and works in Peachtree City, Georgia. *Id.* ¶¶ 2, 6. Based on these allegations, any misappropriation must have occurred in New York, Florida, or Georgia, and therefore "Delaware law does not apply." *Focus Fin.*, 250 A.3d at 970. As such, this Court should dismiss Count IV for failure to state a claim.

## V.     CONCLUSION

Plaintiff's FAC is premised on unenforceable non-competes in the Individual Defendants' Restrictive Covenant Agreements and speculation about "what might happen in the future." Neither basis is sufficient to survive this Motion to Dismiss. Accordingly, Cyera requests this Court dismiss the FAC in full and deny or stay Plaintiff's motions for expedited discovery and preliminary injunction.

Dated: July 16, 2025

**OF COUNSEL**

Adam R. Roseman, Esq. (*pro hac vice*)
REED SMITH LLP
1717 Arch St., Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8103
aroseman@reedsmith.com

Garrett Parks, Esq. (*pro hac vice*)
REED SMITH LLP
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
gparks@reedsmith.com

Respectfully submitted,

**REED SMITH LLP**

*/s/ Justin M. Forcier*
Brian M. Rostocki (No. 4599)

Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
brostocki@reedsmith.com
jforcier@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*