**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

VARONIS SYSTEMS, INC.,

                     Plaintiff,

v.

MATTHEW GUANCIALE, CYERA US
INC., and DAVID SCHMID,

                     Defendants.

C.A. No. 1:25-cv-00571-GBW

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**CYERA US INC.'S MOTION TO DISMISS**

OF COUNSEL:
(*pro hac vice*)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL 60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com

Dated: August 18, 2025

Timothy R. Dudderar (No. 3890)
John A. Sensing (No. 5232)
Hannah L. Paxton (No. 7096)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000 – Telephone
tdudderar@potteranderson.com
jsensing@potteranderson.com
hpaxton@potteranderson.com

*Attorneys for Plaintiff Varonis Systems, Inc.*

# TABLE OF CONTENTS

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF THE ARGUMENT ........................................................ 2

LEGAL STANDARD ..................................................................... 3

ARGUMENT ............................................................................ 4

    I.    Varonis's tortious interference claims are properly pleaded ................................ 4

        A.    The Agreements' non-compete covenants are valid and enforceable. .................................................................. 4

        B.    Varonis plausibly alleges that it has suffered harm as a result of Cyera's tortious conduct ............................................... 6

        C.    The "bootstrapping doctrine" does not bar Varonis's tortious interference claims ...................................................... 8

        D.    The tortious interference claims are not preempted by DUTSA ............... 9

    II.    Varonis states claims of trade secret misappropriation against Cyera ................. 11

        A.    Varonis identifies its trade secrets with sufficient specificity ................. 12

        B.    The DTSA authorizes relief for "threatened" misappropriation, which encompasses inevitable disclosure. ............................... 15

        C.    Varonis's DUTSA claim survives regardless of which state's governing law applies. ................................................. 17

CONCLUSION .......................................................................... 19

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Accenture Global Services GMBH v. Guidewire Software Inc.*,
  631 F. Supp. 2d 504 (D. Del. 2009) ....................................................................11

*AlixPartners, LLP v. Benichou*,
  250 A.3d 775 (Del. Ch. 2019) ..............................................................10, 17, 18

*AlixPartners, LLP v. Mori*,
  2022 WL 1111404 (Del. Ch. Apr. 14, 2022) ......................................................18

*Ascroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................7

*Beard Research, Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research,*
  *Inc.*, 11 A.3d 749 (Del. 2010) ..............................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................7

*Bus Air, LLC v. Woods*,
  2019 WL 6329046 (D. Del. Nov. 26, 2019) ..........................................................6

*Deloitte Consulting LLP v. Sagitec Sols. LLC*,
  2023 WL 6039069 (D. Del. Sept. 15, 2023) ................................................. 12-13

*Dow Chem. Co. v. Organik Kimya Holding A.S.*,
  2018 WL 2382802 (Del. Ch. May 25, 2018) ................................................10, 18

*Elkay Interior Systems International, Inc. v. We*iss,
  2022 WL 17961568 (D. Del. Dec. 27, 2022), *adopted sub nom. DIGney York*
  *Assocs., LLC v. Weiss*, 2023 WL 418047 (D. Del. Jan. 26, 2023) ..................17, 19

*Focus Financial Partners, LLC v. Holsopple*,
  250 A.3d 939 (Del. Ch. 2020) ..............................................................................18

*Fres-co Systems USA, Inc. v. Hawkins*,
  690 F. App'x 72 (3d Cir. 2017) ..................................................................... 15-17

*Gas Oil Prods., Inc. of Del. v. Kabino*,
  1987 WL 18432 (Del. Ch. Oct. 13, 1987) ..............................................................5

*Gordian Med., Inc. v. Vaughn*,
  2022 WL 16646626 (D. Del. Nov. 3, 2022) ...................................................................6

*Johns Hopkins Univ. v. 454 Life Scis. Corp.*,
  183 F. Supp. 3d 563 (D. Del. 2016)...............................................................................5

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*,
  755 F. Supp. 635 (D. Del. 1991).................................................................................11

*Loan Servs. Inc. v. NEWITY LLC*,
  2023 WL 6316749 (D. Del. Sept. 28, 2023) ............................................................ 3-4

*Oakwood Labs. LLC v. Thanoo*
  999 F.3d 892 (3d Cir. 2021) .........................................................................12, 14, 15

*O'Leary v. Telecom Res. Serv., LLC*,
  2011 WL 379300 (Del. Super. Jan.14, 2011) ...............................................................6

*OWAL, Inc. v. Caregility Corp.*,
  2022 WL 890182 (D. N.J. Mar. 25, 2022) ..................................................................13

*SI Handling Sys., Inc. v. Heisley*,
  753 F.2d 1244 (3d Cir. 1985) ......................................................................................13

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group Inc.*,
  2024 WL 1116090 (2d Cir. 2024).................................................................................18

*UtiliSave, LLC v. Miele*,
  2015 WL 5458960 (Del. Ch. Sept. 17, 2015) ...............................................................6

*VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*,
  2021 WL 3403932 (D. Del. Aug. 4, 2021) ...................................................................8

*W.L. Gore & Assocs., Inc. v. Wu*,
  2006 WL 2692584 (Del. Ch. Sept. 15, 2006) ...............................................................6

*You Map, Inc. v. Snap Inc.*,
  2021 WL 3171838 (D. Del. July 27, 2021) ............................................................ 13-14

**Statutes**

18 U.S.C. § 1836(b)(3)(A)(i) .............................................................................................15, 16

Del. Code Ann. tit. 6, § 2007(b) ..............................................................................................9

FUTSA, Chapter 688 of the Florida Statutes..........................................................................18

GTSA, Title 10, Chapter 1, Article 27 of the Georgia Code ..................................................18

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)......................................................................................................................3

Fed. R. Civ. P. 15(a)(2)..............................................................................................................15, 19

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Varonis Systems, Inc. ("Varonis") brought this action against its former employees Defendants Matthew Guanciale ("Guanciale") and David Schmid ("Schmid"), and Cyera US Inc. ("Cyera", and collectively, "Defendants"), their new employer and Varonis's direct competitor. The gravamen of Varonis's claims is that Guanciale and Schmid left Varonis, joined Cyera in substantially similar roles, and together with Cyera, now use Varonis's confidential information and trade secrets to unlawfully solicit Varonis's customers and compete against it in the data security and analytics marketplace.

Varonis filed its Complaint against Cyera and Guanciale on May 8, 2025 (D.I. 1), and moved for a preliminary injunction and expedited discovery against Guanciale (D.I. 3; D.I. 7). Varonis amended its Complaint on June 18 to add David Schmid as a Defendant (D.I. 18, 1st Amended Complaint ("Am. Compl.")), and similarly moved for a preliminary injunction and expedited discovery against Schmid (D.I. 19; D.I. 23). Those motions remain pending. Varonis asserts the following claims: breach of contract against Guanciale regarding his Employment Agreement[1] with Varonis (Count I); breach of contract against Schmid regarding his Employment Agreement with Varonis (Count II); violation of the Defend Trade Secrets Act against all Defendants (Count III); violation of the Delaware Uniform Trade Secrets Act against all Defendants (Count IV); Tortious Interference against Cyera regarding Schmid's Employment Agreement (Count V); and Tortious Interference against Cyera regarding Guanciale's Employment Agreement (Count VI). *See* Am. Compl. ¶¶ 114–59.

---

[1] Copies of both Employment Agreements (collectively, "Emp't Agreements") are attached to the Amended Complaint as Exhibits 1 and 2. *See* D.I. 18-2 at 2–36.

Cyera has moved to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 33), and Guanciale and Schmid have filed a separate motion to dismiss (D.I. 35). This brief addresses Cyera's motion to dismiss.

## SUMMARY OF THE ARGUMENT

1.   Varonis's tortious interference claims should not be dismissed. Varonis plausibly alleges that it has suffered harm as a result of Cyera's tortious conduct in the form of lost confidentiality of its information, customers, and goodwill.  The non-compete covenant is not facially overbroad but rather requires resolving all reasonable inferences in Varonis's favor now and a more fully developed record to evaluate it later.  Varonis's tortious interference claims are properly pleaded. The "bootstrapping doctrine" does not bar Varonis's tortious interference claims because they are not against a contracting party and do not allege the same conduct as the breach of contract claims.  The claims are not preempted under DUTSA because they are not premised on the same facts as its misappropriation with trade secret claims.  Rather, they allege independent conduct, namely, encouraging and inducing violations of the non-solicitation, non-compete, non-interference covenants.

2.   Varonis also states valid claims for trade secret misappropriation under both the DTSA and DUTSA. The Amended Complaint identifies Varonis's trade secrets with sufficient specificity to place Cyera on notice of what is at issue.  At the pleading stage, Varonis need only describe its trade secrets with enough particularity to distinguish them from general industry knowledge, which it has done by enumerating categories such as product roadmaps, customer-specific deployment strategies, pricing models, and competitive analyses.  Further, Cyera's contention that Varonis has not alleged "actual" injury is meritless.  Both the DTSA and Third Circuit precedent recognize claims for "threatened" misappropriation, which encompass inevitable disclosure when employees assume identical roles at direct competitors with overlapping clients and responsibilities.  Here,

2

Guanciale's and Schmid's moves to Cyera in substantially similar positions make disclosure not just possible, but inevitable.

3.    Cyera's preemption argument likewise fails. DUTSA does not preempt claims that rest on independent wrongful conduct beyond trade secret misappropriation.  Varonis's tortious interference claims target Cyera's inducement of breaches of restrictive covenants—non-compete, non-solicit, non-disclosure, and non-interference provisions—that are distinct from and broader than trade secret protections.  Delaware and federal courts decline to dismiss such claims at the pleadings stage, recognizing that preemption questions are fact-intensive and premature.

4.    Finally, Cyera's extraterritoriality challenge to the DUTSA claim is misplaced. Choice-of-law determinations are not resolved at the pleadings stage, and even if another jurisdiction's law applies, nearly all states have adopted the UTSA or apply equivalent standards. Varonis's allegations therefore state a viable trade secret misappropriation claim under Delaware law or, alternatively, under any applicable state's law.  Accordingly, the Court should deny Cyera's motion to dismiss in its entirety.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Such a claim must plausibly suggest facts sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Loan Servs. Inc. v. NEWITY LLC*, 2023 WL 6316749, at *2 (D. Del. Sept. 28, 2023) (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)).  "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (cleaned up).

In evaluating a motion to dismiss, the Court must accept as true all the complaint's factual allegations and view them in the light most favorable to the plaintiff. *NEWITY*, 2023 WL 6316749,

at *2.  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Id.* (cleaned up).  "A motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *Id.* (cleaned up).

## ARGUMENT

### I.    Varonis's tortious interference claims are properly pleaded.

Counts V and VI allege that Cyera tortiously interfered with the Employment Agreements Varonis entered into with Schmid and Guanciale.  *See* Am. Compl. ¶¶ 149–59.  Specifically, Varonis alleges that Cyera encouraged and induced the two to violate their Employment Agreements' restrictive covenants that prohibit them from (1) disclosing Varonis's confidential information and trade secrets, (2) working for a direct competitor of Varonis, (3) soliciting Varonis's customers, and (4) otherwise interfering with Varonis's relationship with any existing or prospective business relation.  *See id.* ¶¶ 22, 27–29, 60–65, 69, 73–75, 83–85, 108–13, 149–59.

### A.    The Agreements' non-compete covenants are valid and enforceable.

Cyera argues that the non-compete covenants contained in Guanciale's and Schmid's Employment Agreements are unenforceable and, consequently, Varonis's tortious interference claims (which are based upon those Agreements) fail as a matter of law.  D.I. 34, Opening Br. of Def. Cyera US Inc. in Supp. of Its Mot. to Dismiss ("Cyera's Br."), at 9–11.  This argument does not address the Employment Agreements' non-disclosure, non-solicitation, and non-interference covenants.  Cyera thus concedes by silence that Varonis's tortious interference claims based on these covenants are sufficiently pleaded and state a claim upon which relief can be granted—at least with respect to enforceability.[2]

---

[2] Cyera attempts to "incorporate[ ] by reference the Individual Defendants' arguments against enforceability of the non-competes and non-solicitation provisions, as well as their arguments that

The Employment Agreement's non-compete covenant prohibits Guanciale and Schmid from working for "any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to [Varonis's] business," for the 12 months following the end of his employment.  Emp't Agreements § 7(A).  The covenant also requires them to disclose in writing to Varonis the name and address of their new employer, their position there, and a general description of their duties and responsibilities, at least five days before starting his new employment.  *Id.*  Although the non-compete covenant is not limited in geographic scope, "the absence of a geographical limitation does not render the restrictive covenant unenforceable per se."  *Gas Oil Prods., Inc. of Del. v. Kabino*, 1987 WL 18432, at *2 (Del. Ch. Oct. 13, 1987) (emphasis added).  Delaware courts "are not averse to broad geographical scopes when they are necessary to protect the legitimate business interests of the party trying to enforce the covenant."  *Atl. Diving Supply, Inc. v. Moses*, 2014 WL 3783343, at *7 (E.D. Va. July 31, 2014) (footnote omitted) (quoting *O'Leary v. Telecom Res. Serv., LLC,* 2011 WL 379300, at *5 (Del. Super. Jan. 14, 2011)); *see also Rsch. & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992) (noting that even in the absence of a geographical scope, if "the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their

---

the Court should not 'blue pencil' the restrictive covenants."  Cyera's Br. at 9 n.9.  But this Court has made clear that a litigant cannot "rely on 'incorporation by reference' in order to evade the Court's page limits."  *Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 572 (D. Del. 2016) (citing *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 376 (D. Del. 2014)).  In any event, Varonis addresses Schmid's and Guanciale's arguments in its response in opposition to their separate motions to dismiss.

geographic location." (emphasis omitted)).  And the restriction at issue is narrowly limited to a 12-month duration.

Varonis's goodwill, customer relationships, and legitimate business interests span its global operations, and the covenant's geographic scope appropriately reflects the international reach of its business and the widespread impact that any breach could have. Varonis is entitled to every reasonable inference in its favor here at this stage.  *See O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *5 (Del. Super. Jan. 14, 2011) ("A national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale."). Thus, at the very least, the Court should allow the record to be more fully developed regarding this issue.  *See, e.g.*, *Gordian Med., Inc. v. Vaughn*, 2022 WL 16646626, at *7 (D. Del. Nov. 3, 2022) (report and recommendation), *adopted*, 2022 WL 17084125 (D. Del. Nov. 18, 2022); *Bus Air, LLC v. Woods*, 2019 WL 6329046, at *8 n.6 (D. Del. Nov. 26, 2019) (declining to find that the geographic scope of a restrictive covenant extending to "anywhere in North America" was unreasonable on a motion to dismiss); *W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584, at *14 (Del. Ch. Sept. 15, 2006) (concluding that former employee had extensive knowledge which "would almost certainly filter into his work" for a competitor and result in disclosure of proprietary information); *UtiliSave, LLC v. Miele*, 2015 WL 5458960, at *9 (Del. Ch. Sept. 17, 2015) (declining to resolve on a motion to dismiss fact-intensive inquiries regarding the scope of an injunction to protect proprietary information).

### B.    Varonis plausibly alleges that it has suffered harm as a result of Cyera's tortious conduct.

Cyera briefly argues that Varonis's tortious interference claims fail as a matter of law because Varonis does not allege any "real" or "threat[ened]" injury" as a result of Cyera's tortious conduct.  Cyera's Br. at 12.  Review of the Amended Complaint's allegations easily defeats this

6

throwaway argument.  Counts V and VI allege that Cyera encouraged and induced Guanciale and Schmid to (1) accept employment with Cyera, (2) misappropriate Varonis's trade secrets, (3) disclose Varonis's non-trade secret confidential business information, (4) solicit Varonis's customers, and (5) otherwise interfere with Varonis's relationship with existing or prospective business relations, in violation of the non-interference covenant.  *See* Am. Compl. ¶¶ 22, 27–29, 60–65, 69, 73–75, 83–85, 108–13, 149–59.  The Amended Complaint is replete with facts alleging Varonis's injury, including but not limited to the threatened diversion of business and the disclosure to a direct competitor of Defendants' extensive knowledge of Varonis's customers, processes, strategic initiatives, and other intellectual property.  *See, e.g.*, *id.* ¶¶ 73–75, 112–13.

Cyera faults Varonis for not "investigat[ing] and uncover[ing] [more] facts" and further amending its complaint "to allege a cognizable injury." Cyera's Br. at 12.  Here, Cyera loses sight of the legal standard at the motion to dismiss stage.  At the pleadings stage, Varonis must simply allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The plausibility standard does not impose a probability requirement at the pleading stage but rather calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Varonis has pleaded harm resulting from two high level employees with access to Varonis's confidential and proprietary business information working for a direct competitor in the same positions they held with Varonis and directly competing against Varonis, which is sufficient to satisfy the plausibility standard.

What is more, Cyera has actively prevented Varonis from "investigat[ing] and uncover[ing]" additional facts by opposing Varonis's pending motions for expedited discovery. D.I. 37.  If that is what Cyera wants, then the Court should deny its motion to dismiss, grant

Varonis's motions for expedited discovery, and allow further "investigat[ing] and uncover[ing]" to occur.

### C. The "bootstrapping doctrine" does not bar Varonis's tortious interference claims.

Cyera next argues that Varonis's tortious interference claims should be dismissed because they violate Delaware's "anti-bootstrapping rule." Cyera's Br. at 12–13. Not so. The bootstrapping doctrine is intended to "prevent gratuitous bootstrapping of contract claims into tort claims." *VoterLabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, 2021 WL 3403932, at \*12–13 (D. Del. Aug. 4, 2021) (cleaned up). It applies when a plaintiff attempts to manufacture a tort claim based on the same facts that give rise to its breach of contract claim *against the same party*. *See id.* ("To this end, while the same circumstances may give rise to a breach of contract and tortious interference claim, a plaintiff bringing the latter claim must allege breach of an independent duty imposed by law, rather than a duty which arises by mere agreement of the parties." (cleaned up)).

Here, Counts I and II assert breach of contract claims ***against Guanciale and Schmid***, respectively. Counts V and VI assert tortious interference claims ***against Cyera***. Varonis cannot logically "boot-strap" its tortious interference claims on its breach of contract claim because Varonis has no contract with Cyera. Varonis premises its tortious interference with contract claims on the breach of Varonis's contracts with Guanciale and Schmid, ***not with Cyera***. Varonis properly alleges that it is Cyera's conduct—i.e., hiring Guanciale and Schmid, and inducing and encouraging them to violate the Employment Agreements' restrictive covenants—that constitutes the tortious interference. *See* Am. Compl. ¶¶ 151, 157.

Cyera concedes that a tortious interference with contract claim requires "an intentional act by the defendant[ ] that is a significant factor in causing the breach of the contract." Cyera's Br. at 8 (citing *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at \*10

(Del. Ch. Sept. 22, 2016)).  Accepting Cyera's overly broad interpretation of the bootstrapping doctrine would utterly eviscerate the claim of tortious interference with contract because every such claim in Delaware is premised on the breach of an underlying contract (albeit with a different party).

The cases Cyera cases here are inapposite because, first, they do not involve tortious interference with contract claims and, second, the bootstrapped claims and the breach of contract claims were directed at the same party (or its affiliate) and alleged the same facts.  Cyera's Br. at 12–13 (citing *VoterLabs*, 2021 WL 3403932, at *12–13 (tortious interference with prospective business advantage against affiliate of contract party); *Clouser v. Marie*, 2022 WL 453551, at *5 (Del. Super. Ct. Feb. 14, 2022) (fraud claim against contract party), *aff'd*, 285 A.3d 839 (Del. 2022); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889–90 (Del. Ch. 2009) (conversion claim against contract party)).  That is not the case here, as discussed above.

### D.    The tortious interference claims are not preempted by DUTSA.

Cyera argues that Varonis's common law tortious interference with contract claims are preempted by DUTSA. *See* Cyera's Br. at 13–14.  But the law in this jurisdiction makes clear that common law torts and DUTSA claims may coexist in the same pleading, provided that the tort claim does not rise or fall with the DUTSA claim.  Here, Counts V and VI, which are premised on Cyera's interference with the restrictive covenants in Guanciale's and Schmid's Employment Agreements, are independent of Varonis's DUTSA claim against Cyera.  On this basis alone, Cyera's motion to dismiss should be denied.

Section 2007(b) of DUTSA expressly provides that it does not affect "[o]ther civil remedies *that are not based upon misappropriation of a trade secret*."  6 *Del. C.* § 2007(b) (emphasis added).  "Section 2007 was intended to preserve a single tort cause of action under state law for misappropriation . . . and thus to eliminate other tort causes of action founded on allegations of

trade secret misappropriation." *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (citation omitted). Accordingly, DUTSA preemption turns on whether "the failure of the misappropriation claim . . . doom[s] the common law claim." *Id.*

*Ethypharm* is instructive on this point. The Court denied the defendant's motion to dismiss the plaintiff's claim for intentional interference with prospective business relationships and found that it was not preempted by DUTSA. The Court reasoned that "[w]hile some of the same facts that support the misappropriation claim are alleged in the intentional interference count, the intentional interference claim is not necessarily 'grounded' in those facts" and the plaintiff's intentional interference claim "could stand on its own regardless of whether the misappropriation claim succeeded." *Id.* at 434–35. The Delaware Court of Chancery has similarly denied motions to dismiss that argued DUTSA preemption, finding that such motions are premature and requiring a fully developed factual record to determine how closely intertwined the common law and DUTSA claims are before deciding the preemption issue. *See, e.g.*, *AlixPartners, LLP v. Benichou*, 250 A.3d 775, 788–89 (Del. Ch. 2019); *Dow Chem. Co. v. Organik Kimya Holding A.S.*, 2018 WL 2382802 (Del. Ch. May 25, 2018).

A cursory glance at the Amended Complaint shows that Varonis's tortious interference claims are not merely "premised on the same facts as its misappropriation with trade secret claims under the DUTSA." Cyera's Br. at 13. Rather, Counts V and VI allege that Cyera encouraged and induced Guanciale and Schmid to not only misappropriate Varonis's trade secrets, but also (1) accept employment with Cyera, in violation of the non-compete covenants; (2) disclose Varonis's non-trade secret confidential business information, in violation of the non-disclosure covenants; (3) solicit Varonis's customers, in violation of the non-solicitation covenants; and (4) otherwise interfere with Varonis's relationship with existing or prospective business relations, in violation

of the non-interference covenant. *See* Am. Compl. ¶¶ 22, 27–29, 60–65, 69, 73–75, 83–85, 108–13, 149–59. Cyera ignores all of these allegations of independent misconduct in arguing to this Court that DUTSA preemption applies.

Cyera's cited cases are either readily distinguishable from the facts of this case or actually favorable to Varonis. *See* Cyera's Br. at 13. In *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635 (D. Del. 1991), the court found the plaintiff's claim for unfair competition/unfair trade or business practices was preempted by DUTSA because it was based on the same factual allegations supporting the misappropriation of trade secrets claim, which is not true here. *Id.* at 636–37. In *Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010), the court held that the plaintiffs' breach of fiduciary duty claim was not preempted by DUTSA because, like here, "[t]he same facts [we]re not required to establish all the elements of both the misappropriation and breach of fiduciary duty claims" and "[t]hus, the success of the common law claim (breach of fiduciary duty) does not depend on the success of the trade secrets claim." *Id.* at 602. Similarly, in *Accenture Global Services GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504 (D. Del. 2009), the court declined to find at the pleading stage that the plaintiffs' tortious interference claim was preempted by DUTSA "[b]ecause plaintiffs can make out a tortious interference claim without proving a trade secrets claim." *Id.* at 508–09. Thus, because Counts V and VI for tortious interference with contract are independent of Count IV under DUTSA and stand on their own merit regardless of the fate of the DUTSA claim, they are not preempted.

## II.    Varonis states claims of trade secret misappropriation against Cyera.

Counts III and IV allege trade secret misappropriation against all Defendants under the DTSA and DUTSA, respectively. *See* Am. Compl. ¶¶ 126–48. Varonis alleges that "Guanciale's and Schmid's new positions at Cyera as Senior Sales Engineers is substantially similar to their

11

prior roles at Varonis, and the competitive relationship between Varonis and Cyera is so direct, that the use or disclosure of Varonis's trade secrets is inevitable," and that "Cyera, as the recipient and employer of individuals with knowledge of Varonis's trade secrets, either has misappropriated or threatens to misappropriate those trade secrets." *Id.* ¶¶ 131–32, 143–44.

A.    **Varonis identifies its trade secrets with sufficient specificity**.

Cyera falsely contends that Varonis's articulation of its trade secrets lacks sufficient specificity to state a misappropriation claim under the DTSA. Cyera's Br. at 14–16. The Amended Complaint identifies Varonis's trade secrets in clearly delineated categories, including: Varonis's customer-specific deployment strategies; non-public product roadmaps; and non-public related confidential business information, including pricing models, market and sales strategies, product information which includes unique technologies processes that give Varonis a competitive advantage, competitive analyses which includes analysis on Varonis's competitor's products with their strengths and weaknesses, and sales playbooks. *See* Am. Compl. ¶¶ 8, 10, 34. Further, Varonis alleges that these materials are non-public, derive independent economic value from remaining secret, and are subject to reasonable measures of confidentiality, including restricted access, and nondisclosure agreements. *See id.* ¶ 30 . This identification is not vague; it is tied to specific product components, business processes, and datasets unique to Varonis's business within the technology sector.

The Third Circuit in *Oakwood Labs. LLC v. Thanoo* held that, at the pleading stage, a plaintiff need not "spell out the details of the trade secret" but must describe it "with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021) (citation omitted). Courts in this circuit have repeatedly rejected over-heightened Rule 12 specificity in trade secret claims. *See, e.g., Deloitte*

*Consulting LLP v. Sagitec Sols. LLC*, 2023 WL 6039069, at *2–3 (D. Del. Sept. 15, 2023) (denying Defendant's Rule 12(e) motion even though the plaintiff identified its trade secrets broadly as an application, design, and framework, with court stating "[t]o be sure, those categories are broad, but they are not ambiguous); *OWAL, Inc. v. Caregility Corp.*, 2022 WL 890182, at *7 (D. N.J. Mar. 25, 2022) (finding categories such as "Confidential Information" and "Evaluation Materials" sufficiently finite); *You Map, Inc. v. Snap Inc.*, 2021 WL 3171838, at *9 (D. Del. July 27, 2021) (finding core algorithms and source code may remain secret even if software has public-facing elements).

When immediate injunctive relief is sought, the Third Circuit requires greater particularity so that a district court can identify exactly what is protected. In *Mallet & Co. v. Lacayo*, the court vacated a preliminary injunction where the plaintiff described its trade secrets only in thirteen broad categories such as "Mallet's formulas" or "internal discussions of customer complaints, "concluding that the district court had not articulated "with particularity the information to which it accorded trade secret status." 16 F.4th 364, 376–77, 386 (3d Cir. 2021) (quoting *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256, 1258 (3d Cir. 1985)).

As *SI Handling* explained, meaningful review requires "enough factual detail to permit . . . a connection between the alleged trade secret and its value as a particular secret of the complaining employer." 753 F.2d at 1258. Here, Varonis, satisfies these requirements. Varonis' Amended Complaint far exceeds the baseline Rule 12 standard and—unlike the *Mallet* categories—ties each asserted secret to concrete, product-specific, or process-specific subject matter.

For example, Varonis alleges that:

- Varonis possesses "specialized technical information about its products and product pipeline, as well as the Company's business plans and strategies." Am. Compl. ¶ 12.

13

- In his deployment role, Guanciale served as a conduit through which Varonis obtained market intelligence on customer usage, product feedback, technical issues, and feature adoption. *Id.*.

- Varonis has developed and owns proprietary technical data, business strategies, customer and pricing data, competitive analyses, and other confidential information used in, or intended for, interstate or foreign commerce. *Id.* ¶ 30.

- Guanciale and Schmid, by virtue of their high-level technical and sales engineering roles, had access to detailed customer lists, pricing strategies, product integration capabilities, technical support protocols, and internal competitive analyses—including assessments of competitors' product strengths and weaknesses. *Id.* ¶¶ 8, 22, 30, 31.

In other words, these are not open-ended phrases like "business information" or "customer data." Instead, they are defined categories with a direct nexus to Varonis's competitive advantage in the data security industry. The Complaint even cites specific technologies, roadmaps, and integration processes, making it possible for the Court and the Defendants to discern the precise "boundaries within which the secret lies." *Id.* ¶¶ 21, 30; *see also Oakwood*, 999 F.3d at 906.

Cyera's assertion that certain software elements may be "public-facing" is legally irrelevant at the pleading stage.  As *You Map* confirms, publicly disclosed functionalities do not strip underlying algorithms, source code, or deployment methodologies of trade secret status. *You Map*, 2021 WL 3171838, at *9.  The issue of whether any specific component is publicly available goes to the merits and is properly evaluated through discovery, not in a 12(b)(6) motion.  Even assuming *Mallet*'s[3] more exacting standard applies,  Varonis exceeds it—*Mallet* cautions that "there is no bright-line rule," and whether a trade secret is sufficiently described must be evaluated case by case, based on the stage of litigation.  16 F.4th at 387.  We are at the pleading stage.  Further, unlike in *Mallet*, where the district court failed to connect the categories to any "particular secret" (*SI Handling*, 753 F.2d at 1256–58), the Amended Complaint here links each enumerated

---

[3] In *Mallet*, at least one of the employees was not subject to a noncompete whereas, here, both Guanciale and Schmid had noncompetes in place.  *See* 16 F.4th at 390.

category to unique technical, commercial, or strategic information that is unavailable to the public and derives independent economic value from its secrecy.  Varonis has thus provided both (i) enough specificity to give fair notice under Rule 12, and (ii) enough particularity—even under *Mallet*'s heightened injunction standard—for the Court to identify precisely what is protected.  The Amended Complaint's allegations place Defendants on clear notice of the trade secrets allegedly misappropriated, satisfy *Oakwood*'s Rule 12 standard, and surpass the particularity threshold recognized in *Mallet* for preliminary injunctive relief.   Even if the Court concludes that Varonis's trade secret allegations lack sufficient definiteness, it is not dispositive of Varonis's claim.  Under those circumstances, Varonis respectfully requests leave to amend its complaint to provide a more definite identification of the trade secrets at issue.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

> ### B.    The DTSA authorizes relief for "threatened" misappropriation, which encompasses inevitable disclosure.

Cyera argues that Varonis has failed to plead actual or threatened trade secret misappropriation and cannot proceed on an "inevitable disclosure" theory under the DTSA. Cyera's Br. at 16–19. This misstates the law.  The DTSA expressly authorizes courts to "grant an injunction to prevent any actual *or threatened misappropriation*" of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(i) (emphasis added). By its plain terms, "threatened" misappropriation encompasses circumstances where disclosure or use of a trade secret has not yet occurred, but is inevitable under the facts.  While the DTSA prohibits injunctive relief based solely on "the information the person knows," Cyera misreads this limitation as a blanket bar on inevitable disclosure claims. It is not. Courts in the Third Circuit have held that "threatened" misappropriation exists when knowledge of trade secrets is paired with concrete circumstances making misuse not just possible, but virtually certain—such as stepping into an identical role at a

direct competitor with overlapping duties, clients, and markets. *Fres-co*, 690 F. App'x at 76. .
That is the precise case here. Guanciale and Schmid[4] occupy roles similar or identical to those they
occupied at Varonis, and work for Varonis's direct competitor, and compete for the same types of
clients.

Further, the Third Circuit has recognized this principle in *Fres-co Systems USA, Inc. v.
Hawkins*, 690 F. App'x 72, 76 (3d Cir. 2017), holding that "misappropriation of trade secrets need
not have already occurred to warrant injunctive relief; *threatened misappropriation* is sufficient"
under both the DTSA and analogous state trade secret statutes. *Id.* at 76 (quoting 18 U.S.C.
§ 1836(b)(3)(A)(i) and *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010)
(emphasis added)). The court affirmed the district court's discretion to find "threatened"
misappropriation where the employee left to perform the same role, in the same industry, in the
same geographic territory, for a direct competitor, under circumstances rendering it *likely* that the
employee would use his confidential knowledge to his former employer's detriment. *Id.*

While the DTSA does not use the phrase "inevitable disclosure," district courts in the Third
Circuit have applied its reasoning to claims of "threatened" misappropriation under § 1836. *See,
e.g.*, *Fres-co*, 690 F. App'x at 76. These decisions show inevitable disclosure is not its own legal
claim, but simply a way to prove "threatened" misappropriation under the statute. Varonis alleges
facts that more than plausibly support an inference of inevitable disclosure. First, Guanciale and
Schmid, in successive order, left Varonis's employ to join a direct competitor in substantially the
same roles, servicing the same market and customers. Second, in those roles, Guanciale and

---

[4] Guanciale and Schmid allege in their motion to dismiss that they never deceived Varonis about
joining a competitor, but the facts alleged demonstrate the opposite. *See* D.I. 22 ¶ 40 (Decl. of
Gregory Pomeroy) ("On April 22, 2025, Schmid informed his direct manager . . . that he was
resigning . . . [in] fact, he expressly stated that he was not going to be joining Cyera.").

Schmid necessarily will draw upon Varonis's confidential technical, strategic, and customer-specific information gained during their employment. Third, Guanciale and Schmid, by virtue of their positions, had access to Varonis's highly sensitive trade secrets, including Varonis's customer-specific deployment strategies; non-public product roadmaps; and non-public related confidential business information, including pricing models, market and sales strategies, product information which includes unique technologies processes that give Varonis a competitive advantage, competitive analyses which includes analysis on Varonis's competitor's products with their strengths and weaknesses, and sales playbooks. *See* Am. Compl. ¶¶ 8, 10, 34. Fourth, the competitive overlap is immediate and akin to *Fres-co*, where the court credited the "substantial overlap (if not identity)" between the employee's former and new positions as supporting threatened misappropriation. 690 F. App'x at 76. Given these numerous facts, it is not speculative but inevitable that Defendants will use or disclose Plaintiff's trade secrets in their new roles. That is precisely the scenario § 1836(b)(3)(A)(i) is designed to prevent.

### C. Varonis's DUTSA claim survives regardless of which state's governing law applies.

Cyera asserts that Count IV fails as a matter of law because "the [DUTSA] does not apply to conduct that occurred outside Delaware." Cyera's Br. at 19. However, the extraterritorial scope of DUTSA is a "choice of law" issue that is not appropriately resolved at the pleadings stage. *See Benichou*, 250 A.3d at 788–89 (rejecting argument that DUTSA claim should be dismissed because alleged misappropriation occurred outside of Delaware and holding that Delaware's liberal notice pleading standards did not require plaintiffs to specify the governing law or geographic locus of the alleged conduct at the pleading stage).

In *Elkay Interior Systems International, Inc. v. We*iss, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022) (report and recommendation), *adopted sub nom. DIGney York Assocs., LLC v.*

*Weiss*, 2023 WL 418047 (D. Del. Jan. 26, 2023), cited by Cyera, the court acknowledged the prematurity of a choice of law analysis at the pleadings stage, reasoning that "the choice of law question can entail a fact-intensive inquiry that is often inappropriate on a motion to dismiss." Cyera's Br. at 19.

Cyera speculates based on the alleged loci of the parties that "any misappropriation *must have* occurred in New York, Florida, or Georgia, and therefore 'Delaware law does not apply.'" *Id.* at 20 (emphasis added). However, Cyera points to no allegation in the Amended Complaint that states that the misappropriation occurred outside of Delaware, and, according to the *Benichou* court, Varonis is not required to plead governing law or geographic locus of the alleged conduct at this stage in the case. Even assuming Cyera's misconduct did occur in those states, Florida and Georgia have adopted the UTSA (upon which DUTSA is based). *See* FUTSA, Chapter 688 of the Florida Statutes; *see also* GTSA, Title 10, Chapter 1, Article 27 of the Georgia Code. Moreover, New York (the one state that has not adopted the UTSA) has robust jurisprudence allowing for trade secret misappropriation claims on facts similar to those alleged here. *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group Inc.*, 2024 WL 1116090, 807-14 (2d Cir. 2024). Varonis therefore adequately pleads a trade secret misappropriation claim, regardless of which state's law applies. *See Dow Chem. Co. v. Organik Kimya Holding A.S.*, 2018 WL 2382802 (Del. Ch. May 25, 2018) (denying motion to dismiss because even if DUTSA were ultimately found not to apply, 48 states and D.C. have adopted a version of the UTSA, and plaintiff's claims were sufficient under general UTSA principles).

Cyera's reliance on *AlixPartners, LLP v. Mori*, 2022 WL 1111404 (Del. Ch. Apr. 14, 2022), and *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939 (Del. Ch. 2020), is misplaced. *See* Cyera's Br. at 19–20. The *Mori* decision was rendered post-trial and not on a

18

motion to dismiss before any discovery is taken, and in *Focus Financial*, the DUTSA claim was dismissed based on the doctrine of forum non conveniens, which involves different considerations than dismissal for failure to state a claim under Rule 12's liberal standard.

At worst, to the extent the Court finds that Varonis was required to plead facts that the alleged misappropriation occurred in Delaware to state a DUTSA claim, any dismissal of the DUTSA claim should be without prejudice and with leave to amend to plead a trade secret misappropriation claim under the applicable state statute. *See Elkay*, 2022 WL 17961568, at *4 (dismissing DUTSA claim without prejudice and with leave to amend, reasoning "we will figure out later which state's statute applies to that claim."); *see also* Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the reasons discussed above, the Court should deny Cyera's motion to dismiss.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
(*pro hac vice*)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL 60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com

By:  */s/ John A. Sensing*
     Timothy R. Dudderar (No. 3890)
     John A. Sensing (No. 5232)
     Hannah L. Paxton (No. 6398)
     Hercules Plaza, 6th Floor
     1313 North Market Street
     P.O. Box 951
     Wilmington, DE 19801
     (302) 984-6000 – Telephone
     tdudderar@potteranderson.com
     jsensing@potteranderson.com
     hpaxton@potteranderson.com

Dated: August 18, 2025

*Attorneys for Plaintiff Varonis Systems, Inc.*