## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VARONIS SYSTEMS, INC.,

               Plaintiff,

v.

MATTHEW GUANCIALE, CYERA US
INC., and DAVID SCHMID,

               Defendants.

C.A. No. 1:25-cv-00571-GBW

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MATTHEW GUANCIALE AND DAVID SCHMID'S MOTION TO DISMISS

OF COUNSEL:
(*pro hac vice*)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL 60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com


Dated: August 18, 2025

Timothy R. Dudderar (No. 3890)
John A. Sensing (No. 5232)
Hannah L. Paxton (No. 7096)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000 – Telephone
tdudderar@potteranderson.com
jsensing@potteranderson.com
hpaxton@potteranderson.com

*Attorneys for Plaintiff Varonis Systems, Inc.*

# TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................................... 2

LEGAL STANDARD.............................................................................................................. 3

ARGUMENT ........................................................................................................................... 4

    I.    Varonis states claims for breach of contract against Guanciale and Schmid ............ 4

        A.    The restrictive covenants are enforceable under Delaware and federal law.............................................................................................. 4

            1.    The non-compete covenant is not facially overbroad. ................... 5

            2.    The non-solicitation covenant is not facially overbroad............... 7

            3.    In any event, the parties have agreed to reform any restrictive covenant if found to be overbroad. ............................ 10

        B.    Varonis plausibly alleges that Guanciale and Schmid breached the non-solicitation and non-disclosure covenants. ....................................... 11

    II.    Varonis states claims of trade secret misappropriation against Guanciale and Schmid................................................................................................................... 11

        A.    The Amended Complaint identifies Varonis's trade secrets with sufficient specificity.................................................................................. 12

            1.    The standard at the pleading stage ............................................... 13

            2.    Public elements do not defeat specificity at the pleadings stage ............................................................................................... 15

            3.    Varonis's categories are more definite than those rejected in *Mallet* ...................................................................................... 15

        B.    DTSA authorizes relief for "threatened" misappropriation, which encompasses inevitable disclosure........................................................... 16

            1.    Federal courts in this circuit apply the inevitable disclosure doctrine. ....................................................................................... 17

            2.    Varonis's allegations plausibly allege threatened misappropriation. ........................................................................... 18

            3.    The motion to dismiss mischaracterizes the law.......................... 18

        C.    Varonis adequately pleads a DUTSA claim. ............................................ 19

        D.    The Court should retain jurisdiction over Varonis' state law claims regardless. ................................................................................................ 20

CONCLUSION...................................................................................................................... 20

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*ADP, LLC v. Lynch*,
  678 F. App'x 77 (3d Cir. 2017) ............................................................................2, 11

*AlixPartners, LLP v. Benichou*,
  250 A.3d 775 (Del. Ch. 2019)..........................................................................19, 20

*All Pro Maids, Inc. v. Layton*,
  2004 WL 1878784 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005) ...................2, 7

*Atl. Diving Supply, Inc. v. Moses*,
  2014 WL 3783343 (E.D. Va. July 31, 2014) .........................................................6, 8

*Avaya Inc., RP v. Telecom Labs, Inc.*,
  838 F.3d 354 (3d Cir. 2016)..................................................................................4

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010)..................................................................................3

*Bus Air, LLC v. Woods*,
  2019 WL 6329046 (D. Del. Nov. 26, 2019) ...........................................................7

*Cleveland Integrity Servs., LLC v. Byers*,
  2025 WL 658369 (Del. Ch. Feb. 28, 2025) .........................................................8, 9

*Del. Express Shuttle, Inc. v. Older*,
  2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .......................................................10

*Deloitte Consulting LLP v. Sagitec Sols. LLC*,
  2023 WL 6039069 (D. Del. Sept. 15, 2023).......................................................2, 13

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990)..................................................................................16

*Dow Chem. Co. v. Organik Kimya Holding A.S.*,
  2018 WL 2382802 (Del. Ch. May 25, 2018).........................................................20

*Eastman Chem. Co. v. AlphaPet Inc.*,
  2011 WL 5402767 (D. Del. Nov. 4, 2011) ...........................................................14

*Elkay Interior Sys. Int'l, Inc. v. We*iss,
  2022 WL 17961568 (D. Del. Dec. 27, 2022), *adopted sub nom. DIGney York Associates, LLC v. Weiss*, 2023 WL 418047 (D. Del. Jan. 26, 2023).....................................19

*Faw, Casson & Co. v. Cranston*,
  375 A.2d 463 (Del. Ch. 1977)......................................................................10

*Focus Finan. Partners, LLC v. Holsopple*,
  250 A.3d 939 (Del. Ch, 2020)......................................................................19

*Forman v. Davis*,
  371 U.S. 178 (1962)......................................................................................16

*Fres-co Sys. USA, Inc. v. Hawkins*,
  690 F. App'x 72 (3d Cir. 2017) ...............................................................3, 17

*Gas Oil Prods., Inc. of Del. v. Kabino*,
  1987 WL 18432 (Del. Ch. Oct. 13, 1987) .....................................................6

*Gordian Med., Inc. v. Vaughn*,
  2022 WL 16646626 (D. Del. Nov. 3, 2022) ..................................................6

*Hildreth v. Castle Dental Centers, Inc.*,
  939 A.2d 1281 (Del. 2007) .........................................................................11

*Johns Hopkins Univ. v. 454 Life Scis. Corp.*,
  183 F. Supp. 3d 563 (D. Del. 2016)...............................................................5

*Knowles-Zeswitz Music, Inc. v. Cara*,
  260 A.2d 171 (Del. Ch. 1969)......................................................................10

*Labyrinth, Inc. v. Urich*,
  2024 WL 295996 (Del. Ch. Jan. 26, 2024)..................................................10

*Lentino v. Fringe Emp. Plans, Inc.*,
  611 F.2d 474 (3d Cir. 1979)........................................................................20

*Loan Servs. Inc. v. NEWITY LLC*,
  2023 WL 6316749 (D. Del. Sept. 28, 2023) ............................................. 3-4

*Mallet & Co. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ................................................................ *passim*

*New Rock Asset Partners, L.P. v. Preferred Entity Advanc., Inc*.,
  101 F.3d 1492 (3d Cir. 1996)......................................................................20

*O'Leary v. Telecom Res. Serv., LLC*,
  2011 WL 379300 (Del. Super. Jan.14, 2011) ...............................................6

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021).............................................................2, 13, 14

*Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*,
   2024 WL 4344742 (D. Del. Sept. 30, 2024) ........................................................12

*OWAL, Inc. v. Caregility Corp.*,
   2022 WL 890182 (D.N.J. Mar. 25, 2022) .............................................................13

*Rsch. & Trading Corp. v. Pfuhl*,
   1992 WL 345465 (Del. Ch. Nov. 18, 1992) ........................................................6, 8

*Rsch. & Trading Corp. v. Powell*,
   468 A.2d 1301 (Del. Ch. 1983) .............................................................................7

*RHIS, Inc. v. Boyce*,
   2001 WL 1192203 (Del. Ch. Sept. 26, 2001) .....................................................10

*Sensus USA, Inc. v. Franklin*,
   2016 WL 1466488 (D. Del. Apr. 14, 2016) ..........................................................8

*SI Handling Sys., Inc. v. Heisley*,
   753 F.2d 1244 (3d Cir. 1985) .........................................................................13, 15

*Spear Pharm., Inc. v. William Blair & Co.*,
   610 F. Supp. 2d 278 (D. Del. 2009) ...................................................................14

*Tristate Courier & Carriage, Inc. v. Berryman*,
   2004 WL 835886 (Del. Ch. Apr. 15, 2004) .......................................................4, 5

*UtiliSave, LLC v. Miele*,
   2015 WL 5458960 (Del. Ch. Sept. 17, 2015) .......................................................7

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003) ....................................................................................4

*W.L. Gore & Assocs., Inc. v. Wu*,
   2006 WL 2692584 (Del. Ch. Sept. 15, 2006) .......................................................7

*You Map, Inc. v. Snap Inc.*,
   2021 WL 3171838 (D. Del. July 27, 2021) ......................................................2, 15

**Statutes**

18 U.S.C. § 1836(b)(3)(A)(i) .....................................................................2-3, 16, 17

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ..............................................................................................3

Fed. R. Civ. P. 15(a)(2) ..........................................................................................16

Fed. R. Civ. P. 12(b)(6)................................................................................................15

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Varonis Systems, Inc. ("Varonis") brought this action against its former employees, Defendants Matthew Guanciale ("Guanciale") and David Schmid ("Schmid"), and Cyera US Inc. ("Cyera", and collectively, "Defendants"), their new employer and Varonis's direct competitor.  The gravamen of Varonis's claims is that Guanciale and Schmid left Varonis, joined Cyera in substantially similar roles, and together with Cyera, now use Varonis's confidential information and trade secrets to unlawfully solicit Varonis's customers and compete against it in the data security and analytics marketplace.

Varonis filed its Complaint against Cyera and Guanciale on May 8, 2025 (D.I. 1), and moved for a preliminary injunction and expedited discovery against Guanciale(D.I. 3; D.I. 7).  Varonis amended its Complaint on June 18, 2025, to add Schmid as a defendant (D.I. 18, 1st Amended Complaint ("Am. Compl.")), and similarly moved for a preliminary injunction and expedited discovery (D.I. 19; D.I. 23).  Those motions remain pending.  Varonis asserts the following claims: breach of contract against Guanciale regarding his Employment Agreement[1] with Varonis (Count I); breach of contract against Schmid regarding his Employment Agreement with Varonis (Count II); violation of the Defend Trade Secrets Act against all Defendants (Count III); violation of the Delaware Uniform Trade Secrets Act against all Defendants (Count IV); Tortious Interference against Cyera regarding Schmid's Employment Agreement (Count V); and Tortious Interference against Cyera regarding Guanciale's Employment Agreement (Count VI).  *See* Am. Compl. ¶¶ 114–59.

Guanciale and Schmid moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 35), and Cyera has filed a separate motion to dismiss (D.I. 33).  This brief addresses

---

[1] Copies of both Employment Agreements (collectively, "Emp't Agreements") are attached to the Amended Complaint as Exhibits 1 and 2.  *See* D.I. 18-20 at 2–36.

1

Guanciale and Schmid's motion to dismiss.

## SUMMARY OF THE ARGUMENT

1.      Varonis's claims seeking to enforce restrictive covenants are properly pleaded.  An employer has a legitimate economic interest in protecting customer goodwill and confidential business information from exploitation by former employees, particularly client-facing personnel with substantial access to sensitive information.  *See, e.g.*, *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005); *ADP, LLC v. Lynch*, 678 F. App'x 77, 80 (3d Cir. 2017).  The covenants at issue are narrowly tailored in duration, scope, and subject matter to the markets and relationships cultivated during Guanciale's and Schmid's tenures at Varonis, and are supported by valid consideration.  Even if any portion were overbroad—it is not—the Employment Agreements provide for modification of the covenants.

2.      The Amended Complaint satisfies the Rule 12 pleading standard for identifying trade secrets.  Varonis delineates specific, concrete categories of confidential information tying each to its competitive value and the measures taken to maintain secrecy.  This exceeds the level of particularity approved in *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021), *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 2023 WL 6039069, at *2–3 (D. Del. Sept. 15, 2023), and *You Map, Inc. v. Snap Inc.*, 2021 WL 3171838, at *9 (D. Del. July 27, 2021).  Unlike the vague categories rejected in *Mallet & Co. v. Lacayo*, 16 F.4th 364, 376–77 (3d Cir. 2021), Varonis's allegations draw clear boundaries "within which the secret lies."  *Oakwood*, 999 F.3d at 906 (quotation omitted).

3.      The DTSA expressly authorizes injunctions against "actual *or threatened misappropriation*," 18 U.S.C. § 1836(b)(3)(A)(i) (emphasis added), which includes where use or disclosure may be inevitable.  The Third Circuit recognizes that threatened misappropriation exists when an employee takes a substantially identical role with a direct competitor, making misuse of

2

confidential information virtually certain. *See, e.g.*, *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 72, 76 (3d Cir. 2017) (ruling that given the substantial overlap between the employee's work for his former employer and his intended work for the new employer, "same role, same industry, and same geographic region," the district court was well within its discretion to conclude that the employee would *likely* use his confidential knowledge to the former employer's detriment) (emphasis added); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010). Guanciale and Schmid occupy such roles, servicing the same clients and same markets with the same competitive knowledge acquired exclusively at Varonis. Varonis' allegations more than plausibly state a claim for threatened misappropriation under the DTSA.

4.    The DUTSA extraterritoriality argument is premature and immaterial. Whether DUTSA ultimately governs is a factual question for a later stage. Finally, even if the DTSA claim were dismissed, the Court should retain jurisdiction over the remaining state law claims, as convenience, fairness, and judicial economy all favor resolving them here. Accordingly, the motion to dismiss should be denied in its entirety.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a claim must plausibly suggest facts sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Loan Servs. Inc. v. NEWITY LLC*, 2023 WL 6316749, at *2 (D. Del. Sept. 28, 2023) (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up).

In evaluating a motion to dismiss, the Court must accept as true all the complaint's factual allegations and view them in the light most favorable to the plaintiff. *See NEWITY*, 2023 WL

3

6316749, at *2. "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (cleaned up). "A motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Id.* (cleaned up).

## ARGUMENT

I.    **Varonis states claims for breach of contract against Guanciale and Schmid.** Counts I and II plead breach of contract claims against Guanciale and Schmid, respectively. *See* Am. Compl. ¶¶ 114–25. In Delaware, the elements of breach of contract are: "(1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 389 (3d Cir. 2016); *see also VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Varonis alleges that Guanciale and Schmid each violated their Employment Agreement's restrictive covenants prohibiting them from (1) disclosing Varonis's confidential information and trade secrets, (2) working for a direct competitor of Varonis, (3) soliciting Varonis's customers, and (4) otherwise interfering with Varonis's relationship with any existing or prospective business relation. *See* Am. Compl. ¶¶ 22, 27–29, 60–65, 69, 73–75, 83–85, 108–13, 114–25.

A.    **The restrictive covenants are enforceable under Delaware and federal law.**

Guanciale and Schmid argue that the non-compete and customer non-solicitation covenants are overbroad and unenforceable as a matter of law. Opening Br. of Defs. M. Guanciale & D. Schmid in Supp. of Their Mot. to Dismiss ("G&S Br.") at 7. This is incorrect. For a restrictive covenant to be enforceable, it must "(1) meet general contract law requirements, (2) be reasonable in scope and duration, (3) advance a legitimate economic interest of the party enforcing the covenant, and (4) survive a balance of the equities." *Tristate Courier & Carriage, Inc. v. Berryman*,

4

2004 WL 835886, at *10 (Del. Ch. Apr. 15, 2004). Guanciale and Schmid do not argue that the non-disclosure or non-interference covenants are overbroad and thus concede by silence that Varonis's breach of contract claims based on these covenants are sufficiently pleaded and state a claim upon which relief can be granted—at least with respect to breadth.[2]

At the outset, Guanciale and Schmid acknowledged that their Employment Agreements' restrictive covenants are "necessary to protect the Company Confidential Information . . . to preserve the value and goodwill of the Company." Emp't Agreements § 7(C). They also agreed that "[t]he time, geographic and scope limitations . . . are fair and reasonable in all respects, especially in light of the Company's need to protect Company Information and the international scope and nature of the Company's business." *Id.* Guanciale and Schmid should be bound to the acknowledgments they made, which were given in consideration for their employment.

### 1.    The non-compete covenant is not facially overbroad.

The Employment Agreement's non-compete covenant prohibits Guanciale and Schmid from working for "any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to [Varonis's] business," for the 12 months following the end of his employment. Emp't Agreements § 7(A). The covenant also requires them to disclose in writing to Varonis the name and address of their new employer, their position there, and a general description of their duties and

---

[2] Guanciale and Schmid attempt to "adopt and incorporate by reference the arguments made by Cyera in its Opening Brief in Support of its Motion to Dismiss regarding the inadequacy of the definition of 'confidential information' within the Restrictive Covenants." G&S Br. at 13 n.4. But Cyera does not make (or at least, meaningfully develop) this argument in its brief. And this Court has made clear that a litigant cannot "rely on 'incorporation by reference' in order to evade the Court's page limits." *Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 572 (D. Del. 2016) (citing *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 376 (D. Del. 2014)). In any event, Varonis addresses Cyera's arguments in its response in opposition to Cyera's separate motion to dismiss.

responsibilities, at least five days before starting his new employment. *Id.* Although the non-compete covenant is not limited in geographic scope, "the absence of a geographical limitation does not render the restrictive covenant unenforceable per se." *Gas Oil Prods., Inc. of Del. v. Kabino*, 1987 WL 18432, at *2 (Del. Ch. Oct. 13, 1987) (emphasis in original). Delaware courts "are not averse to broad geographical scopes when they are necessary to protect the legitimate business interests of the party trying to enforce the covenant." *Atl. Diving*, 2014 WL 3783343, at *7 (footnote omitted) (quoting *O'Leary v. Telecom Res. Serv., LLC,* 2011 WL 379300, at *5 (Del. Super. Jan. 14, 2011)); *see also Research. & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992) (noting that even in the absence of a geographical scope, if "the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location." (emphasis omitted)). And the restriction at issue is narrowly limited to a 12-month duration.

Varonis's goodwill, customer relationships, and legitimate business interests span its global operations, and the covenant's geographic scope appropriately reflects the international reach of its business and the widespread impact that any breach could have. Varonis is entitled to every reasonable inference in its favor here at this stage. *See O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *5 (Del. Super. Jan. 14, 2011) ("A national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale."). The Court should at least allow the record to be more fully developed regarding this issue. *See, e.g.*, *Gordian Med., Inc. v. Vaughn*, 2022 WL 16646626, at *7 (D. Del. Nov. 3, 2022) (report and recommendation), *adopted*, 2022 WL 17084125 (D. Del. Nov. 18, 2022); *Bus Air, LLC v. Woods*, 2019 WL 6329046, at *8 n.6 (D. Del. Nov. 26, 2019) (declining to find that the geographic scope of a restrictive covenant extending to "anywhere in North America" was unreasonable on a motion

to dismiss); *W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584, at *14 (Del. Ch. Sept. 15, 2006) (former employee had extensive knowledge which "would almost certainly filter into his work" for a competitor and result in disclosure of proprietary information); *UtiliSave, LLC v. Miele*, 2015 WL 5458960, at *9 (Del. Ch. Sept. 17, 2015) (declining to resolve on a motion to dismiss fact-intensive inquiries regarding the scope of an injunction to protect proprietary information).

Guanciale and Schmid's argument that the balance of the equities favors them also fails. They both acknowledged that the restrictive covenants are "necessary to protect [Varonis's] Confidential Information . . . to preserve the value and goodwill of the Company" and agreed that they "will not be precluded from gainful employment by abiding by the restrictions in this Agreement." Emp't Agreements § 7(C). This agreement precludes their unsupported assertion that the covenant "would effectively bar Guanciale and Schmid from the ability to find suitable employment ***worldwide*** for a one-year period." Defs.' Opening Br. at 11, D.I. 36 (emphasis in original). Guanciale and Schmid can work for any number of businesses that do not compete against Varonis during the brief, one-year period this covenant is enforceable.[3]

>    2.    **The non-solicitation covenant is not facially overbroad.** The Employment Agreement contains two non-solicitation covenants, both limited to the 12-month period following the end of the employee's employment. *See* Emp't Agreements § 7(B)(1)–(2). The customer non-solicitation covenant prohibits Guanciale and Schmid from contacting "for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's business in any way"

---

[3] Additionally, Guanciale and Schmid's argument that continued at-will employment cannot support post-employment restrictive covenants lacks merit. Delaware law is clear that at-will employment constitutes valid consideration for a restrictive covenant. *See, e.g.*, *All Pro Maids*, 2004 WL 1878784, at *4–5; *Rsch. & Trading Corp. v. Powell*, 468 A.2d 1301, 1305 (Del. Ch. 1983).

any Varonis customer. *Id.* § 7(B)(1). The definition of "Customer" is limited to "persons or entities that have used, inquired of or been solicited by me for the Company's services" during the two years prior to the end of employment or about whom the employee "learned material non-public information" while employed by Varonis. *Id.* The employee non-solicitation covenant prohibits Guanciale and Schmid from (1) soliciting any Varonis employee or contractor to terminate their working relationship with Varonis, (2) soliciting any Varonis employee or contractor to "be employed by or provide services to any person or entity other than" Varonis, and (3) hiring, employing, or engaging any Varonis employee or contractor. *Id.* § 7(B)(2). This covenant is limited to only employees and contractors who either were employed by or engaged with Varonis at the time the employee's employment ended or terminated their employment or engagement with Varonis in the 12-month period immediately before. *See id.*

These covenants fit within the parameters of those regularly enforced by Delaware courts. *See, e.g.*, *Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at *1 (D. Del. Apr. 14, 2016) (issuing injunction and enforcing covenant prohibiting the defendant "from soliciting Sensus' customers or employees for two years"); *Atl. Diving Supply, Inc. v. Moses*, 2014 WL 3783343, at *1, *7 (E.D. Va. July 31, 2014) (applying Delaware law, issuing injunction, and enforcing 12-month covenants prohibiting solicitation of customers and vendors/suppliers); *Pfuhl*, 1992 WL 345465, at *12.

Guanciale and Schmid argue that the non-solicitation covenant is overbroad because it "is silent as to the geographic scope it encompasses." G&S Br. at 12. But they cite no case in which a court invalidated a non-solicitation covenant on geographic grounds. This is because non-

8

solicitation covenants typically "do[ ] not have a geographic scope" because they are "tied to business relationships rather than locations." *Cleveland Integrity Servs., LLC v. Byers*, 2025 WL 658369, at *12 (Del. Ch. Feb. 28, 2025). So it is here. To the extent Guanciale and Schmid attempt to graft the non-compete covenant's scope onto the non-solicitation covenant, this fails. "[N]othing about the Noncompete's geographic scope bears on the Nonsolicit's reasonableness." *Id.*

Guanciale and Schmid also argue that the non-solicitation covenant's definition of "Customer" is overbroad because it includes certain prospective customers that have "inquired of" Varonis's services during the two years prior to termination of the employee's employment. Defs.' Opening Br. at 13, D.I. 36. Again, they fail to cite an apposite case. The only one they do cite is distinguishable. *See Hub Grp., Inc. v. Knoll*, 2024 WL 3453863, at *1 (Del. Ch. July 18, 2024), *appeal refused*, 2024 WL 4343006 (Del. Sept. 30, 2024). First, the procedural posture was different, as a motion for a preliminary injunction was before the court rather than a motion to dismiss. *See id.* at *13. Second, the motion concerned only a non-compete covenant, and the court explicitly noted that its opinion did "not decide the enforceability of [other] covenants," including a non-solicitation covenant. *Id.* at *5. Third, the contractual language that Guanciale and Schmid highlight was "vague and fail[ed] to provide an objective standard for [employee] to comply with", and concerned a definition of "Competing Services," not customers. *Id.* at *10. Here, the non-solicitation covenant's definition of "Customer" is limited to those prospective customers that took affirmative steps to reach out and contact Varonis, not merely those whom Varonis was interested in doing business with. This is a much narrower, more ascertainable category, and does not render the covenant overbroad.

The balance of the equities also favors Varonis. In arguing against this, Guanciale and Schmid again fail to cite any case in support. Again, they both previously acknowledged that the

restrictive covenants are "necessary to protect [Varonis's] Confidential Information . . . to preserve the value and goodwill of the Company" and agreed that they "will not be precluded from gainful employment by abiding by the restrictions in this Agreement." Emp't Agreements § 7(C). This prior agreement precludes their unsupported assertion that they will be "unable to earn a livelihood in their chosen profession." Defs.' Opening Br. at 13, D.I. 36.

### 3. In any event, the parties have agreed to reform any restrictive covenant if found to be overbroad.

Even if the Court were to find that any restrictive covenant is overbroad—they are not—the parties contractually agreed to replace any overbroad term with a valid one. *See* Emp't Agreements § 7(D). And Delaware courts have the discretion to "blue pencil" restrictive covenants they find overbroad. *See, e.g.*, *RHIS, Inc. v. Boyce*, 2001 WL 1192203, at *1 (Del. Ch. Sept. 26, 2001) (concluding two-year restriction was unreasonable in the particular field but issuing injunction precluding solicitation for one-year period from termination); *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *14, *24 (Del. Ch. Oct. 23, 2002) (issuing injunction modifying length of non-compete covenant from three years to two); *Faw, Casson & Co. v. Cranston*, 375 A.2d 463, 468–69 (Del. Ch. 1977) (revising the geographic reach of a non-compete covenant); *Knowles-Zeswitz Music, Inc. v. Cara*, 260 A.2d 171, 175 (Del. Ch. 1969) (blue-penciling geographic scope in restrictive covenants to make the covenants reasonable to enforce). Thus, the Court should give effect to the parties' contractual terms if it finds any of the restrictive covenants overbroad.[4]

Relatedly, the Employment Agreements contain severability clauses. *See* Emp't

---

[4] Additionally, at the early stages of litigation, the Court may defer consideration of the scope of a restrictive covenant—including whether to blue pencil—until the record is more developed. *See Labyrinth, Inc. v. Urich*, 2024 WL 295996, at *24 (Del. Ch. Jan. 26, 2024) ("[W]hether the Court should apply the rule of partial enforcement and blue pencil the Agreement's non-compete requires a fact-intensive consideration of the equities that the Court may not be able to resolve at the pleadings stage." (cleaned up)).

Agreements § 14(E).  Even if the Court were to find any portion of the restrictive covenants over-broad, Delaware law makes clear that such a defect would not invalidate the entire agreement if the offending provision is severable.  *See ADP*, 678 F. App'x at 80 (enforcing non-solicitation of current clients and prospective-client restriction while also not enforcing non-compete covenant); *see also Hildreth v. Castle Dental Centers, Inc.*, 939 A.2d 1281, 1283–84 (Del. 2007) ("An invalid term of an otherwise valid contract, if severable, will not defeat the contract.").

### B.    Varonis plausibly alleges that Guanciale and Schmid breached the non-solicitation and non-disclosure covenants.

Guanciale and Schmid also argue that the Amended Complaint fails to plausibly allege that they breached the non-solicitation covenant.  *See* Defs.' Opening Br. at 13–14, D.I. 36.  Not so. Varonis alleges that Guanciale and Schmid both had access to its confidential business information and trade secrets, and regularly used them to perform their customer-facing jobs duties for Varonis and that they left and joined Cyera, a direct competitor, in similar positions with similar job duties to their roles at Varonis.  Varonis further alleges that Guanciale and Schmid viewed but refused to sign the Termination Certifications, they did not respond to Varonis's cease-and-desist letters reminding them of their post-employment obligations to Varonis, Schmid lied to Varonis when he expressly stated that he was not going to be joining Cyera, and Varonis alleged it has lost customers.  *See* Am. Compl. ¶¶ 59–62, 64, 105, 108–11, 148   Varonis is entitled to every reasonable inference drawn from the Amended Complaint's allegations, including that Guanciale and Schmid have disclosed its confidential and trade secret information to Varonis and used them to solicit Varonis's customers.  Additionally, the inevitable disclosure doctrine arguments below apply here with equal force.  That is enough to bring this case to the discovery phase so Varonis can use the tools provided by law to learn the extent of Guanciale's and Schmid's misconduct.

### II.    Varonis states claims of trade secret misappropriation against Guanciale and Schmid.

Counts III and IV allege trade secret misappropriation against all Defendants under the DTSA and DUTSA, respectively. Am. Compl. ¶¶ 126–48. Varonis alleges that "Guanciale's and Schmid's new positions at Cyera as Senior Sales Engineers [are] substantially similar to their prior roles at Varonis, and the competitive relationship between Varonis and Cyera is so direct, that the use or disclosure of Varonis's trade secrets is inevitable," and that "Cyera, as the recipient and employer of individuals with knowledge of Varonis's trade secrets, either has misappropriated or threatens to misappropriate those trade secrets." *Id.* ¶¶ 131–32, 143–44. The elements of trade secret misappropriation are: "(1) a trade secret exists; (2) the trade secret was communicated to the defendant; (3) the communication was made pursuant to an understanding, express or implied, that the secrecy of the information would be maintained; and (4) the trade secret has been misappropriated within the meaning of that term as defined in" the statute. *Ocimum Biosolutions (India) Ltd. v. LG Chem. Ltd.*, 2024 WL 4344742, at *14–17 (D. Del. Sept. 30, 2024).

**A.    The Amended Complaint identifies Varonis's trade secrets with sufficient specificity.**

Guanciale and Schmid's contention that the Amended Complaint fails to identify the alleged trade secrets with sufficient specificity is wrong. The Amended Complaint identifies Varonis's trade secrets in clearly delineated categories, including: Varonis's customer-specific deployment strategies; non-public product roadmaps; and non-public related confidential business information, including pricing models, market and sales strategies, product information which includes unique technologies processes that give Varonis a competitive advantage, competitive analyses which includes analysis on Varonis's competitor's products with their strengths and weaknesses, and sales playbooks. *See* Am. Compl. ¶¶ 8, 10, 34.

Further, Varonis alleges that these materials are non-public, derive independent economic value from remaining secret, and are subject to reasonable measures of confidentiality, including

12

implementing restricted access, and nondisclosure agreements. *See id.* ¶ 30 . This identification is not vague; it is tied to specific product components, business processes, and datasets unique to Varonis's business within the technology sector.

### 1. The standard at the pleading stage.

At the pleadings stage, the Third Circuit in *Oakwood Labs. LLC v. Thanoo* held that a plaintiff need not "spell out the details of the trade secret" but must describe it "with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." 999 F.3d at 906 (citation omitted). Courts in this circuit have repeatedly rejected over-heightened Rule 12 specificity standards in trade secret claims. *See, e.g.*, *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 2023 WL 6039069, at *2–3 (D. Del. Sept. 15, 2023) (denying the defendant's Rule 12(e) motion even though the plaintiff identified its trade secrets broadly as an application, design, and framework, with the court stating "[t]o be sure, those categories are broad, but they are not ambiguous); *OWAL, Inc. v. Caregility Corp.*, 2022 WL 890182, at *7 (D.N.J. Mar. 25, 2022) (finding categories such as "Confidential Information" and "Evaluation Materials" sufficiently defined).

When immediate injunctive relief is sought, the Third Circuit requires greater particularity so that a district court can identify exactly what is protected. In *Mallet & Co. v. Lacayo*, the court vacated a preliminary injunction where the district court had not articulated "with particularity the information to which it accorded trade secret status[,]" and accepting as trade secrets thirteen broad categories such as "Mallet's formulas" or "internal discussions of customer complaints." 16 F.4th 364, 386 (3d Cir. 2021) (quoting *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1258 (3d Cir. 1985)). Here, Varonis, satisfies the *Mallet* requirements precisely because Varonis describes its

trade secrets with much more particularity.[5]

The Amended Complaint far exceeds the baseline Rule 12 standard and—unlike the *Mallet* categories—ties each asserted secret to concrete, product-specific, or process-specific subject matter. For example, Varonis alleges that:

- Varonis possesses "specialized technical information about its products and product pipeline, as well as the Company's business plans and strategies." Am. Compl. ¶ 12.

- In his deployment role, Guanciale served as a conduit through which Varonis obtained market intelligence on customer usage, product feedback, technical issues, and feature adoption. *Id.* ¶ 12.

- Varonis has developed and owns proprietary technical data, business strategies, customer and pricing data, competitive analyses, and other confidential information used in, or intended for, interstate or foreign commerce. *Id.* ¶ 30.

- Guanciale and Schmid, by virtue of their high-level technical and sales engineering roles, had access to detailed customer lists, pricing strategies, product integration capabilities, technical support protocols, and internal competitive analyses—including assessments of competitors' product strengths and weaknesses. *Id.* ¶¶ 8, 22, 30, 31.

In other words, these are not open-ended phrases like "business information" or "customer data." Instead, they are defined categories with a direct nexus to Varonis's competitive advantage in the data security industry. The Complaint even cites specific technologies, roadmaps, and integration processes, making it possible for the Court and the Defendants to discern the precise "boundaries within which the secret lies." *Id.* ¶¶ 21, 30; *see also, e.g.*, *Oakwood*, 999 F.3d at 906; *Spear Pharm., Inc. v. William Blair & Co.*, 610 F. Supp. 2d 278, 284 (D. Del. 2009) (finding that "information relating to generic Efudex® product" constituted "core information" supporting a trade secret claim); *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 5402767, at *5 (D. Del. Nov. 4, 2011) (denying dismissal where plaintiff provided "sufficient factual information to provide

---

[5] *Mallet* is distinguishable on several notable grounds: (1) at least of the employees did not have any restrictive covenants in place against them (2) the court vacated the preliminary injunction during an appeal and (3) the court found that information amounting to "know how" did not constitute a trade secret. *See* 753 F.2d at 1257–62.

adequate notice of the plausible grounds for the plaintiff's misappropriation" under *Twombly/Iqbal* where plaintiff described trade secrets as "information related to Eastman's IntegRex™ PET technology;" this was deemed sufficiently specific to give defendants notice and survive a Rule 12(b)(6) motion.)

### 2. Public elements do not defeat specificity at the pleadings stage.

Guanciale and Schmid's assertion that certain software elements may be "public-facing" is legally irrelevant at the pleading stage. Publicly disclosed functionalities do not strip underlying information (such as algorithms, source code, or deployment methodologies) of trade secret status. *You Map, Inc. v. Snap Inc.*, 2021 WL 3171838, at *9 (D. Del. July 27, 2021) (report and recommendation), 2022 WL 4377031 (D. Del. Sept. 22, 2022). Whether any specific component is publicly available goes to the merits and is properly evaluated through discovery not in a 12(b)(6) motion or in opposition to a preliminary injunction.[6]

### 3. Varonis's categories are more definite than those rejected in *Mallet*.

Even assuming *Mallet*'s[7] more exacting standard applies, Varonis exceeds it—*Mallet* cautions that "there is no bright-line rule," and whether a trade secret is sufficiently described must be evaluated case-by-case and based on the stage of litigation. *Mallet*, 16 F.4th at 387. Varonis remains at the pleading stage.

Further, unlike in *Mallet*, where the court failed to connect the categories to any "particular secret," *SI Handling*, 753 F.2d at 1256–58, the Amended Complaint here links each enumerated

---

[6] Notably, as of this filing, all three Defendants: Guanciale, Schmid, and Cyera have not even responded to Varonis's Preliminary Injunction. This further underscores they have suffered no prejudice from Varonis' level of specificity. Under Rule 12(b)(6), the issue is whether the pleading gives fair notice, and here Cyera, Guanciale and Schmid have fair notice of the trade secrets.

[7] In *Mallet*, at least one of the employees was not subject to a noncompete whereas, here, both Guanciale and Schmid were both subject to noncompetition, nonsolicitation, and confidentiality covenants as part of their Employment Agreement. *Mallet*, 16 F.4th at 390.

category to unique technical, commercial, or strategic information that is unavailable to the public and derives independent economic value from its secrecy. Varonis has thus provided both (i) enough specificity to give fair notice under Rule 12, and (ii) enough particularity—even under *Mallet*'s heightened injunction standard—for the Court to identify precisely what is protected.

Accordingly, Guanciale and Schmid's request for dismissal on the ground of insufficient specificity should be denied. The Amended Complaint's allegations place Defendants on clear notice of the trade secrets allegedly misappropriated, satisfy *Oakwood*'s Rule 12 standard, and surpass the particularity threshold recognized in *Mallet* for preliminary injunctive relief. If the Court concludes that Varonis's trade secret allegations lack sufficient definiteness, Varonis respectfully requests leave to amend.[8]

### B.  DTSA authorizes relief for "threatened" misappropriation, which encompasses inevitable disclosure.

Schmid and Guanciale argue that Varonis cannot proceed on an "inevitable disclosure" theory under the DTSA. G&S Br. at 18. This misstates the law. The DTSA expressly authorizes courts to "grant an injunction to prevent any actual *or threatened misappropriation*" of trade secrets. 18 U.S.C. § 1836(b)(3)(A)(i) (emphasis added). By its plain terms, "threatened" misappropriation encompasses circumstances where disclosure or use of a trade secret has not yet occurred, but is inevitable under the facts. While the DTSA prohibits injunctive relief based solely on "the information the person knows," Schmid and Guanciale misread this limitation as a blanket bar on

---

[8] *See generally* Fed. R. Civ. Proc. 15(a)(2) (holding that leave to amend is to be "freely give[n] . . . when justice so requires"); *see also, e.g., Forman v. Davis*, 371 U.S. 178, 182 (1962) (finding that "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (discussing the Third Circuit's liberal approach to amendment of pleadings and preference for deciding claims on merits rather than on technicalities).

inevitable disclosure claims. It is not. Courts in the Third Circuit, have repeatedly held that "threatened" misappropriation exists when knowledge of trade secrets is paired with concrete circumstances making misuse not just possible, but virtually certain—such as stepping into an identical role at a direct competitor with overlapping duties, clients, and markets. *Fres-co*, 690 F. App'x at 76. That is the precise case here. Guanciale and Schmid currently occupy roles similar or identical to those they occupied at Varonis, and work for Varonis's direct competitor, and in many instances, compete for the same clients.

Further, the Third Circuit has recognized this principle in *Fres-co Systems USA, Inc. v. Hawkins*, 690 F. App'x 72 (3d Cir. 2017), holding that "misappropriation of trade secrets need not have already occurred to warrant injunctive relief; *threatened misappropriation* is sufficient" under both the DTSA and analogous state trade secret statutes. *Id.* at 76 (quoting 18 U.S.C. § 1836(b)(3)(A)(i) and *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010)). The court affirmed the district court's discretion to find "threatened" misappropriation where the employee left to perform the same role, in the same industry, in the same geographic territory, for a direct competitor, circumstances rendering it *likely* that the employee would use his confidential knowledge to his former employer's detriment. *Id.* Where, as here, Guanciale and Schmid, both, took on virtually identical roles with a direct competitor in the same market, the risk of misuse is not speculative but inevitable. As such, Schmid and Guanciale's arguments ignore both the statutory text and precedent, and Varonis has properly pled a claim for threatened misappropriation under the DTSA.

### 1.    Federal courts in this circuit apply the inevitable disclosure doctrine.

While the DTSA does not use the phrase "inevitable disclosure," district courts in the Third Circuit, have applied its reasoning to claims of "threatened" misappropriation under § 1836. *See, e.g.*, *Fres-co*, 690 F. App'x at 76. These decisions show inevitable disclosure is not its own legal

claim, but a way to prove "threatened" misappropriation under the statute.

### 2.    Varonis's allegations plausibly allege threatened misappropriation.

Additionally, Varonis alleges facts that more than plausibly support an inference of inevitable disclosure.  First, Guanciale and Schmid, in successive order, left Varonis's employ to join a direct competitor in substantially the same roles, servicing the same market and customers.  Second, in those roles, Guanciale and Schmid necessarily will draw upon Varonis's confidential technical, strategic, and customer-specific information gained during their employment with Varonis.

Third, Guanciale and Schmid, by virtue of their positions, had access to Varonis's highly sensitive trade secrets, including Varonis's customer-specific deployment strategies; non-public product roadmaps; and non-public related confidential business information, including pricing models, market and sales strategies, product information which includes unique technologies processes that give Varonis a competitive advantage, competitive analyses which includes analysis on Varonis's competitor's products with their strengths and weaknesses, and sales playbooks.  *See* Am. Compl. ¶¶ 8, 10, 34.  Fourth, the competitive overlap is immediate and akin to *Fres-co*, where the court credited the "substantial overlap (if not identity)" between the employee's former and new positions as supporting threatened misappropriation.  *Fres-co*, 690 F. App'x at 76.  Given these numerous facts, it is not speculative but inevitable that Defendants will use or disclose Varonis's trade secrets in their new roles.  That is precisely the scenario § 1836(b)(3)(A)(i) is designed to prevent.

### 3.    The motion to dismiss mischaracterizes the law.

Guanciale and Schmid's assertions that Varonis's DTSA claims cannot proceed under the inevitable disclosure doctrine ignores the statutory text and Third Circuit authority.  The DTSA's "threatened misappropriation" language, coupled with *Fres-co* permits Varonis to establish such a threat through facts showing inevitability.  At the pleading stage, Varonis need not prove

misappropriation—it must merely allege facts making threatened misappropriation plausible.

**C.    Varonis adequately pleads a DUTSA claim.**

Further, Guanciale and Schmid argue that Varonis' DUTSA claim fails "because the alleged conduct did not occur within the State of Delaware."  G&S Br. at 19. However, the extraterritorial scope of DUTSA is a "choice of law" issue that is not appropriately resolved at the pleadings stage.  *See AlixPartners, LLP v. Benichou*, 250 A.3d 775, 788-89 (Del. Ch. 2019) (rejecting argument that DUTSA claim failed on the basis of lack of extraterritoriality, holding that Delaware's liberal notice pleading standards did not require plaintiffs to specify the governing law or geographic locus of the alleged conduct at the pleading stage).

Further, Guanciale and Schmid's cited case, *Elkay Interior Sys. Int'l, Inc. v. We*iss, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022) (report and recommendation), *adopted sub nom. DIGney York Associates, LLC v. Weiss*, 2023 WL 418047 (D. Del. Jan. 26, 2023), acknowledged the prematurity of a choice of law analysis on the pleadings stage, stating "[p]laintiffs are certainly correct that a claimant usually need not plead choice of law in its complaint. And the choice of law question can entail a fact-intensive inquiry that is often inappropriate on a motion to dismiss." There, the court dismissed without prejudice, granting leave to amend the misappropriation claim and reasoning "we will figure out later which state's statute applies to that claim." *Id.*

To the extent this Court finds that Varonis was required to plead facts that the alleged misappropriation occurred in Delaware, any dismissal of the DUTSA claim should be without prejudice and with leave to plead a trade secret misappropriation claim under the applicable state statute.  Additionally, *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch, 2020) does not apply because the DUTSA claim was dismissed based on the doctrine of forum nonconveniens, not because it failed to state a claim.

Schmid and Guanciale also contend that the alleged trade secret misappropriation giving

rise to the DUTSA claim "must have occurred in New York, Florida, or Georgia."  G&S Br. at 19.

Even assuming that were true, Florida and Georgia have adopted the UTSA and New York's case

law largely tracks DUTSA's requirements.  Therefore Varonis pleads a trade secret misappropri-

ation claim, regardless of which state's law applies.  *See, e.g.*, *Dow Chem. Co. v. Organik Kimya*

*Holding A.S.*, 2018 WL 2382802 (Del. Ch. May 25, 2018) (denying motion to dismiss because

even if DUTSA were ultimately found not to apply, 48 states and D.C. have adopted a version of

the UTSA, and plaintiff's claims were sufficient under general UTSA principles); *AlixPartners*,

250 A.3d at 788-89 (rejecting argument that the DUTSA claim failed due to extraterritoriality

concerns).

Accordingly, Guanciale and Schmid's extraterritoriality argument is both premature and

immaterial at this stage.  Delaware courts have consistently declined to resolve choice-of-law and

territorial scope issues on the pleadings, especially where, like here, the alleged conduct is action-

able under multiple states' versions of the UTSA.  Whether DUTSA ultimately governs is a factual

determination for a later stage, and any dismissal on that basis should be without prejudice.

### D.   The Court should retain jurisdiction over Varonis' state law claims regardless.

Finally, even if the DTSA claim is dismissed, the Court should exercise jurisdiction over

the remaining state law claims because "elimination of the federal claim does not deprive the court

of the constitutional power to adjudicate the pendent claim."  *Lentino v. Fringe Emp. Plans, Inc*.,

611 F.2d 474, 479 (3d Cir. 1979).  Here, convenience, fairness, and judicial economy all favor this

Court's retention of jurisdiction to fully adjudicate the remainder of the case.  *See New Rock Asset*

*Partners, L.P. v. Preferred Entity Advancements, Inc*., 101 F.3d 1492, 1505 (3d Cir. 1996).

### CONCLUSION

For reasons discussed above, the Court should deny Guanciale and Schmid's motion to

dismiss.

OF COUNSEL:
(*pro hac vice*)

Kim R. Walberg, Esq.
Benjamin S. Morrell, Esq.
Nadia Diaz-Minor, Esq.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Suite 2600
Chicago, IL 60601-4208
(312) 836-4164 – Telephone
kwalberg@taftlaw.com
BMorrell@taftlaw.com
NMinor@taftlaw.com

Dated: August 18, 2025

POTTER ANDERSON & CORROON LLP


By: */s/ John A. Sensing*
    Timothy R. Dudderar (No. 3890)
    John A. Sensing (No. 5232)
    Hannah L. Paxton (No. 6398)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P.O. Box 951
    Wilmington, DE 19801
    (302) 984-6000 – Telephone
    tdudderar@potteranderson.com
    jsensing@potteranderson.com
    hpaxton@potteranderson.com

*Attorneys for Plaintiff Varonis Systems, Inc.*