**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | |
|---|---|
| VARONIS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW GUANCIALE, CYERA US INC., and DAVID SCHMID, <br><br> Defendants. | C.A. No. 1:25-cv-00571-GBW |

<u>**REPLY BRIEF IN SUPPORT OF DEFENDANT CYERA US INC.'S MOTION TO
DISMISS**</u>

Dated: September 5, 2025

REED SMITH LLP

Brian M. Rostocki (No. 4599)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: brostocki@reedsmith.com

OF COUNSEL:

Adam R. Roseman (*pro hac vice admitted*)
1717 Arch St., Suite 3100
Telephone: (215) 851-8103
Facsimile: (215) 851-1420
E-mail: aroseman@reedsmith.com

Garrett Parks
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
Facsimile: (303) 552-3799
E-mail: gparks@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*

33268843.1

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 2

      A.      Plaintiff Fails to Adequately Allege Tortious Interference Claims. ......................... 2

            1.      The Restrictive Covenant Agreements' Non-Compete Provision is Unenforceable Because It Is Overbroad in Geographic Scope................... 2

            2.      The Non-Solicitation Provision is Also Overbroad and Unenforceable. ................................................................................................ 4

            3.      Plaintiff's FAC Fails to Allege It Has Suffered Any Actual Injury............. 5

      B.      Plaintiff's DTSA Claim Fails as a Matter of Law. .................................................. 6

            1.      Plaintiff Has Not Identified Trade Secrets with Sufficient Specificity. ........................................................................................................ 6

            2.      The Inevitable Disclosure Doctrine Does Not Support a DTSA Claim.................................................................................................................. 8

      C.      The DUTSA Claim Fails Because Plaintiff's FAC Does Not Allege Any Misappropriation Occurred in Delaware. ................................................................ 9

III.    CONCLUSION ........................................................................................................ 10

33268843.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AWP, Inc. v. Henry*,
2020 WL 6876299 (N.D. Ga. Oct. 28, 2020) ................................................................8

*Battaglia Mgmt., Inc. v. Abramowicz*,
2024 WL 3183063 (D. Del. June 26, 2024)...................................................................8

*Brightview Landscapes, LLC v. Iatzko*,
2025 WL 1710054 (E.D. Pa. June 18, 2025)..................................................................5

*Bus Air, LLC v. Woods*,
2019 WL 6329046 (D. Del. Nov. 26, 2019) ..................................................................3

*CGB Occupational Therapy v. RHA Health Servs.*,
357 F. 3d 375 (3d Cir. 2004).........................................................................................5

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
2022 WL 17961568 (D. Del. Dec. 27, 2022)............................................................9, 10

*Flores v. Strauss Water Ltd.*,
2016 WL 5243950 (Del. Ch. Sept. 22, 2016) ...............................................................5

*Focus Fin. Partners, LLC v. Holsoppel*,
250 A.3d 939 (Del. Ch. 2020)...................................................................................9, 10

*Gas Oil Prds., Inc. of Del. v. Kabino*,
1987 WL 18432 (Del. Ch. Oct. 13, 1987) .....................................................................3

*Gordian Med., Inc. v. Vaughn*,
2022 WL 16646626 (D. Del. Nov. 3, 2022) ..................................................................3

*Hub Grp., Inc. v. Knoll*,
2024 WL 3453863, . (Del. Ch. July 18, 2024)...............................................................4

*Idexx Lab'ys v. Bilbrough*,
2022 WL 3042966 (D. Me. Oct. 4, 2022)......................................................................8

*Intertek Testing Servs. v. Eastman*,
2023 WL 2544236 (Del. Ch. Mar. 16, 2023)..................................................................3

*J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*,
1988 WL 116423 (Super. Ct. Oct. 21, 1988)..................................................................9

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2001)...............................................................................6, 7

*Payscale Inc. v. Norman & Bettercomp, Inc.*,
  2025 WL 1622341 (Del. Ch. June 9, 2025)...........................................................3

*Rsch. & Trading Corp v. Pfuhl*,
  1992 WL 345465 (Del. Ch. Nov. 18, 1992) ..........................................................2

*Schiavo v. Carney*,
  548 F. Supp. 3d 437 (D. Del. July 13, 2021) .........................................................2

*Sunder Energy, LLC v. Jackson*,
  332 A.3d 472 (Del. 2024) ......................................................................................4

*Symphony Health Solutions Corp. v. IMS Health Inc.*,
  2014 WL 4063360 (E.D. Pa. Aug. 15, 2014) .........................................................5

**Statutes**

18 U.S.C. § 1836(b)(3)(A)(ii)(I) ...............................................................................8

18 U.S.C. § 1839(5) ...................................................................................................8

33268843.1

## I.  **INTRODUCTION**

Varonis Systems, Inc.'s ("Plaintiff") Opposition Brief ("Opposition") (D.I. 46) only underscores what its First Amended Complaint ("FAC") already makes obvious; its tortious interference and trade secret claims against Cyera US Inc. ("Cyera") are legally deficient and cannot proceed. Plaintiff has had more than four months to investigate its suspicion that Cyera has engaged in actual misconduct and its conduct has harmed Plaintiff. However, other than alleging Cyera is employing individual defendants Michael Guanciale and David Schmidt ("Individual Defendants") (allegedly in violation of unenforceable non-compete provisions in their Restrictive Covenant Agreements), Plaintiff's FAC is based entirely on conjecture and speculation: by virtue of the Individual Defendants' employment with Cyera they will "inevitably" disclose Plaintiff's trade secrets and solicit Plaintiff's customers. But conclusory statements and speculation are not enough, even at the motion to dismiss stage.

With respect to its tortious interference claims, Plaintiff's Opposition: (1) relies on "new" and immaterial factual allegations outside its FAC to salvage unenforceable non-compete and non-solicitation provisions in the Individual Defendants' Restrictive Covenant Agreements (Ex. 1-2; D.I. 18-2) and (2) fails to allege Plaintiff suffered any actual harm.

Plaintiff's trade secret claims are equally flawed. The FAC identifies alleged trade secrets only in broad categories, which is insufficient under Third Circuit precedent. Plaintiff's Opposition also cites no case in this Court (or the Third Circuit) recognizing a Defend Trade Secrets Act ("DTSA") claim can be based solely on the inevitable disclosure doctrine. Plaintiff's Delaware Uniform Trade Secrets Act ("DUTSA") claim also fails because Plaintiff concedes, as it must, that its FAC does not allege any misappropriation (or any conduct for that matter) occurred in

33268843.1

- 1 -

Delaware. Accordingly, for the reasons below and those in Cyera's Opening Brief, this Court should grant Cyera's Motion to Dismiss in its entirety.

## II. ARGUMENT

### A. Plaintiff Fails to Adequately Allege Tortious Interference Claims.

Plaintiff maintains its tortious interference claims are not subject to dismissal because the Individual Defendants' Restrictive Covenant Agreements' non-compete and non-solicitation provisions are enforceable, and it alleged an actual injury.[1] The law and the FAC say otherwise.

### 1. The Restrictive Covenant Agreements' Non-Compete Provision is Unenforceable Because It Is Overbroad in Geographic Scope.

To justify the non-competes' geographic overbreadth, the Plaintiff's Opposition relies on new allegations–not referenced in the FAC. Specifically, Plaintiff alleges "Varonis' goodwill customer relationships, and legitimate business interests *span its global operations*, and the covenant's geographic scope appropriately reflects the *international reach* of its business and the *widespread impact* that any breach could have." D.I. 46, p. 6 (emphasis added). These allegations are not in the FAC, *see* D.I. 18, and Plaintiff cannot "amend [its] complaint through [its] opposition brief, and these new facts may not be considered by the Court on the instant motion to dismiss." *Schiavo v. Carney*, 548 F. Supp. 3d 437, 441 (D. Del. July 13, 2021) (citing cases).

Moreover, Plaintiff acknowledges there must be a nexus between a restrictive covenant's geographic scope and an employee's job duties to show "the employee would gain from the

---

[1] The FAC also fails to allege Cyera had the requisite knowledge and intent to induce a breach of the restrictive covenants in the Individual Defendants' Restrictive Covenant Agreements. The FAC alleges Guanciale and Schmidt resigned their employment at Varonis *before* Plaintiff put Cyera on notice of the Individual Defendants' alleged restrictive covenants. *See* FAC ¶¶ 18, 60, 105, 109. The FAC likewise does not allege Cyera knew of the alleged restrictive covenants *before* it was told about them by Plaintiff or made offers of employment to the Individual Defendants. Absent Cyera's knowledge of the Individual Defendants' alleged restrictive covenants *before* it made offers of employment to the Individual Defendants, Cyera could not have intentionally induced a breach of the alleged restrictive covenants.

employment some advantage in any part of that market . . . ." *See* D.I. 46, p. 5 (citing *Rsch. & Trading Corp v. Pfuhl*, 1992 WL 345465, at \*12 (Del. Ch. Nov. 18, 1992).  But the FAC does not allege a world-wide non-compete for two back-end mid-level engineers who lived and worked in Florida and Georgia is "necessary to protect the legitimate business interest of the party trying to enforce the covenant." *See* D.I. 46, p. 5 (citing *Gas Oil Prds., Inc. of Del. v. Kabino*, 1987 WL 18432, at \*2 (Del. Ch. Oct. 13, 1987).

What's more, the only district court cases Plaintiff cites to support the enforceability of the Restrictive Covenant Agreements' geographically overbroad non-compete are easily distinguishable. In one case, the Court declined to find a nationwide non-compete overbroad at the motion to dismiss stage because the complaint alleged the former at-issue employee's duties extended across the former employer's nationwide business. *Gordian Med., Inc. v. Vaughn*, 2022 WL 16646626, at \*7 (D. Del. Nov. 3, 2022). The other involved a nationwide non-compete in an asset purchase agreement in connection with the sale of defendant's business. *Bus Air, LLC v. Woods*, 2019 WL 6329046, at \*8 n.6 (D. Del. Nov. 26, 2019).  Those cases bear no resemblance to the allegations here. Instead, Plaintiff seeks to enforce a global non-compete against two former mid-level engineers absent any allegations their job duties were global–or even national–in nature.

Accordingly, the non-compete is invalid and Plaintiff's tortious interference claim fails. *See Payscale Inc. v. Norman & Bettercomp, Inc.*, 2025 WL 1622341, at \*8 (Del. Ch. June 9, 2025) (tortious interference claim "rises or falls" on the breach of contract claims).[2]

---

[2] Unlike the cases Plaintiff cites, recent authority cited by Defendants demonstrate a clear judicial trend against enforcing geographically overbroad restrictive covenants. *See Payscale*, 2025 WL 1622341, at \*6 (granting motion to dismiss because non-compete's nationwide geographic scope overbroad); *Intertek Testing Servs. v. Eastman*, 2023 WL 2544236, at \*4-6 (Del. Ch. Mar. 16, 2023) (granting motion to dismiss when non-compete covered "anywhere in the world."); D.I. 34 (Cyera's Opening Brief), p. 10 (citing additional cases).

33268843.1

### 2. The Non-Solicitation Provision is Also Overbroad and Unenforceable.

Plaintiff also argues Cyera "concedes by silence" that the Restrictive Covenant Agreements' "non-disclosure," "non-solicitation", and "non-interference" provisions are enforceable, and its silence means Plaintiff has adequately plead a tortious interference claim based on them. D.I. 46, p. 4. Not so.

Like the non-compete provision, the non-solicitation provision is also unenforceable because it is "unreasonable in scope and duration," fails to "survive a balance of the equities," and does not reasonably "advance a legitimate economic interest" of Varonis. *See Sunder Energy, LLC v. Jackson*, 332 A.3d 472, 485 (Del. 2024). The non-solicitation provision is overbroad because it purports to prohibit the Individual Defendants from soliciting "Customers" for both Plaintiff's competitors and any business that is "***similar*** to that of [Plaintiff] or for the purpose of ***disadvantaging*** the [Plaintiff's] business in any way." FAC, Exs. 1-2 (emphasis added). The non-solicitation provision's definition of "Customer"[3] is likewise overbroad because it includes non-customer businesses and other businesses of which Individual Defendants never communicated. Delaware law does not tolerate covenants that are vague, ambiguous, and boundless—such unfettered restrictions are unenforceable as a matter of Delaware law. *See Hub Grp., Inc. v. Knoll*, 2024 WL 3453863, at *8. (Del. Ch. July 18, 2024).[4]

---

[3] "Customer" is defined as "all persons or entities that have used, inquired of or been solicited by me for the Company's services at any time during the two-year period preceding the termination of my employment with the Company *or* about whom I have learned material non-public information." FAC Ex. 1-2.

[4] The non-disclosure of confidential information provision is also unenforceable because the definition of "Confidential Information" is overbroad and ambiguous. "Confidential Information" includes, among other things, information Plaintiff "will develop, acquire, create, compile, discovery, or own" as well information that could be ***detrimental to the interest of Plaintiff, "whether or not such information is identified as Company Confidential Information***. FAC Ex. 1-2 § 2(A) (emphasis added). The fact that Plaintiff seeks to define non-confidential information as confidential information is not only vague and overbroad, but nonsensical and unenforceable. *See Hub Grp.*, 2024 WL 3453863, at *4-5.

Enforceability aside, the FAC does not allege a tortious interference claim based on a breach of the non-solicitation provision. The FAC does not allege either Individual Defendant solicited or attempted to solicit any customer or that Cyera encouraged or assisted the Individual Defendants in doing so. The FAC only alleges that because the Individual Defendants' employment with Cyera violates the non-compete provision, the Individual Defendants' employment will inevitably, at some point in the future, result in the Individual Defendants soliciting and working with Plaintiff's customers. *See* FAC, Counts I and II.

### 3.  Plaintiff's FAC Fails to Allege It Has Suffered Any Actual Injury.

Next, Plaintiff contends the FAC alleges actual harm from Cyera's alleged tortious interference and Cyera's argument otherwise is just a "throwaway argument". D.I. 46, p. 6-7. Plaintiff is wrong. To bring a tortious interference claim, Plaintiff must show actual "injury." *Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *10 (Del. Ch. Sept. 22, 2016); *see also CGB Occupational Therapy v. RHA Health Servs.*, 357 F. 3d 375, 384 (3d Cir. 2004) ("[A] tortious interference claim does not accrue until, at least, the plaintiff suffers injury (i.e., 'actual legal damage') as a result of the defendant's conduct"); *Symphony Health Solutions Corp. v. IMS Health Inc.*, 2014 WL 4063360, at *3 (E.D. Pa. Aug. 15, 2014) ("[p]redictions of future harm by itself is insufficient to show actual legal damages for tortious interference claim").

*Brightview Landscapes, LLC v. Iatzko* is instructive. In *Brightview*, the Eastern District of Pennsylvania dismissed claims against a former employee for breach of non-solicitation and non-disclosure provisions where the complaint failed to allege the former employee actually misappropriated confidential information or solicited customers, relying instead on nothing more

33268843.1

- 5 -

than a 'conclusory' assertion that the former employee would inevitably disclose such information. 2025 WL 1710054, at *1 (E.D. Pa. June 18, 2025).

Like in *Iatzko*, the FAC does not allege (1) the Individual Defendants possess Plaintiff's trade secrets or confidential information; (2) Defendants misappropriated Plaintiff's trade secrets; or (3) Individual Defendants solicited or attempted to solicit any customer, potential customer, or employee since the Individual Defendants resigned (or that Cyera has induced or encouraged them to do so). Rather, the FAC offers only conclusory allegations that Plaintiff may, at some point in the future, suffer injury because of Cyera's purported efforts to induce Individual Defendants to breach their non-solicitation or non-disclosure of confidential information provisions. D.I. 46, p. 7 (stating FAC alleges only "threatened diversion" of business). This is not enough.[5]

### B. Plaintiff's DTSA Claim Fails as a Matter of Law.

Plaintiff's trade secret claims fare no better. The FAC does not identify trade secrets with sufficient specificity, and Plaintiff's reliance on the inevitable disclosure doctrine as a basis for a DTSA claim is misplaced.

#### 1. Plaintiff Has Not Identified Trade Secrets with Sufficient Specificity.

Cyera does not seek to hold Plaintiff to a heightened pleading standard regarding identifying the trade secrets. Plaintiff agrees it must describe the alleged trade secrets "with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to

---

[5] Plaintiff incorrectly argues Cyera prevented Plaintiff from investigating its claims and uncovering alleged harm. D.I. 46, p. 7-8. Messrs. Guanciale and Schmidt resigned in March and April 2025, respectively. Plaintiff had months to conduct a forensics review of the Individual Defendant's company equipment and email accounts, and to communicate with customers, employees, or other sources (as is usual in these types of disputes) to determine whether (1) Defendants misappropriated Plaintiff's trade secrets; (2) Individual Defendants solicited or attempted to solicit Plaintiff's customers or employees; and (3) any of Plaintiff's customers have moved their business to Cyera. Yet, the FAC fails to allege any actual misconduct by Defendants, much less any actual harm suffered due to Defendants' conduct.

33268843.1

permit defendant to ascertain at least the boundaries within which the secret lies." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2001). The problem for Plaintiff is that the FAC identifies its alleged trade secrets only in sweeping, categorical terms, falling far short of the required standard. *Compare* D.I. 46, p. 14 (stating Individual Defendants had access to "detailed customer lists, pricing strategies, product integration capabilities, technical support protocols, and internal competitive analysis") (citing FAC ¶¶ 8, 22, 30, 31); *with Oakwood Labs.*, 999 F.3d at 906 (affirming denial of motion to dismiss where complaint plead trade secrets by alleging "information laying out its design, research and development, test methods and results, manufacturing processes, quality assurance, marketing, and regulatory compliance related to its development a microsystem for drug delivery").

The Third Circuit's decision in *Mallet* undermines Plaintiff's position. In *Mallet*, the Third Circuit vacated a preliminary injunction because the district court improperly considered broad categories of Mallet information trade secrets, including "Mallet's formulas"; "customer pricing orders demonstrating Mallet's pricing information"; "identification of customers experiencing difficulty with Mallet's products"; and "discussions of customers' preferences and complaints." *Mallet*, 16 F. 4th at 382. Like in *Mallet*, the FAC describes the alleged trade secrets to which Individual Defendants had access only in broad categories, e.g., "detailed customer lists;" "pricing strategies"; "product integration capabilities"; "technical support protocols"; and "competitive analysis which includes analysis of Varonis' competitor's products with their strengths and weaknesses". D.I. 46, p. 14. The Third Circuit made clear in *Mallet* that a "list of general categories of business and technical information . . . falters against the standard for specifying a trade secret." *Id.* Thus, like the broadly described trade secrets in *Mallet*, the FAC here fails to describe the

33268843.1

alleged trade secrets with enough detail for this Court to evaluate whether the information is entitled to trade secret protection.

### 2.  The Inevitable Disclosure Doctrine Does Not Support a DTSA Claim.

Next, Plaintiff argues "threatened misappropriation" under the DTSA encompasses the inevitable disclosure doctrine.[6] Varonis cites no case law (Plaintiff's misreading of *Fres-co Systems USA, Inc. v. Hawkins* included) to support its position or refute the myriad federal district courts that have dismissed DTSA claims based solely on inevitable disclosure. *See* D.I. 46, p. 15-16.

Though a court may grant injunctive relief to prevent "any actual[7] or threatened misappropriation", such relief must be based on "evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(ii)(I). Plaintiff argues it sufficiently alleged "threatened misappropriation" because Individual Defendants had **access** to Varonis' trade secrets and now work in similar positions for a competitor, making it "**virtually certain**" (i.e., inevitable) they will disclose Varonis' trade secrets. D.I. 46, p. 15. The FAC's allegations therefore rest entirely on what the Individual Defendants supposedly have in their heads; nothing more. *See* FAC ¶¶ 131-133. DTSA expressly rejects claims based solely on the information retained in a former employee's memory. *See, e.g.*, *Idexx Lab'ys v. Bilbrough*, 2022 WL 3042966, at *3-5 (D. Me. Oct. 4, 2022) (dismissing DSTA claim solely on inevitable disclosure of trade secrets); *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 WL 3183063, at *4 (D. Del. June 26, 2024) (dismissing DTSA claim where plaintiff alleged defendant threatens to misappropriate

---

[7] Plaintiff does not suggest–nor could it–that any Defendant is in possession of or actually misappropriated, e.g., acquired or disclosed, any trade secret of Plaintiff. 18 U.S.C. § 1839(5). Indeed, Plaintiff shut off Individual Defendants' access to its systems and email immediately after they gave notice of their resignation. *See* FAC ¶¶ 18, 106.

33268843.1

former employer's trade secret at some future time); *AWP, Inc. v. Henry*, 2020 WL 6876299, at *5 (N.D. Ga. Oct. 28, 2020) (dismissing DTSA claim based solely on inevitable disclosure doctrine).

Plaintiff misreads the Third Circuit's decision in *Fres-co*. The *Fres-co* court did not assess the viability of the inevitable disclosure doctrine under the DTSA when, like here, the sole basis for the court's jurisdiction is federal question jurisdiction. *See* FAC ¶ 11; *Fres-co*, 690 F. App'x at 75-76. Rather, the Third Circuit, in a diversity jurisdiction action, *applied Pennsylvania law* in favor of the inevitable disclosure doctrine in an injunction analysis hinged on both the DTSA and state law trade secret claim. *Id.* Thus, contrary to Plaintiff's Opposition, no district court in the Third Circuit held the inevitable disclosure doctrine can support a DTSA claim.

## C. The DUTSA Claim Fails Because Plaintiff's FAC Does Not Allege Any Misappropriation Occurred in Delaware.

Plaintiff concedes, as it must, that the DUTSA does not apply extraterritorially and the FAC does not allege any misappropriation occurred in Delaware. Despite this, it argues its DUTSA claim survives because the statute's extraterritorial scope is really a "choice of law" issue that this Court should resolve later, and it need not "plead [the] governing law or geographic lotus of the alleged conduct at this stage of the case." D.I. 46, p. 17-18. Both arguments are red herrings.

First, Delaware courts routinely assess the viability of DUTSA claims at the motion to dismiss stage, especially where a complaint does not allege *any* misappropriation occurred in Delaware. *Focus Fin. Partners, LLC v. Holsoppel*, 250 A.3d 939, 970 (Del. Ch. 2020) (dismissing DUTSA claim because complaint lacked any allegation that misappropriation occurred in Delaware); *Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022) (dismissing DUTSA claim without prejudice); *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.*, 1988 WL 116423, at *4 (Super. Ct. Oct. 21, 1988) (agreeing in the context of DUSTA claim with principle that a forum state may not exercise its laws over cases with little or no connection to it).

33268843.1

That is the case here. To justify its pleading deficiency, Plaintiff alleges Cyera "points to no allegation in the [FAC] that states the misappropriation occurred outside of Delaware." D.I. 46, p. 18. Cyera does not have to. Plaintiff has the burden to adequately plead the elements of its claims, i.e., that misappropriation occurred in Delaware, not Defendants. Absent any allegation of misappropriation occurring in Delaware, "[o]ne thing is clear: Delaware law does not apply." *Focus Fin*, 250 A.3d at 971.

Second, the existence of other state trade secret laws, such as Florida's and Georgia's, does not rescue Plaintiff's DUTSA claim. In *Weiss*, this Court rejected this exact argument where, as here, the plaintiff *expressly* alleged a DUTSA claim but did not allege that any misappropriation occurred in Delaware. *Compare Weiss*, 2022 WL 17961568, at *4 (dismissing DUTSA where no allegation of misappropriation occurred in Delaware but complaint alleged a cause of action titled "Trade Secret Misappropriation Under Delaware Uniform Trade Secrets Act"); *with* FAC, Court IV (alleging cause of action that reads "Violation of Delaware Uniform Trade Secrets Act, 6 Del. C. §§ 2001-2009," but failing to allege any misappropriation occurred in Delaware).[8]

### III. CONCLUSION

For the reasons above, and those in Cyera's Opening Brief, this Could should grant Cyera's Motion to Dismiss in its entirety.

---

[8] At best, *Weiss* might support permitting Plaintiff to amend its FAC to plead a cause of action under another state's laws.

33268843.1

Date: September 5, 2025

Respectfully submitted,

REED SMITH LLP

*/s/ Brian M. Rostocki*

Brian M. Rostocki (No. 4599)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: brostocki@reedsmith.com

OF COUNSEL:

Adam R. Roseman (*pro hac vice admitted*)
1717 Arch St., Suite 3100
Telephone: (215) 851-8103
Facsimile: (215) 851-1420
E-mail: aroseman@reedsmith.com

Garrett Parks
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
Facsimile: (303) 552-3799
E-mail: gparks@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*

33268843.1

- 11 -