# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| VARONIS SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>MATTHEW GUANCIALE and CYERA<br>US INC., and DAVID SCHMID,<br><br>      Defendants. | C.A. No.: 1:25-cv-00571-GBW |

## OPENING BRIEF OF DEFENDANT CYERA US INC.
## IN SUPPORT OF MOTION TO DISMISS

Dated: April 1, 2026

OF COUNSEL

Adam R. Roseman, Esq. (*pro hac vice*)
REED SMITH LLP
1717 Arch St., Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8103
aroseman@reedsmith.com

Garrett Parks, Esq. (*pro hac vice*)
REED SMITH LLP
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
gparks@reedsmith.com

REED SMITH LLP
Brian M. Rostocki (No. 4599)
Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7500
brostocki@reedsmith.com
jforcier@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ................................................................................1

II. BRIEF STATEMENT OF THE ALLEGATIONS.................................................3

    A. The Parties ................................................................................................3

    B. The Individual Defendants' Restrictive Covenants .....................................3

    C. Guanciale's Employment with Plaintiff and Cyera. ..................................5

    D. Schmid's Employment with Plaintiff and Cyera. .......................................6

    E. Plaintiff's Allegations Against Cyera. ......................................................7

III. PROCEDURAL HISTORY ...............................................................................8

IV. ARGUMENT ....................................................................................................9

    A. Legal Standard. ........................................................................................9

    B. This Court Should Dismiss the Allegations and Causes of Action that Violate the Court's Order. ............................................................................................10

    C. The SAC Fails to State a Claim Under the DTSA (Count III). ..............11

        1. The SAC Remains Devoid of Articulating Protectable Trade Secrets. .......12

        2. The SAC Does Not Allege Actual or Threatened Misappropriation. ..........12

        3. The Inevitable Disclosure Doctrine Does Not Support a DTSA Claim. .....13

    D. The DUTSA Claim Fails as a Matter of Law (Count IV)........................15

    E. Plaintiff's Tortious Interference Claims (Counts V-VI) Fail as a Matter of Law. ..16

        1. The Restrictive Covenant Agreements' Non-Competes are Invalid and Unenforceable. ..............................................................................................17

            a. The Non-Competes are Geographically Overbroad. ........................17

            b. Plaintiff Cannot Establish the Non-Competes are Tied to a Legitimate Business Interest. ........................................................................18

        2. Plaintiff Cannot Establish the Remaining Elements of its Tortious Interference Claims. .........................................................................................19

    F. Plaintiff Fails to State a Claim of Tortious Interference with Employment Agreements Against Cyera (Count VII). .................................................20

V. CONCLUSION....................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*AlixPartners, LLP v. Mori*,
2022 LEXIS 85 (Del. Ch. Apr. 14, 2022)..................................................................................16

*Aon PLC v. Alliant Ins. Servs., Inc.*,
2023 LEXIS 102153 (N.D. Ill. June 9, 2023)..........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................9, 10, 20

*AWP, Inc. v. Henry*,
2020 LEXIS 222087 (N.D. Ga. Oct. 28, 2020) .......................................................................14

*Battaglia Mgmt., Inc. v. Abramowicz*,
2024 LEXIS 113061 (D. Del. June 26, 2024)..........................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................9, 20

*Beta Pharma, Inc. v. InventisBio (Shanghai) Co.*,
2022 WL 17547265 (D.N.J. Dec. 8, 2022)..............................................................................13

*Bureau Veritas Tech. Assessments LLC v. Brosa*,
No. 25-02339-PHX-JJT, 2026 LX 97627 (D. Ariz. Feb. 18, 2026) .......................................14

*Cleveland Integrity Servs., LLC v. Byers*,
2025 WL 658369 (Del. Ch. Feb. 28, 2025) .............................................................................19

*Cotiviti, Inc. v. Deagle*,
501 F. Supp. 3d 243 (S.D.N.Y. 2020)......................................................................................15

*Dow Chem. Canada Inc. v. HRD Corp.*,
909 F. Supp. 2d 340 (D. Del. 2012).........................................................................................12

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
2022 LEXIS 231674 (D. Del. Dec. 27, 2022) .........................................................................16

*Fair Isaac Corp. v. Gurobi Optimization, LLC*,
2025 WL 2636403 (D. Del. Sept. 12, 2025).............................................................................14

*Faw, Casson & Co. v. Cranston*,
375 A.2d 463 (Del. Ch. 1977)..................................................................................................17

*Flores v. Strauss Water Ltd.*,
2016 LEXIS 145 (Del. Ch. Sept. 22, 2016).........................................................................16, 19

*Focus Fin. Partners, LLC v. Holsoppel*,
250 A.3d 939 (Del. Ch. 2020)...............................................................................................15, 16

ii

*Fortline v. McCall,*
   2024 LEXIS 317 (Del. Ch. Sept. 5, 2024) ................................................................17

*FP UC Holdings, LLC v. Hamilton,*
   2020 LEXIS 110 (Del. Ch. Mar. 27, 2020) ..............................................................17

*Fres-co Sys. USA v. Hawkins,*
   690 F. App'x 72 (3d Cir. 2017) ...........................................................................14, 15

*Helms v. Nationwide Ins. Co. of Am.,*
   280 F.R.D. 354 (W.D. Pa. 2012) .............................................................................10

*Higgins v. Monsanto Co.,*
   862 F. Supp. 751 (N.D.N.Y. 1994) ..........................................................................10

*Hub Grp., Inc. v. Knoll,*
   2024 LEXIS 250 (Del. Ch. July 18, 2024) ...............................................................17

*Idexx Lab'ys v. Bilbrough,*
   2022 LEXIS 136676  (D. Me. Oct. 4, 2022) .............................................................14

*Imagine Grp., LLC v. Biscanti,*
   2025 WL 3268486 (D. Del. Nov. 24, 2025) .............................................................14

*Intertek Testing Services NA, Inc. v. Eastman,*
   2023 LEXIS 66 (Del. Ch. Mar. 16, 2023) ................................................................18

*Intertek Testing Servs. v. Eastman,*
   2023 LEXIS 66 (Del. Ch. Mar. 16, 2023) ...........................................................17, 18

*Kinship Partners, Inc. v. Embark Veterinary, Inc.,*
   2022 LEXIS 2804 (D. Or. Jan. 3, 2022) ...................................................................14

*Kodiak Bldg. Partners LLC v. Adams,*
   2022 LEXIS 288 (Del. Ch. Oct. 6, 2022) .................................................................18

*Labyrinth, Inc. v. Urich,*
   2024 LEXIS 15 (Del. Ch. Jan. 25, 2024) ..................................................................18

*Leucadia, Inc. v. Applied Extrusion Techs, Inc.,*
   755 F. Supp. 635 (D. Del. 1991) ..............................................................................20

*Lithero v. AstraZeneca Pharms., LP,*
   2020 LEXIS 145592 (D. Del. Aug. 13, 2020) ..........................................................15

*Luscavage v. Dominion Dental USA, Inc.,*
   2007 LEXIS 88 (Del. Super. Mar. 20, 2007) ............................................................16

*Mallet & Co. Inc. v. Lacayo,*
   16 F. 4th 364 (3d Cir. 2021) .....................................................................................12

*Montway LLC v. Navi Transp. Servs. LLC*,
  809 F. Supp. 3d 200 (D. Del. 2025).................................................................................13

*Mwithiga v. Pierce*,
  2025 WL 1261229 (D. Nev. 2025) ..................................................................................10

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021).............................................................................................11

*Park Lawn Corp. v. Plotbox Inc.*,
  2021 U.S. Dist. LEXIS 209180 (D. Del. Oct. 29, 2021) .................................................17

*Payscale Inc. v. Norman & Bettercomp, Inc.*,
  2025 LEXIS 141 (Del. Ch. June 9, 2025).........................................................................17

*Payscale Inc. v. Norman*,
  2026 WL 774876 (Del. Mar. 19, 2026) ...........................................................................18

*President v. Gov't of the V.I.*,
  2025 U.S. App. LEXIS (3rd Cir. Jan. 27, 2025)...............................................................16

*SI Handling Sys., Inc. v. Heisley*,
  753 F.2d 1244 (3d Cir. 1985)...........................................................................................12

*Sunbelt Rentals, Inc. v. McAndrews*,
  552 F. Supp. 3d 319 (D. Conn. 2021)..............................................................................14

*U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt.*,
  240 F.R.D. 149 (D.N.J. 2007)..........................................................................................10

*Zebra Strategies, Inc. v. Gonzalez-Nazario*,
  764 F. Supp. 3d 144 (S.D.N.Y. 2025)..............................................................................13

**Statutes**

6 Del. C. § 2001 ......................................................................................................................15

6 Del. C. § 2007(a)..................................................................................................................20

18 U.S.C. § 1836(b)(1) ............................................................................................................12

18 U.S.C. § 1836(b)(3)(A)(i)(I) ...............................................................................................13

18 U.S.C. § 1836(c) .................................................................................................................15

18 U.S.C. § 1839(5)..................................................................................................................12

**Rules**

Fed. R. Civ. P. 8(a)(2)..........................................................................................................9, 20

## I.   SUMMARY OF ARGUMENT

Nearly a year after Plaintiff Varonis Systems, Inc. ("Plaintiff") initiated this action, it still fails to plead a single viable cause of action against Matthew Guanciale, David Schmid (collectively "Individual Defendants") or Cyera US, Inc. ("Cyera") (together, "Defendants")—and the Second Amended Complaint ("SAC") does not cure those deficiencies. The Court already dismissed Plaintiff's case once, and it should do so again—this time with prejudice. The reason for Plaintiff's persistent failure is simple: this lawsuit was never about remedying any real, cognizable harm because Plaintiff has suffered none. Rather, it is an attempt to punish the Individual Defendants for having the audacity to pursue better employment opportunities and to harass Cyera for hiring them. Plaintiff has weaponized this litigation as an instrument to intimidate former employees and chill the lawful exercise of their right to work in their chosen field.

On February 10, 2026, the Court granted Defendants' motions to dismiss because the First Amended Complaint ("FAC") failed to identify the trade secrets at issue with specificity as required under the federal Defend Trade Secrets Act ("DTSA") ("Opinion"). D.I. 56. The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims but granted Plaintiff limited leave to amend "strictly to remedy" the deficiencies identified in the Court's Opinion and Defendants' motions (the "Order"). D.I. 57. Plaintiff ignored the Court's directive—treating narrow leave to amend as an invitation to pile on new, unsupported allegations and an entirely new cause of action, further confirming that this case is not about protecting legitimate business interests but about leveraging the judicial process to harass the Individual Defendants and Cyera.

The SAC purports to more specifically identify the alleged confidential information and trade secrets the Individual Defendants accessed during their employment. But Plaintiff is just window dressing. The SAC remains insufficient and multiple independent grounds exist for the Court to grant Cyera's motion to dismiss with prejudice.

1

1.      The SAC violates the Court's Order because it does far more than "strictly remedy" the deficiencies identified in the Opinion and Defendants' motions to dismiss. The SAC adds new vague and ambiguous allegations regarding supposed "competitive harm" Plaintiff suffered after the Individual Defendants joined Cyera (SAC ¶¶ 107-115, 154-159), and Cyera's alleged scheme to induce Plaintiff's employees in the United States and elsewhere to breach their alleged post-employment contractual obligations. *Id.* ¶¶ 161-165. The SAC also brings an entirely new cause of action against Cyera: "Tortious Interference with Employment Agreements." This was not authorized by the Court, and it should strike these allegations and dismiss the new cause of action.

2.      The SAC does not fix the legal and factual deficiencies contained in the FAC, including alleging any actual wrongdoing by Defendants.

- *First*, Plaintiff's DTSA and DUTSA claims (Counts III & IV) against Cyera fail because the SAC still does not plead protectable trade secrets or include any allegations Cyera misappropriated (or actually threaten to misappropriate) Plaintiff's trade secrets or confidential information. Plaintiff's claim is based solely on inevitable disclosure and speculation about four unidentified customers that moved to Cyera (without any facts that the Individual Defendant had anything to do with it), which does not form the basis of a DTSA claim. Plaintiff's DUTSA claim fails because the DUTSA applies only to trade secret misappropriation that occurred in Delaware, which the SAC again does not allege.

- *Second*, Plaintiff's tortious interference with contract claims (Counts V & VI) against Cyera fail because (1) the worldwide non-competes Cyera allegedly interfered with are unenforceable on their face; (2) the non-solicits are likewise overbroad and unenforceable; (3) Plaintiff failed to plead facts sufficient to establish the other elements of tortious interference (intent, causation, and actual injury); and (4) the Court has no obligation to fix Plaintiff's defective covenants via "blue penciling."

- *Third*, Plaintiff's new "Tortious Interference with Employment Agreements" claim against Cyera must be dismissed under Rule 12(e) because it is so vague and ambiguous Cyera cannot prepare a response. The cause of action and allegations fail to allege, among other things, the names of the former employees who are subject to the Employment Agreements, the terms of the post-employment contractual obligations to which Cyera allegedly interfered, and whether those Employment Agreements are governed by Delaware law. Under even the most generous pleading standard, these allegations do not stand up.

## II.    BRIEF STATEMENT OF THE ALLEGATIONS[1]

### A.    The Parties

Plaintiff is a data security and analytics corporation, incorporated in Delaware, and has a principal place of business in Miami, Florida. SAC ¶¶ 1, 14. Plaintiff alleges Cyera is a direct competitor, incorporated in Delaware, and has a principal place of business in New York, New York. *Id.* ¶¶ 4-5. Guanciale is a former employee of Plaintiff, current Cyera employee, and a Florida resident. *Id.* ¶¶ 2-3, 5. Schmid is a former employee of Plaintiff, current Cyera employee, and a Georgia resident. *Id.* ¶¶ 6-8.

### B.    The Individual Defendants' Restrictive Covenants

Plaintiff required the Individual Defendants to sign At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreements ("Restrictive Covenant Agreements").[2] *Id.* ¶¶ 9, 50 and Exhibits 1-2 (D.I. 60-2).  Plaintiff does not allege the Individual Defendants could or did negotiate or bargain with Plaintiff regarding the terms in the Restrictive Covenants. *See generally id.*

The Restrictive Covenant Agreements define "Company Confidential Information" [3] and impose identical restrictions on use of that information in the same way. The Individual Defendants are prohibited from disclosing Plaintiff's "Confidential Information" until the earlier of (1) the date

---

[1] For purposes of this motion only, Cyera accepts the allegations in the SAC as true.

[2] Cyera does not waive and expressly reserves all rights and defenses to the allegations in the SAC, including compelling this case to arbitration pursuant to the terms of the Restrictive Covenant Agreements entered into between Guanciale and Plaintiff and Schmid and Plaintiff.

[3] "Confidential Information" means information that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with the Company. Company Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Company Confidential Information. The Restrictive Covenant Agreements provide examples of Confidential Information. Confidential Information also includes all Company trade secrets. SAC Ex. 1-2, § 2(A).

3

the information is not considered "Confidential Information" under the Restrictive Covenant Agreements, or (2) 36 months after their employment ends (so long as the Confidential Information does not constitute a "trade secret" under applicable law.). SAC Ex. 1-2.

The Restrictive Covenant Agreements also include identical post-employment non-competes, which Plaintiff alleges are valid and enforceable under Delaware law:

> A.    *Covenant Not to Compete*. I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I will not, directly or indirectly, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee consultant, contractor, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, creditor or otherwise in any other capacity for, (ii) own purchase, organize, or take preparator steps for the organization or competition of, or (iii) build design, finance, acquire, lease, operate, manage, control, invest in, advise, work or consult for or otherwise join, participate in or affiliate myself with, ***any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business***. ***<u>The foregoing covenant shall cover my activities in every part of the world</u>***.

SAC Ex. 1-2 (emphasis added). The non-competes do not define relevant terms like "competitive" or "Company business." *Id.* Likewise, the SAC does not provide context or clarification regarding the meaning of the undefined terms in the non-competes. Moreover, the SAC does not explain why the non-competes cover all "activities" throughout "every part of the world." *See generally* SAC.

The Restrictive Covenant Agreements also prohibit the Individual Defendants, for twelve (12) months after their employment ends, from any type of contact whatsoever including, but not limited to, any manner of soliciting or attempting to solicit Plaintiff's customers, employees, contractors, or interfering with or attempting to interfere with Plaintiff's business relationships. FAC Ex. 1-2, § 7(B). "Customer" is defined broadly to include both existing Plaintiff customers and "all persons or entities that have used, inquired of or been solicited by me for the Company's services ... or about how I have learned material non-public information." *Id.*

4

C.      **Guanciale's Employment with Plaintiff and Cyera.**

Guanciale began his employment with Plaintiff on May 21, 2018. *Id.* ¶ 18. Guanciale was initially a Sales Engineer then promoted to Sales Engineering Team Lead and Manager, where he oversaw a team of Sales Engineers. *Id.* ¶ 48. His last position with Plaintiff was Strategic Sales Engineer where he was responsible for working with certain customers and prospective clients. *Id.* Throughout his employment, Guanciale allegedly developed relationships with existing and prospective customers. *Id.* ¶¶ 60-77. To that end, he educated customers about Plaintiff's capabilities, and he created and presented demonstrations of Plaintiff's products focused on addressing specific customer needs. *Id.* ¶¶ 73-74.

According to Plaintiff, Guanciale had access and knowledge of Plaintiff's trade secrets and confidential information, including information regarding Plaintiff's products, product pipeline, existing and prospective customers, and business strategies. *Id.* ¶¶ 63, 69-71, 74; 77. Plaintiff also alleges Guanciale knows information about the capabilities of Plaintiff's product services, the challenges Plaintiff's products face, and Plaintiff's "near-term, immediate term, and long-term product roadmap." *Id.* ¶¶76-77; 80. He is also alleged to have obtained knowledge about Plaintiff's customer pricing, customers' preferences and needs, pricing strategies, customer feedback, when customer contracts were due for renewal, and how customers used its data security tools. *Id.* ¶ 73.

On March 17, 2025, Guanciale submitted his resignation to Plaintiff with two weeks' notice. *Id.* ¶ 87. The next day, Plaintiff's Senior Vice President of Worldwide Sales, Greg Pomeroy, cut off Guanciale's access to Plaintiff's computer systems and ended his employment. *Id.* In April 2025, Guanciale began his employment as a Senior Sales Engineer with Cyera. *Id.* ¶ 92. Plaintiff alleges he is performing "many of the same functions" he did for Plaintiff during his employment, including "drive sales security solutions." *Id.* ¶¶ 100, 105. Because of this, Plaintiff alleges Guanciale is "inherently likely" to violate the Restrictive Covenant Agreement and will inevitably

5

use or disclose Plaintiff's "confidential business information and plans" to unfairly compete with Plaintiff. *Id.* ¶ 104. Critically, Plaintiff does not allege Guanciale actually took any trade secrets from Plaintiff or that he has used, disclosed, or threatened to disclose any of Plaintiff's trade secrets or confidential information since joining Cyera. *See* SAC. On this point, the SAC's allegations are limited to Plaintiff losing at least two "enterprise sales opportunities" to Cyera for which Guanciale was the Sales Engineer and had access to confidential information about the prospective customers during his employment. *Id.* ¶¶ 107-115. Plaintiff alleges, though admittedly framed as mere speculation, the timing of the lost business (months after Guanciale joined Cyera) is "consistent with competitive harm" from the disclosure or use of Plaintiff's confidential information. *Id.* ¶ 115. Yet, the FAC alleges no facts to suggest Guanciale was the reason – or a reason – that those opportunities went to Cyera. *See* SAC.

### D.      Schmid's Employment with Plaintiff and Cyera.

Schmid began his employment with Plaintiff on December 9, 2019. *Id.* ¶ 76. He was a Sales Engineer until August 2023, and assisted Plaintiff's sales team with technical aspects of Plaintiff's products and services for customers. *Id.* ¶ 77. Schmid was promoted to Senior Sales Engineer and managed some of Plaintiff's most important customers and prospective customers. *Id.*

Plaintiff alleges Schmid had access to and knowledge of Plaintiff's trade secrets and confidential information. *Id.* ¶ 127. Among other things, Schmid acquired knowledge of Plaintiff's products and related business plans, services, and technical information. *Id.* ¶¶ 118, 127. Schmid also worked with Plaintiff's sales team to offer technical solutions, demo products, provide advice, and develop strategies and account plans for Varonis customers. *Id.* ¶ 128. Plaintiff alleges that to perform his customer-facing role, Schmid had access to and used Plaintiff's confidential information. *Id.* ¶¶ 128-132. On April 22, 2025, Schmid resigned and was immediately terminated. *Id.* ¶¶ 145-146. In May 2025, Plaintiff discovered Schmid had joined Cyera. *Id.* ¶ 148.

Plaintiff alleges Schmid's "current position at Cyera mirrors his former role at Varonis" and involves "similar responsibilities that could leverage Varonis' proprietary information." *Id.* ¶ 153.  As such, Plaintiff claims that "[a]llowing Schmid to continue in this capacity at Cyera poses a risk of irreparable harm." *Id.* ¶ 153. Plaintiff does not allege Schmid took any trade secrets or that he has used or disclosed any of Plaintiff's trade secrets or confidential information since he joined Cyera or threatened to do so. *See generally* SAC. Despite this, the SAC alleges Plaintiff lost at least two "enterprise sales opportunities" for which Schmid served as the managing Sales Engineer and had access to confidential information about during his employment with Plaintiff. *Id.* ¶ 154. Plaintiff alleges the timing of the alleged losses and "pricing deviations"[4] – which occurred months after Schmid joined Cyera – is "consistent with competitive harm" from the disclosure or use of Plaintiff's confidential information. *Id.* at ¶ 159. Yet, the FAC alleges no facts to suggest Schmid was the reason – or a reason – that those opportunities went to Cyera. *See* SAC.

### E.    Plaintiff's Allegations Against Cyera.

Plaintiff alleges Cyera is a competitor in the data security and data security posture management space and both offer similar "tools and functions" for these services. *Id.* ¶¶ 96-99. According to Plaintiff, Cyera "knowingly and intentionally" employs the Individual Defendants in violation of their Restrictive Covenant Agreements. *Id.* ¶¶ 202, 208. Plaintiff claims the Individual Defendants' use or disclosure of its trade secrets to Cyera is "inevitable." *Id.* ¶¶ 183, 194. Plaintiff then speculates that "[a]s a receiver and beneficiary of this information, Cyera, too, threatens to misappropriate Varonis' trade secrets" and by virtue of employing the Individual Defendants,

---

[4] For one opportunity, Plaintiff allegedly had to provide a substantial discount because of "competitive pressure from Cyera." *Id.* ¶ 155. And for the other enterprise opportunity, in July 2025, the prospective customer chose to do business with Cyera after Plaintiff secured a "post-evaluation commitment" from the customer. *Id.* ¶ 157. Yet, there are no allegations that the Individual Defendants were involved in or used Plaintiff's information in any way related to these entities choosing to do business with Cyera.

Cyera has engaged in actual or threatened misappropriation. *Id.* ¶¶ 184-185, 195-196.

The SAC also alleges – for the first time – Cyera is engaged in a coordinated scheme to induce Plaintiff's employees in the United States, Canada, the United Kingdom, and South America to breach their allegedly valid and enforceable contractual obligations. *Id.* ¶¶ 161-165. As a result, Plaintiff has allegedly suffered disruption to its workforce and business, loss of personnel and institutional knowledge, and "increased risk" of misuse or disclosure of Plaintiff's confidential and/or trade secrets. *Id.* ¶¶ 165.

## III.    PROCEDURAL HISTORY

On May 8, Plaintiff filed the initial complaint alleging: (1) Guanciale breached his Restrictive Covenant Agreement; (2) violations of the DTSA and DUTSA against Guanciale and Cyera; and (3) tortious interference by Cyera with Plaintiff's contractual rights by hiring Guanciale. Plaintiff also filed motions for preliminary injunction and expedited discovery. D.I. 1-7. On June 18, Plaintiff filed the FAC, a motion for expedited discovery, and a motion for preliminary injunction against Schmid. D.I. 18-23. The allegations against Schmid are substantially similar to those against Guanciale. *Compare* D.I. 1 to D.I. 18. The FAC alleged the same causes of action and adds (1) a breach of contract claim against Schmid, (2) Schmid as a defendant to the DTSA and DUTSA claims, and (3) alleges Cyera tortiously interfered with Individual Defendants' Restrictive Covenant Agreements. *See* D.I. 18.

On July 16, 2025, Defendants filed motions to dismiss (D.I. 33, 35) the FAC in its entirety. On February 10, 2026, this Court granted Defendants' motions to dismiss[5] and found Plaintiff's sole federal law claim (a violation of the DTSA) failed as a matter of law because the FAC did not identify the trade secrets Defendants allegedly misappropriated with specificity. D.I. 56 at 6-7. The Court also exercised its discretion to decline supplemental jurisdiction over the state law claims.

---

[5] The Court denied as moot all other pending motions.

*Id.* at 8. The Court then it permitted Plaintiff to file a "Second Amended Complaint, ***strictly to attempt to remedy*** the deficiencies identified by the Court's Memorandum Opinion and any deficiencies alleged in Defendants' Motions to Dismiss …." D.I. 57 (emphasis added).

On March 17, 2026, the SAC was deemed filed and is materially identical to the FAC except that it adds allegations regarding (1) the trade secret and confidential information the Individual Defendants had access to during their employment with Plaintiff (SAC ¶¶ 18-45); (2) four lost sales opportunities after Individual Defendants resigned and joined Cyera (*Id.* ¶¶ 107-115, 154-159); and (3) Cyera's alleged efforts to induce Plaintiff's employees in the United States and in foreign countries to violate their purportedly valid and enforceable restrictive covenants. *Id.* ¶¶ 161-165. The SAC also purports to add a new cause of action against Cyera: "Tortious Interference with Employment Agreements." SAC, Count VII.

## IV.   ARGUMENT

### A.  Legal Standard.

Rule 8(a)(2) requires that a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 [] does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Further, "a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a

9

complaint, they must be supported by factual allegations." *Id.* Because the FAC fails to meet the requirements of Rules 8(a) and 12(b)(6), this Court should dismiss for failure to state a claim.

## B. This Court Should Dismiss the Allegations and Causes of Action that Violate the Court's Order.

When a court grants leave to amend for a limited purpose, a plaintiff may not use that opportunity to raise new claims or theories that exceed the court's authorization. *See Higgins v. Monsanto Co.,* 862 F. Supp. 751, 754 (N.D.N.Y. 1994) (disregarding allegations exceeding scope of leave to amend as violative of Rule 15(a)); *U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt.,* 240 F.R.D. 149, 152–53 (D.N.J. 2007) (dismissing claims and parties added beyond limited scope of leave to amend). Courts routinely enforce the boundaries of their orders granting limited leave to amend. *Helms v. Nationwide Ins. Co. of Am.,* 280 F.R.D. 354, 355–56 (W.D. Pa. 2012) (finding amended complaint exceeded scope of leave granted)*; Mwithiga v. Pierce,* 2025 WL 1261229 (D. Nev. 2025) (striking claims and parties exceeding authorized scope of amendment).

On February 10, 2026, the Court granted Defendants' Motions to Dismiss but permitted Varonis to "file a Second Amended Complaint, strictly to attempt to remedy the deficiencies identified by the Court's Memorandum Opinion and any deficiencies alleged in Defendants' Motions to Dismiss." D.I. 57. The SAC, however, ignores the Court's express directive.

First, Plaintiff added new allegations concerning lost customers that were not part of its prior pleading. The SAC now alleges Plaintiff lost sales opportunities and specific customer accounts to Cyera in the months after the Individual Defendants' departures. *See, e.g.*, SAC ¶¶ 107–115, 154–159. The lost sales opportunities occurred in May, July, September, and November 2025. *Id.* ¶¶ 109, 111, 155, 157. Individual Defendants were allegedly the Sales Engineers for these accounts and had access to the customers' confidential information during their employment at Plaintiff. *Id.* ¶¶ 113, 156-158. The SAC alleges the timing of Individual Defendants' departures coupled with their access to Plaintiff's trade secrets and confidential information is "consistent with harm" from disclosure of

10

Plaintiff's confidential and trade secret information. *Id.* ¶¶ 114, 159. Yet, Plaintiff does not allege the Individual Defendants were the reason, or even a reason, that those unnamed customers left Plaintiff for Cyera (and there is no declaration or other allegation from those purported former customers suggesting the Individual Defendants played any role in their decisions to do not do business with Plaintiff). Plaintiff also does not tie these accounts moving to Cyera to any misappropriation by the Individual Defendants. This pure speculation should be stricken.

Second, Plaintiff added entirely new allegations and a cause of action, Count VII, alleging "Tortious Interference with Employment Agreements" against Cyera. *Id.* ¶¶ 160-165, 212–219. This count asserts through pure speculation and hyperbole that Cyera engaged in a "coordinated and systematic solicitation campaign" targeting Varonis employees beyond Guanciale and Schmid, including employees "located in the United States, Canada, the United Kingdom, and South America." *Id.* ¶¶ 161–165. Plaintiff likewise tethers no facts to this cause of action, and simply presumes the court will accept these bare conclusions as true. That is not the legal standard. Putting legal deficiencies of this claim aside, these allegations were not in the Complaint or FAC and do not attempt to cure any deficiency identified by the Court's Opinion. Thus, this Court should dismiss or strike the allegations in paragraphs 107-115; 154-159; 160-165; and Count VII should be dismissed because it violates the Court's Order.

### C.    The SAC Fails to State a Claim Under the DTSA (Count III).

To establish a DTSA misappropriation claim, Plaintiff must show: (1) the existence of a trade secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal quotation marks and citations omitted). Plaintiff's DTSA claim fails because the SAC still does not articulate more than categories of

information and does not allege Defendants misappropriated or threatened to misappropriate Plaintiff's trade secrets.

### 1. The SAC Remains Devoid of Articulating Protectable Trade Secrets.[6]

The SAC still fails to allege trade secrets with "sufficient specificity." *Id.* at 906. "Generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets is not enough." *Mallet & Co. Inc. v. Lacayo*, 16 F. 4th 364, 384 fn. 24 (3d Cir. 2021). The SAC tries to cure its deficiencies by expanding the list of generic categories via vague and ambiguous descriptions of its business. SAC ¶ 179. The vague and generic terms and identifiers do not form "a clear identification of a trade secret." *Dow Chem. Canada Inc. v. HRD Corp.,* 909 F. Supp. 2d 340, 347-48 (D. Del. 2012), *aff'd,* 587 F. App'x 741 (3d Cir. 2014). Similarly, information about customers and partners available to third parties, such as on Plaintiff's website,[7] is not a trade secret. *SI Handling Sys., Inc. v. Heisley,* 753 F.2d 1244, 1257 (3d Cir. 1985). Plaintiff's DSTA claim fails again for this reason.

### 2. The SAC Does Not Allege Actual or Threatened Misappropriation.

The DTSA creates a civil cause of action for misappropriation of trade secrets "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "Misappropriation" means the acquisition, disclosure, or use of a trade secret by improper means, or by one who knows or has reason to know the information was acquired improperly. *See* 18 U.S.C. § 1839(5).

Like the Complaint and FAC, the SAC still fails to allege any facts showing the Individual Defendants or Cyera unlawfully acquired, disclosed, or used any specific trade secret. Though the SAC identifies categories of purported confidential information and trade secrets to which the

---

[6] Cyera adopts all the arguments made by the Individual Defendants in their Opening Brief in Support of their Motion to Dismiss, including those related to Plaintiff's failure to identify protectable trade secrets.

[7] *See* https://www.varonis.com/partners/locator; https://www.varonis.com/customer-stories.

Individual Defendants had access during their employment (SAC, ¶¶ 18-45, 59, 63, 127, 129), the SAC fails to allege that the Individual Defendants took, used, or disclosed any specific information. *See* SAC ¶¶ 179–186. Rather, Plaintiff continues to rely on pure speculation that disclosure is "inevitable" based on the Individual Defendants' job duties with Cyera and Plaintiff and that harm it has allegedly suffered is "consistent with" disclosure of its trade secrets. *Id.* ¶¶ 114, 159, 183.

Courts applying the DTSA consistently hold that mere allegations of access to trade secrets combined with employment by a competitor are insufficient to state a claim misappropriation of trade secrets claim. *See Montway LLC v. Navi Transp. Servs. LLC,* 809 F. Supp. 3d 200, 212 (D. Del. 2025) (where "circumstantial evidence may leave ambiguous the lawfulness of the competitor's conduct," some "plus factor" is generally necessary to adequately plead misappropriation); *Beta Pharma, Inc. v. InventisBio (Shanghai) Co.*, 2022 WL 17547265, at *3 (D.N.J. Dec. 8, 2022) (dismissing trade secret claim because plaintiff relied exclusively on the defendant's access to trade secrets and the defendant's alleged meeting with a competitor); *Zebra Strategies, Inc. v. Gonzalez-Nazario,* 764 F. Supp. 3d 144, 158 (S.D.N.Y. 2025) (dismissing DTSA claim where Plaintiff plead access, but not disclosure or use of, former employer's trade secrets). A plaintiff must allege specific facts showing actual or imminent threatened misappropriation—not just the theoretical possibility disclosure of trade secrets may have caused harm. After nearly a year, and multiple amendments to the complaint, Plaintiff is still unable to take its claims past pure possibility to real plausibility.

### 3.   The Inevitable Disclosure Doctrine Does Not Support a DTSA Claim.

Plaintiff's reliance on the "inevitable disclosure" doctrine does not salvage its DTSA claim. The DTSA expressly limits the use of the inevitable disclosure theory to support injunctive relief. The statute provides that a court "may not ... prevent a person from entering into an employment relationship, and ... conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." 18 U.S.C. §

1836(b)(3)(A)(i)(I). But the inevitable disclosure doctrine permits relief without "proof of actual or an identified threat of disclosure" when a person with certain information will inevitably use the information at some point during their new employment. Thus, contrary to the DTSA, the inevitable disclosure doctrine "allows relief based 'merely on the information the person knows.'" *Idexx Lab'ys v. Bilbrough*, 2022 LEXIS 136676, at *9-15 (D. Me. Oct. 4, 2022).

Though some Delaware courts have recognized the inevitable disclosure doctrine to pursue claims under state trade secret law or breach of contract, Delaware courts have consistently held a party cannot rely on the inevitable disclosure doctrine to support a federal DTSA claim.[8] *Imagine Grp., LLC v. Biscanti*, 2025 WL 3268486, at *3 (D. Del. Nov. 24, 2025) (dismissing DTSA claim to extent it relies on the inevitable disclosure doctrine and concluding "DTSA does not support plaintiffs' ability to state a claim under the 'inevitable disclosure' theory"); *Fair Isaac Corp. v. Gurobi Optimization, LLC*, 2025 WL 2636403, at *3-6 (D. Del. Sept. 12, 2025) (finding allegations that former employee merely resigned and failed to provide "assurance" he would not disclose plaintiff's trade secrets insufficient to establish threatened misappropriation under DTSA); *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 LEXIS 113061, at *10 (D. Del. June 26, 2024) (finding allegations that defendant has or is planning to misappropriate plaintiff's trade secrets by disclosing and/or using that information during her new employment and that defendant's new employer has acquired plaintiff's trade secrets insufficient to establish DTSA claim).[9]

Courts that have applied the inevitable disclosure doctrine to DTSA claims have done so

---

[8] Whether the inevitable disclosure doctrine provides a basis for a claim under the DTSA in the absence of actual or overtly threatened disclosure is an unsettled area of law. *See Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 331 (D. Conn. 2021)

[9] Numerous other federal courts have found the DTSA does not authorize application of the inevitable disclosure doctrine. *See Bureau Veritas Tech. Assessments LLC v. Brosa*, No. 25-02339-PHX-JJT, 2026 LX 97627, at *19 (D. Ariz. Feb. 18, 2026); *Idexx Lab'ys*, 2022 LEXIS 136676, at *9-15; *Kinship Partners, Inc. v. Embark Veterinary, Inc.*, 2022 LEXIS 2804, at *19 (D. Or. Jan. 3, 2022); *Aon PLC v. Alliant Ins. Servs., Inc.*, 2023 LEXIS 102153, at *13 (N.D. Ill. June 9, 2023); *AWP, Inc. v. Henry*, 2020 LEXIS 222087, at *13 (N.D. Ga. Oct. 28, 2020).

14

only in diversity jurisdiction actions or failed to distinguish between federal recognition of the doctrine versus state recognition of the doctrine. For example, in *Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72 (3d Cir. 2017), the Third Circuit applied the inevitable disclosure doctrine to a DTSA claim. *Fres-co*, however, is easily distinguishable. *Fres-co* was a diversity jurisdiction suit and the court applied Pennsylvania law in favor of the inevitable disclosure doctrine in a preliminary injunction analysis that hinged on various causes of action, including both a DTSA and state law trade secret claim. *Id.* at 76, fn. 1. The *Fres-co* court assessed the viability of the inevitable disclosure doctrine without distinguishing between recovery under the DTSA and Pennsylvania trade secret law. *Id.* at 76. Thus, *Fres-co* holds only that a court may apply the inevitable disclosure doctrine based on state law to grant injunctive relief when acting under its diversity jurisdiction.

Unlike in *Fres-co*, Plaintiff alleges the sole source of this Court's jurisdiction is the federal DTSA claim. SAC ¶ 11; 18 U.S.C. § 1836(c). And unlike in diversity jurisdiction actions, this Court should not consider Delaware's use of the inevitable disclosure doctrine when evaluating the DTSA claim. Rather, this Court should follow the district courts that have directly addressed whether the inevitable disclosure doctrine applies to claims under the DTSA and find it does not. As such, this Court should dismiss Count III because Plaintiff has not alleged an actionable DTSA claim.[10]

### D.     The DUTSA Claim Fails as a Matter of Law (Count IV).

Delaware law, including the DUTSA (6 Del. C. § 2001, *et seq.*), does not apply to conduct in other states unless there is evidence the legislature intended it to.  *Focus Fin. Partners, LLC v. Holsoppel*, 250 A.3d 939, 970 (Del. Ch. 2020). There is no evidence the legislature intended the DUTSA to apply to conduct that occurs outside of Delaware and Delaware courts have held that the

---

[10] Plaintiff's sole basis for original jurisdiction in this Court is the DTSA claim. SAC ¶ 11. Provided the Court agrees Plaintiff has failed to state a viable DTSA claim and dismisses it, Cyera respectfully requests the Court exercises its discretion to dismiss Plaintiff's remaining state law claims. *See Lithero v. AstraZeneca Pharms., LP*, 2020 LEXIS 145592 at * 2-3, 5 (D. Del. Aug. 13, 2020).

DUTSA lacks extraterritorial effect. *Id.*; *accord* e.g., *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 261-62 (S.D.N.Y. 2020) ("[T]his cause of action should be dismissed because it is alleged under the wrong state's trade secret statute."). Thus, Delaware courts do not apply the DUTSA where the complaint fails to allege any misappropriation occurred in Delaware. *Focus Fin.*, 250 A.3d at 970; *AlixPartners, LLP v. Mori*, 2022 LEXIS 85, at *37 (Del. Ch. Apr. 14, 2022) (dismissing DUTSA claim where alleged misappropriation occurred in Italy even though plaintiff was Delaware entity and defendant was partner in a Delaware limited liability partners); *Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 LEXIS 231674, at *12-13 (D. Del. Dec. 27, 2022) (dismissing DUTSA claim where First Amended Complaint failed to allege any misappropriation occurred in Delaware).

Here, the SAC does not allege any conduct, let alone any actual or threatened misappropriation, occurred in Delaware. *See generally*, SAC. Rather, Plaintiff explicitly alleges that its and Cyera's principal places of business are Florida and New York respectively. *Id.* ¶¶ 1, 4. Plaintiff then alleges Guanciale resides and works in Land O'Lakes, Florida and that Schmid resides and works in Peachtree City, Georgia. *Id.* ¶¶ 2, 6. Based on these allegations, any misappropriation must have occurred in New York, Florida, or Georgia, and therefore "Delaware law does not apply." *Focus Fin.*, 250 A.3d at 970. As such, this Court should dismiss Count IV for failure to state a claim.

**E.  Plaintiff's Tortious Interference Claims (Counts V-VI) Fail as a Matter of Law.[11]**

A tortious interference with contract claim fails unless the plaintiff shows "(1) a ***valid*** contract, (2) about which the defendant[] ha[s] knowledge, (3) an intentional act by the defendant[] that is a significant factor in causing the breach of the contract, (4) without justification and (5) which causes injury." *Flores v. Strauss Water Ltd.*, 2016 LEXIS 145, at *33 (Del. Ch. Sept. 22, 2016) (emphasis added); *see also Luscavage v. Dominion Dental USA, Inc.*,

---

[11] "A federal court exercising supplemental jurisdiction over state or territorial law claims must apply the substantive law of the appropriate state or territory." *President v. Gov't of the V.I.*, 2025 U.S. App. LEXIS, at *2 (3rd Cir. Jan. 27, 2025).

2007 LEXIS 88, at *6 (Del. Super. Mar. 20, 2007) (overruled in part on other grounds) ("to succeed under [a tortious interference with contract] theory, there must be an actual breach of a valid and enforceable contract").

### 1. The Restrictive Covenant Agreements' Non-Competes are Invalid and Unenforceable.

When a tortious interference claim is premised on the alleged violation of a non-compete and that claim fails, so too does the tortious interference claim. *See Payscale Inc. v. Norman & Bettercomp, Inc.*, 2025 LEXIS 141, at *20-21 (Del. Ch. June 9, 2025) ("The parties' briefing concedes that [the tortious interference with contract claim] turns on the enforceability of a contract, and therefore rises or falls on [the breaches of non-compete and non-solicitation claims]."); *Park Lawn Corp. v. Plotbox Inc.*, 2021 U.S. Dist. LEXIS 209180, at *6 (D. Del. Oct. 29, 2021) (dismissing tortious interference claim premised on unenforceable non-compete).

In Delaware, non-competes are unenforceable unless they are "(1) reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking enforcement, and (3) survive a balancing of the equities." *FP UC Holdings, LLC v. Hamilton*, 2020 LEXIS 110, at *14 (Del. Ch. Mar. 27, 2020) (citation omitted). Thus, "agreements not to compete must be closely scrutinized as restrictive of trade." *Faw, Casson & Co. v. Cranston,* 375 A.2d 463, 466 (Del. Ch. 1977). To determine the reasonableness of a non-compete, the Court must "read the contractual language as a whole, in the context of the employment relationship." *Hub Grp., Inc. v. Knoll*, 2024 LEXIS 250, at *21 (Del. Ch. July 18, 2024).

### a. The Non-Competes are Geographically Overbroad.

Restrictive covenants "with an expansive geographic reach" may only be enforced "if the covenant appropriately covers the market where the covenantee has economic interests." *Intertek Testing Servs. v. Eastman*, 2023 LEXIS 66, at *8-10 (Del. Ch. Mar. 16, 2023) (granting motion to dismiss when non-compete covered "anywhere in the world"); *Fortline v. McCall*, 2024 LEXIS

17

317 (Del. Ch. Sept. 5, 2024) (denying preliminary injunction when non-compete covered entire United States); *Knoll*, 2024 LEXIS 250, at *21 (denying preliminary injunction when non-compete covered at least 4 countries and over 42,000 United States zip codes); *FP UC Hldgs.*, 2020 LEXIS 110, at *15 (finding noncompete overbroad when covering entire United States).

Here, the non-competes prohibit the Individual Defendants for twelve (12) months following their separation from Plaintiff from any "activity" including becoming employed ***anywhere in the world*** with any business that meets Plaintiff's undefined term of being "competitive." *See* SAC, Ex. 1-2. The SAC fails to explain why and how the Individual Defendants work must subject them to a worldwide prohibition against any type or form of employment in their profession for a year. *See generally* SAC. As such, the non-competes are invalid and can only be enforceable if Plaintiff shows their overbroad geographic scope are required to protect its real, legitimate business interests. *Eastman*, 2023 LEXIS 66, at *8-10.[12]

### b. Plaintiff Cannot Establish the Non-Competes are Tied to a Legitimate Business Interest.

A non-compete may not be "broader than necessary" to protect an employer's "legitimate business interest." *Kodiak Bldg. Partners LLC v. Adams*, 2022 LEXIS 288, at *21-24 (Del. Ch. Oct. 6, 2022). A noncompete will not be enforced when the party seeking to enforce the covenant "goes beyond those legitimate business interests" and renders them "overbroad and unenforceable." *Id.* at 20-21; *see also Payscale Inc. v. Norman*, 2026 WL 774876, *3-6 (Del. Mar. 19, 2026) (analyzing the balance of equities between employer's legitimate interests and undue hardship on restricted employee).[13]   Here, the SAC does not allege Plaintiff's business is

---

[12] The non-competes' restricted activities are also overbroad because they not only prohibit the Individual Defendants from employment with an undefined "competitive business," but also from having virtually any affiliation–in any capacity–with a "competitive business" anywhere in the world. *Adams*, 2022 LEXIS 288, at *23-24 (finding long list of restricted activities broader than necessary to protect company's legitimate business interests).

[13] Delaware courts routinely dismiss breach of contract claims where a restrictive covenant is facially overbroad. *See e.g., Labyrinth, Inc. v. Urich*, 2024 LEXIS 15, at *55 (Del. Ch. Jan. 25,

worldwide, that the Individual Defendants worked worldwide, that the Individual Defendants regularly worked with international clients, or that the non-competes, when applied to the Individual Defendants and their back-end sales engineer roles, serve any legitimate worldwide business interest that warrants protection at the expense of Individual Defendants. *See generally* SAC. Plaintiff cannot show these worldwide prohibitions when applied to Individual Defendants are "no broader than necessary" to protect any cognizable worldwide reasonable business interest of Plaintiff. *Adams*, 2022 LEXIS 288, at *21-24. For the same reasons, the non-solicitation provisions against the Individual Defendants are also invalid and unenforceable.[14]

Finally, the Court should decline to "blue pencil" facially invalid restrictive covenants. *Cleveland Integrity Servs., LLC v. Byers,* 2025 WL 658369, at *12 (Del. Ch. Feb. 28, 2025) ("doing so creates confusion, encourages employers to overreach, and encourages litigation 'by building a degree of uncertainty into every employment agreement.'").

### 2. Plaintiff Cannot Establish the Remaining Elements of its Tortious Interference Claims.

When a tortious interference claim is premised on the alleged violation of a non-compete (or non-solicit) and that claim fails, so too does the tortious interference claim. Even if the non-competes are enforceable–they are not–Plaintiff cannot establish the remaining elements of its tortious interference claims (injury, knowledge, intent, "substantial factor" causing breach). *See Strauss Water Ltd.*, 2016 LEXIS 145, at *33. Though the SAC alleges Plaintiff lost certain "enterprise sales opportunities" to Cyera months after the Individual Defendants joined Cyera, the SAC alleges only that lost "sales opportunities" are "consistent with harm" from disclosure of

---

2024) (finding restrictive covenants unreasonable on motion to dismiss); *Frontline Techs. Parent, LLC v. Murphy*, 2023 LEXIS 336, at *5 (Del. Ch. Aug. 23, 2023) (granting motion to dismiss on restrictive covenant breach of contract claim); *Intertek Testing Services NA, Inc. v. Eastman*, 2023 LEXIS 66, at *9-11 (Del. Ch. Mar. 16, 2023) (granting motion to dismiss because restrictive covenants were overbroad under Delaware law).

[14] Cyera adopts the arguments made by the Individual Defendants regard the unenforceability of their Non-Solicitation provisions.

19

Plaintiff's confidential and trade secret information. SAC, ¶¶ 107-115, 154-159. This is pure speculation. The SAC does not allege Cyera solicited or attempted to solicit the prospective customers or that the Individual Defendants used, relied on, or disclosed confidential information or trade secrets to Cyera to assist it in obtaining the prospective customers' business. *Id.* Almost a year into this case, Plaintiff *still* cannot allege it has suffered any actual harm *because* Cyera hired the Individual Defendants. As such, Plaintiff's tortious interference claims fail as a matter of law.[15]

### F. Plaintiff Fails to State a Claim of Tortious Interference with Employment Agreements Against Cyera (Count VII).

Rule 8(a)(2) requires that a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). Count VII and its allegations (SAC ¶¶ 161-165) alleges a catch-all cause of action against Cyera related to its hiring of Plaintiff's former employees in the United States and foreign countries. But the SAC fails to allege basic facts to establish this cause of action, including, (1) the names of the individuals; (2) when Cyera hired them; (3) whether they had employment agreements and/or post-employment restrictions (and what those were); (4) what law governs those agreements and/or restrictions; and (5) how their employment with Cyera allegedly violates such agreements and/or restrictions. Count VII is a thinly veiled attempt to harass Cyera, not a viable cause of action. It should be dismissed.

### V.   CONCLUSION

Cyera requests the Court dismiss the SAC with prejudice.

---

[15] The Court should also dismiss Plaintiff's tortious interference claims (Counts III-IV) as preempted by the DUTSA. *Leucadia, Inc. v. Applied Extrusion Techs, Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) (explaining DUTSA "eliminate[s] other tort causes of action founded on allegations of trade secret misappropriation"); 6 Del. C. § 2007(a). Plaintiff's tortious interference claims are premised on the same facts as its misappropriation with trade secret claims under the DUTSA. *See generally,* SAC.

Dated: April 1, 2026

OF COUNSEL

Adam R. Roseman, Esq. (*pro hac vice*)
REED SMITH LLP
1717 Arch St., Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8103
aroseman@reedsmith.com

Garrett Parks, Esq. (*pro hac vice*)
REED SMITH LLP
1400 Wewatta Street, Suite 350
Denver, CO 80202
Telephone: (415) 659-4806
gparks@reedsmith.com

Respectfully submitted,

REED SMITH LLP

*/s/ Justin M. Forcier*
Brian M. Rostocki (No. 4599)
Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7500
brostocki@reedsmith.com
jforcier@reedsmith.com

*Counsel for Defendant Cyera US, Inc.*

21