**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | |
|---|---|
| VARONIS SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTHEW GUANCIALE, CYERA US INC., and<br>DAVID SCHMID,<br><br>    Defendants. | C.A. No. 1:25-cv-00571-GBW |

**OPENING BRIEF OF DEFENDANTS MATTHEW GUANCIALE AND DAVID SCHMID
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Mary F. Dugan (No. 4704)
Alpa V. Bhatia (No. 6977)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mdugan@ycst.com
abhatia@ycst.com

*Attorneys for Defendants Matthew Guanciale
and David Schmid*

Dated: April 1, 2026

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

SUMMARY OF ARGUMENT............................................................................... 2

STATEMENT OF RELEVANT FACTS.................................................................... 3

ARGUMENT .................................................................................................. 6

    I. Legal Standard .................................................................................... 6

        A. Motion to Dismiss ..................................................................... 6

            1. 12(b)(6) Standard.............................................................. 6

            2. Rule(8)(a)(2) Standard ....................................................... 6

        B. Restrictive Covenants.................................................................. 7

    II. The Complaint Fails to State a Claim for Violations of DTSA and DUTSA......................... 7

        A. The Complaint Fails to Identify the Trade Secrets at Issue with Sufficient
           Specificity................................................................................ 8

        B. The Categories of Information Proffered in the SAC Are Not "Trade Secrets"
           Under the DTSA or DUTSA............................................................ 9

        C. The Complaint Does Not Allege Actual or Threatened Misappropriation
           Sufficient to Support a DTSA or DUTSA Claim. ................................. 10

        D. Plaintiff's Allegations Do Not Support an Inevitable Disclosure Theory................. 12

        E. DUTSA Does Not Apply to Conduct Occurring Outside of Delaware.................... 13

    III. The Court Should Decline to Exercise Supplemental Jurisdiction if it Dismisses
        Plaintiff's DTSA Claim. ........................................................................ 13

    IV. The Restrictive Covenants That Varonis Seeks to Enforce Against Guanciale and
        Schmid Are Unenforceable Under Delaware Law. .......................................... 14

        A. The Covenant Not to Compete at § 7(a) Is Overbroad. ......................... 14

            1. The Geographic Scope Is Facially Overbroad. ........................... 14

            2. The Non-Compete Provision Exceeds Plaintiff's Legitimate Business
               Interests. ........................................................................ 16

            3. The Equities Disfavor Enforcement of the Non-Compete.................. 17

        B. The Non-Solicitation Provision at § 7(B) Is Unenforceable. .................... 18

            1. The Non-Solicitation Provision Is Overbroad in Scope...................... 18

            2. The Non-Solicitation Provision Fails a Balance of the Equities Test........... 19

V. The Restrictive Covenants Should Not Be Blue-Penciled to Make Them Enforceable......... 20

CONCLUSION ............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008)..........................................................................................11

*Battaglia Mgmt., Inc. v. Abramowicz*,
  2024 WL 3183063 (D. Del. June 26, 2024)............................................................................8, 11

*All Pro Maids, Inc. v. Layton*,
  2004 WL 1878784 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 ........................................16

*C3.ai Inc. v. Cummins, Inc.*,
  2024 WL 4025788 (Del. Super. Aug. 16, 2024)......................................................................11

*Centurion Serv. Grp., LLC v. Wilensky*,
  2023 WL 5624156 (Del. Ch. Aug. 31, 2023) .................................................................. *passim*

*Cleveland Integrity Servs., LLC v. Byers*,
  2025 WL 658369 (Del. Ch. Feb. 28, 2025) .............................................................................20

*Del. Elevator, Inc. v. Williams*,
  2011 WL 1005181 (Del. Ch. Mar. 16, 2011)...........................................................................16

*Delaware Exp. Shuttle, Inc. v. Older*,
  2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .........................................................................17

*Dow Chem. Canada Inc. v. HRD Corp.*,
  909 F. Supp. 2d 340 (D. Del. 2012), *aff'd,* 587 F. App'x 741 (3d Cir. 2014)...........................9

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
  2022 WL 17961568 (D. Del. Dec. 27, 2022)...........................................................................13

*Fair Isaac Corp. v. Gurobi Optimization, LLC*,
  2025 WL 2636403 (D. Del. Sept. 12, 2025).............................................................................11

*Focus Fin. Partners, LLC v. Holsopple*,
  250 A.3d 939 (Del. Ch. 2020).................................................................................................13

*FP UC Holdings, LLC v. Hamilton*,
  2020 WL 1492783 (Del. Ch. Mar. 27, 2020)................................................................... *passim*

*Gordian Med., Inc. v. Vaughn*,
  2024 WL 1344481 (D. Del. Mar. 30, 2024) ............................................................................20

*Hub Grp., Inc. v. Knoll*,
2024 WL 3453863 (Del. Ch. July 18, 2024).................................................................15, 17, 19

*Kodiak Bldg. Partners, LLC v. Adams*,
2022 WL 5240507 (Del. Ch. Oct. 6, 2022) .......................................................................7, 20

*Lithero, LLC v. AstraZeneca Pharms. LP*,
2020 WL 4699041 (D. Del. Aug. 13, 2020) ..........................................................................13

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ........................................................................................8, 9, 13

*Malpiede v. Townson*,
780 A.2d 1075 (Del. 2001) ....................................................................................................6

*McCann Surveyors, Inc. v. Evans*,
611 A.2d 1 (Del. Ch. 1987)..................................................................................................18

*Newell Rubbermaid Inc. v. Storm*,
2014 WL 1266827 (Del. Ch. Mar. 27, 2014)........................................................................12

*Norton Petroleum Corp. v. Cameron*,
1998 WL 118198 (Del. Ch. Mar. 5, 1998)......................................................................15, 17

*Oakwood Lab'ys LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021)...................................................................................................8

*Payscale Inc. v. Norman*,
2026 WL 774876 (Del. Mar. 19, 2026) ..........................................................................17, 18

*President v. Gov't of the V.I.*,
2025 WL 40545 (3d Cir. Jan. 27, 2025) .................................................................................7

*Scott v. Vantage Corp.*,
2017 WL 3485818 (D. Del. Aug. 15, 2017) ...........................................................................7

*SI Handling Sys., Inc. v. Heisley*,
753 F.2d 1244 (3d Cir. 1985).............................................................................................9, 10

*Sunder Energy, LLC v. Jackson*,
332 A.3d 472 (Del. 2024) .................................................................................................18, 20

*Thibault v. Delaware Tech. & Cmty. Coll.*,
2012 WL 2073847 (D. Del. June 8, 2012)...............................................................................7

*United States Gypsum Co. v. New NGC, Inc.*,
2017 WL 2538569 (D. Del. June 12, 2017), *aff'd,* 2017 WL 5187845 (D. Del.
Aug. 18, 2017) ....................................................................................................................6, 7

*United States v. Hsu*,
   155 F.3d 189 (3d Cir. 1998)........................................................................................10

*W.L. Gore & Assocs., Inc. v. Wu*,
   2006 WL 2692584 (Del. Ch. Sept. 15, 2006), *aff'd*, 918 A.2d 1171 (Del.
   2007) ...........................................................................................................................12

**Statutes**

18 U.S.C. §1836(b)(3)(A).................................................................................................10

18 U.S.C §1836(b)(3)(A)(i)(I) .........................................................................................11

Defend Trade Secrets Act ....................................................................................... *passim*

Delaware Uniform Trade Secrets Act...................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 8(a)(2) ...............................................................................................7

Fed. R. Civ. P. Rule 12(b)(6) .....................................................................................2, 6, 7

https://www.varonis.com/customer-stories..........................................................................9

https://www.varonis.com/product-training;
   https://info.varonis.com/en/resource/t2/webinar/unlocking-agentforce-2025-
   03-11?_gl=1*oy08rw*_gcl_au*NzM4NDE3NjUzLjE3NzM2OTc1ODU .............................10

https://www.varonis.com/partners/locator ..........................................................................9

## NATURE AND STAGE OF PROCEEDINGS

This case arises out of Plaintiff's attempt to enforce post-employment restrictive covenants against its former employees, Matthew Guanciale ("Guanciale") and David Schmid ("Schmid" and with Guanciale, "Individual Defendants"), and their current employer, Cyera US, Inc. ("Cyera" and with Guanciale and Schmid, "Defendants").

Plaintiff Varonis Systems, Inc. ("Varonis" or "Plaintiff") filed a Complaint against Cyera and Guanciale on May 8, 2025.  D.I. 1. Plaintiff simultaneously filed Motions for Preliminary Injunction and Expedited Discovery, alleging that Varonis would suffer imminent and irreparable harm if a preliminary injunction and/or expedited discovery were denied. D.I. 3-7. On June 13, 2025, Plaintiff sought and was granted leave to file a First Amended Complaint ("FAC"), which Plaintiff filed on June 18, 2025. D.I. 16-18. The FAC was based on the same core factual allegations but added Schmid as a Defendant to the action. D.I. 18. Plaintiff filed a Motion for Preliminary Injunction and Motion to Expedite against Schmid on June 18, 2025, both substantially similar to the motions filed against Cyera and Guanciale with the initial Complaint. D.I. 19-23.

Cyera and Individual Defendants filed separate motions to dismiss the FAC on July 16, 2025 (D.I. 33, 35), both of which were granted on February 10, 2026. D.I. 56. Plaintiff was given authority to file a Second Amended Complaint ("SAC") "strictly to attempt to remedy the deficiencies identified by the Court's Memorandum Opinion and any deficiencies alleged in Defendant's Motion to Dismiss." D.I. 57. Following a Motion to Extend Time, Plaintiff filed its SAC on March 3, 2026.  D.I. 60.  The Court granted Plaintiff's Motion to Extend Time on March 17, 2026.  D.I. 65.

The SAC asserts claims identical to those of the FAC for alleged breach of contract against Guanciale and Schmid (Counts I-II), alleged violation of the Defend Trade Secrets Act ("DTSA") against all Defendants (Count III), alleged violation of the Delaware Uniform Trade Secrets Act ("DUTSA") against all Defendants (Count IV), and alleged tortious interference by Cyera with Schmid and Guanciale's

1

contracts with Varonis (Counts V-VI). D.I. 60. In addition, Plaintiff alleges an additional claim of tortious interference with employment agreements against Defendant Cyera (Count VII). Notably, the SAC largely rehashes the allegations set forth in the FAC and fails to address the deficiencies identified by the Court in its Memorandum Opinion.

Guanciale and Schmid hereby move to dismiss all counts of the SAC under Rules 12(b)(6) for failure to state a claim upon which relief can be granted. This is Guanciale and Schmid's Opening Brief in Support of their Motion to Dismiss.

## SUMMARY OF ARGUMENT

Despite being armed with the benefit of full briefing and argument on the deficiencies of its claims, Plaintiff's claims alleging violation of the federal Defend Trade Secrets Act ("DTSA") (Count III) and the Delaware Uniform Trade Secrets Act ("DUTSA") (Count IV) still fail as a matter of law because Plaintiff has not identified the trade secrets purportedly misappropriated or threatened to be misappropriated, and indeed has not plead any fact – nor could it – that supports an inference that either Individual Defendant has engaged in any wrongdoing. Apart from the fundamental insufficiency of Plaintiff's pleading, which itself is fatal to Plaintiff's claims, Plaintiff's allegations do not support the application of the inevitable disclosure doctrine. Plaintiff's DUSTA's claims (Count IV) fail for the additional reason that Plaintiff has not alleged – nor could it – that any conduct giving rise to those claims has occurred in Delaware, and DUSTA does not apply to conduct occurring outside of Delaware.

As was true in its FAC, Plaintiff's only basis for invoking the jurisdiction of this Court in its SAC is its federal DTSA claim. To the extent this Court dismisses Count III, for all of the reasons set forth below, the Court should dismiss the remaining claims, all of which arise out of state law, for lack of subject matter jurisdiction.

Plaintiff's claims alleging breach of contract against Defendants Guanciale and Schmid (Counts I and II) fail as a matter of law and should be dismissed because the Restrictive Covenants on which Plaintiff

2

premises these claims remain facially overbroad and unenforceable as a matter of law and cannot be revived by the newly alleged facts of the SAC.  Delaware law strongly disfavors such restrictions, as they would effectively bar Defendants from being able to seek gainful employment in their chosen profession. Furthermore, under Delaware law, the Restrictive Covenants cannot be salvaged by this Court "blue-penciling" them to make their terms more reasonable.

For these reasons, as set forth in greater detail below, each of Plaintiff's claims against Defendants Guanciale and Schmid should be dismissed.

**STATEMENT OF RELEVANT FACTS**

Varonis is a data security and analytics corporation incorporated in Delaware, with a principal place of business in Miami, Florida. D.I. 60, SAC at ¶¶ 1, 14. Guanciale was employed by Plaintiff from on or around May 21, 2018 until March 18, 2025 in various roles, including Sales Engineer, Sales Engineering Team Lead and Manager, and Strategic Sales Engineer. *Id.* at ¶¶ 46, 48. Guanciale submitted his resignation from Varonis with two weeks' notice on March 17, 2024; however, Varonis terminated his employment effective immediately, on March 18, 2024. *Id.* at ¶ 46.  Schmid was employed by Plaintiff as a Sales Engineer, and later a Senior Sales Engineer, from on or around December 9, 2019, until August 1, 2023. *Id.* at ¶ 117. Similar to Guanciale, Schmid resigned and provided Plaintiff with a two-week notice; however, Plaintiff terminated his employment effective immediately. *Id.* at ¶ 116. Guanciale and Schmid are now employed by Cyera, which Plaintiff contends is its direct competitor. *Id.* at ¶¶ 5, 8.

On May 1, 2018, and November 18, 2019, Plaintiff required Guanciale and Schmid, respectively, to execute an At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement ("Employment Agreement") as a condition of their employment. *Id.* ¶¶ 9, 50, 119 and Exhibits ("Ex.") 1 and 2.[1] The Employment Agreement included certain post-employment restrictive covenants

---

[1] Defendants reserve and do not waive their rights, privileges, and defenses related to compelling this matter to arbitration pursuant to Section 12 of the Employment Agreement.

("Restrictive Covenants") in Section 7, including:

A. *Covenant Not to Compete.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I will not, directly or indirectly, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee consultant, contractor, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, creditor or otherwise in any other capacity for, (ii) own purchase, organize, or take preparator steps for the organization or competition of, or (iii) build design, finance, acquire, lease, operate, manage, control, invest in, advise, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business. The foregoing covenant shall cover my activities in every part of the world. Should I obtain other employment during my employment with the Company or within twelve (12) months immediately following the termination of my relationship with the Company, I agree to provide written notification to the Company as to the name and address of my new employer, the position that I expect to hold, and a general description of my duties and responsibilities, at least five (5) business days prior to starting such employment.

B. *No Solicitation and No Interference.*

(1) *Non-Solicitation of Customers.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I shall not, directly or indirectly, without the prior written consent of the Company, contact, or cause to be contacted, or engage in any form of oral, verbal, written, recorded, transcribed or electronic communication with any Customer for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's business in any way. For purposes of this Agreement, "Customer" shall mean all persons or entities that have used, inquired of or been solicited by me for the Company's services at any time during the two-year period preceding the termination of my employment with the Company or about whom I have learned material non-public information. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the Company's list of customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company.

(2) *Non-Solicitation of Employees and Contractors.* I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I shall not, directly or indirectly, without the prior written consent of the Company, whether or not such action is initiated by me: (i)

4

solicit, encourage or attempt to solicit or encourage any employee or contractor of the Company to terminate such work relationship; (ii) solicit, encourage or attempt to solicit or encourage any employee or contractor of the Company to be employed by or provide services to any person or entity other than the Company; or (iii) hire, employ or engage any employee or contractor of the Company to work for a person or entity other than the Company.  The foregoing obligations shall apply to any employee or contractor of the Company at the time my employment is terminated as well as any such individuals who, wither coincident with or within twelve (12) months before the termination of my employment hereunder, terminated their employment or engagement with the Company.

(3) *Non-Interference with Business Relations*. I agree that during the course of my employment and for a period of twelve (12) months immediately following my termination of employment for any reason, whether such termination is initiated by the Company or me, I shall not, directly or indirectly, without the prior written consent of the Company, whether or not such action is initiated by me: (i) do anything or attempt to do anything to discredit or otherwise injure the reputation or goodwill of the Company; (ii) solicit, induce, encourage or attempt to solicit, induce or encourage any party or any existing or prospective counterparty including, but not limited to, any franchisee, joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer or any other existing or prospective professional or business relation of the Company to not conduct business with the Company, divert away any business from the Company, or cease, limit or reduce the level of business conducted between such business relation and the Company; or (iii) in any way interfere or attempt to interfere with the Company's relationship with any party or existing or prospective counterparty, including, but not limited to, any franchisee, joint venture, supplier, vendor, contractor, advertiser, customer, employee, distributor, manufacturer or any other existing or prospective professional or business relation of the Company.

SAC, Ex. 1 at 9-10, Ex. 2 at 9-10.

Notably, the Restrictive Covenants fail to define several key phrases, including "competitive," "proposing to be competitive," and "similar to the Company's business." *Id.* Moreover, the Restrictive Covenants are not reasonably limited to safeguard the Company's proprietary and confidential information; rather, they restrict Guanciale and Schmid from affiliating with "any business whose business, products or operations are in ***any respect*** competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business" and "shall cover [their] activities ***in every part of the world***." SAC, Ex. 1 at 9, Ex. 2 at 9 (emphasis added).  Plaintiff contends that Guanciale and Schmid breached the non-compete and non-disclosure provisions of the Employment Agreement by way of their employment

with Cyera. *See generally,* SAC.

Plaintiff further alleges that Guanciale and Schmid, by sole virtue of their employment with Cyera, have violated the DTSA and DUTSA. SAC at ¶¶ 183-185, 192-194. Remarkably, Plaintiff fails to identify a single trade secret with specificity, and instead lists only vague and generic categories of information, such as "proprietary technical information, business strategies, product development roadmaps, and competitive analyses." *Id.* at ¶ 138. In conclusory fashion, Plaintiff contends that Guanciale and Schmid engaged in misappropriation of Varonis's trade secrets, but fails to allege ***a single*** fact in support of this proposition.

Plaintiff's claims against Guanciale and Schmid should be dismissed with prejudice.

## ARGUMENT

### I.     Legal Standard

####    A. Motion to Dismiss

#####        1. 12(b)(6) Standard

In analyzing a motion to dismiss under FRCP Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true[2] and view them in the light most favorable to the plaintiff. *United States Gypsum Co. v. New NGC, Inc.*, 2017 WL 2538569, at *1 (D. Del. June 12, 2017), *aff'd,* 2017 WL 5187845 (D. Del. Aug. 18, 2017).  However, the Court need not accept "unsupported allegations, 'bald assertions,' or 'legal conclusions.'" *Id.* at *2. To survive a 12(b)(6) motion, plaintiff must allege facts "sufficient to raise a right to relief above the speculative level," and "provide the grounds of his entitle[ment] to relief beyond labels and conclusions." *Id.* (internal quotation marks and citations omitted).

#####        2. Rule(8)(a)(2) Standard

---

[2] Solely for purposes of this Motion, Guanciale and Schmid treat all "well-pleaded allegations," *i.e.,* specific allegations of fact and any conclusions supported by specific allegations of fact, as true. *Malpiede v. Townson*, 780 A.2d 1075, 1082 n.16 (Del. 2001). However, Guanciale and Schmid contest all allegations of wrongdoing and reserve the right to contest same at a later stage of this litigation, if necessary.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must also review Rule 8(a)(2), requiring that the pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Gypsum Co.,* 2017 WL 238569, at *1; FRCP Rule 8(a)(2). The standard requires that the allegations support "more than a sheer possibility that defendant has acted unlawfully." *Thibault v. Delaware Tech. & Cmty. Coll.*, 2012 WL 2073847, at *1 (D. Del. June 8, 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009)). Allegations which, while well-pled, "only 'infer the mere possibility of misconduct' do not show that 'the pleader is entitled to relief' under Rule 8(a)(2)." *Scott v. Vantage Corp.,* 2017 WL 3485818, at *3 (D. Del. Aug. 15, 2017).

### B. Restrictive Covenants

Delaware courts[3] do not "mechanically" enforce restrictive covenants. *FP UC Holdings, LLC v. Hamilton,* 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020). Rather, non-compete and non-solicitation provisions are assessed to determine whether they: "(1) [are] reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking enforcement, and (3) survive a balance of the equities." *Id.* The Court must review the reasonableness of the restrictive covenants despite an employee's promise not to challenge the same in his execution of his employment agreement. *Kodiak Bldg. Partners, LLC v. Adams,* 2022 WL 5240507, at *6 (Del. Ch. Oct. 6, 2022). The scope of "reasonableness" is broader when the covenants are connected with the sale of a business rather than an employment agreement. *Id.* at *12.

### II.       The Complaint Fails to State a Claim for Violations of DTSA and DUTSA.

To establish a claim under the Defend Trade Secrets Act ("DTSA") or the Delaware Uniform Trade Secrets Act ("DUTSA"), Plaintiff must show:

> (1) the existence of a trade secret, which is information with independent economic value from not being generally known or ascertainable that the owner has taken reasonable measures to keep secret; and (2) misappropriation of that trade secret, which is the knowing improper acquisition,

---

[3] A federal court must apply the substantive law of the appropriate state when exercising supplemental jurisdiction over state law claims. *President v. Gov't of the V.I.,* 2025 WL 40545 (3d Cir. Jan. 27, 2025).

use, or disclosure of that trade secret.

*Battaglia Mgmt., Inc. v. Abramowicz,* 2024 WL 3183063, at *3 (D. Del. June 26, 2024).

The SAC fails to state a claim upon which relief may be granted both under DUTSA and DTSA.

### A. The Complaint Fails to Identify the Trade Secrets at Issue with Sufficient Specificity.

To state a claim under the DTSA, a plaintiff must identify the trade secret that a defendant has allegedly misappropriated with sufficient specificity to place the defendant on notice of the claims being brought against it. *Oakwood Lab'ys LLC v. Thanoo,* 999 F.3d 892, 906 (3d Cir. 2021) (internal citations omitted). Plaintiff must do more than establish "the existence of generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Mallet & Co. Inc. v. Lacayo,* 16 F.4th 364, 384 fn. 24 (3d Cir. 2021).

While the Court gave Plaintiff the opportunity to cure the pleading deficiency that led to the dismissal of the FAC[4], in the SAC Plaintiff does nothing more than expand upon the list of general categories proffered in its FAC which it purports comprise trade secrets from "proprietary technical information, business strategies, customer and pricing data, competitive analyses, and other confidential information…" (FAC ¶ 128) to the equally generic list of "product roadmap repositories," "information regarding internal product limitations, architectural challenges, and technical friction points," "proprietary structured sales methodology and evaluation process," "internal competitive intelligence materials," "internal competitive assessments," "confidential prospective customer and active pipeline information," and "pricing strategies, cost structures, discount parameters, and customer-specific pricing, [and] flexibility" (SAC ¶ 179). This is "a list that could be used to describe documents found in any number of

---

[4] Individual Defendants adopt and incorporate all arguments made by Cyera in its Opening Brief in Support of its Motion to Dismiss, including but not limited to arguments challenging the allegations of the SAC that exceed the scope authorized by the Court. Guanciale and Schmid respectfully request that the Court strike such allegations from the SAC for the reasons set forth in Cyera's Opening Brief.

corporations." *Mallet*, 16 F.4th at 382 (citation omitted) (such terms "could be applied to almost any corporation in existence, and do not in any way allow Defendants to properly craft a defense around the alleged misappropriation of trade secrets."); *see also Dow Chem. Canada Inc. v. HRD Corp.,* 909 F. Supp. 2d 340, 347-48 (D. Del. 2012), *aff'd,* 587 F. App'x 741 (3d Cir. 2014) (conclusory identifications or general statements do not constitute "a clear identification of a trade secret"). This is insufficient to establish a DTSA claim. *Mallet,* 16 F.4th at 384 fn. 24.

### B. The Categories of Information Proffered in the SAC Are Not "Trade Secrets" Under the DTSA or DUTSA

The broad categories of information outlined above, which Varonis purports are its trade secrets, do not constitute "trade secrets" under the DTSA or DUTSA for several reasons. *See* SAC ¶¶ 18-41.

*First,* material which is "disclosed by a marketing product and [is] susceptible to 'reverse engineering'… cannot be protected as [a] trade secret." *SI Handling Sys., Inc. v. Heisley,* 753 F.2d 1244, 1255 (3d Cir. 1985) (citations omitted). Technical information relating to how Varonis's software functions in customer environments may easily be "reverse engineered" through the product capabilities which Plaintiff concedes is publicly available, as well as through the product itself. SAC ¶¶ 22-24.

*Second*, information to which third parties already have access is not protected as a trade secret. *See SI Handling*, 753 F.2d at 1257 (3d Cir. 1985). The identity of numerous Varonis customers as well as each of its partners (including resellers, certified delivery partners, distributors, and technology alliance partners) is publicly available through the Company's website.[5] Moreover, the nature and history of Varonis's relationships and prior sales with its resellers/partners is already available to third parties who are not involved in the present action – i.e., the reseller/partners themselves – who "have every incentive, and every right, to disclose [the prior sales and relationship with Varonis] to its customers." *Id.* Such information

---

[5] The database of Varonis's partners is available at: https://www.varonis.com/partners/locator. A compilation of various customer stories, including the company name, the key contact, and the product sought by the customer can be found at https://www.varonis.com/customer-stories.

is not a protectible trade secret. *See id.*

The "internal operations details" regarding how Varonis's software is used, integrated, and optimized is likewise publicly available through the Company's website. Indeed, several "how-to" videos are readily accessible, as well as numerous webinars providing an in-depth training on how certain products are best used.[6] Information which is readily ascertainable by the general public cannot amount to a trade secret under the DTSA or DUTSA. *See United States v. Hsu*, 155 F.3d 189, 196 (3d Cir. 1998).

*Third,* the skill and knowledge obtained by Guanciale and Schmid during the course of their employment with Varonis is not encompassed in the definition of a "trade secret." *SI Handling*, 753 F.2d at 1255 (3d Cir. 1985) ("the right to use and expand these powers remains [the employee's] property…") (citation omitted). The knowledge relating to product technical capabilities and general sales strategies, which Plaintiff purports Guanciale and Schmid gained through training sessions and experience, is not a trade secret. Similarly, Plaintiff cannot assert propriety rights over Individual Defendants' ability to navigate technical considerations and address customer inquiries. *Id.* at 1262 (an employee is "entitled to take with him 'the experience, knowledge, memory, and skill, which he gained while there employed.'") (citation omitted).

### C. The Complaint Does Not Allege Actual or Threatened Misappropriation Sufficient to Support a DTSA or DUTSA Claim.

The SAC contains no allegation that any trade secret of Varonis has *actually* been disclosed by Defendants. Plaintiff contends only that Guanciale and Schmid's disclosure of Varonis's trade secrets is inevitable. SAC at ¶ 183. Regardless, Plaintiff seeks relief under 18 U.S.C. §1836(b)(3)(A) to prevent "any actual or threatened misappropriation." SAC at ¶ 184. But the plain language of DTSA explicitly excludes from available relief an injunction that would "prevent a person from entering into an employment

---

[6] https://www.varonis.com/product-training; https://info.varonis.com/en/resource/t2/webinar/unlocking-agentforce-2025-03-11?_gl=1*oy08rw*_gcl_au*NzM4NDE3NjUzLjE3NzM2OTc1ODU.

relationship" where the conditions placed on employment are based "merely on the information the person knows" rather than evidence of threatened misappropriation. 18 U.S.C §1836(b)(3)(A)(i)(I).

The relief sought by Varonis falls squarely within the noted exception, in that Varonis seeks to enjoin Guanciale and Schmid from continued employment with Cyera, based solely on knowledge they may have gained from years of employment with Varonis, rather than on actual evidence of misappropriation. *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.,* 581 F. Supp. 2d 654, 663 (D. Del. 2008) (finding that alleging only that defendant "seemed to" develop its product quickly was insufficient to state a trade secrets claim and that plaintiff's "bare allegations" did not entitle it to conduct a fishing expedition); *C.f. C3.ai Inc. v. Cummins, Inc.,* 2024 WL 4025788, at *8 (Del. Super. Aug. 16, 2024) (finding sufficiently pled misappropriation where plaintiff specifically alleged how former employee obtained purported trade secrets and purportedly used the information gained from plaintiff to improperly replicate its own software); *Fair Isaac Corp. v. Gurobi Optimization, LLC*, 2025 WL 2636403, at *6 (D. Del. Sept. 12, 2025) (plaintiff did not allege that the former employee "took any documents, customer lists, or schematics with him when he left….[nor does plaintiff] allege that he has shared or plans to share the items…The only trade secrets [defendant] is alleged to possess reside inside his head" for which an injunction is not appropriate).

Failure to provide "a particularized allegation of misappropriation" is fatal to both a DTSA and DUTSA claim.[7] *See Battaglia Mgmt., Inc. v. Abramowicz,* 2024 WL 3183063, at *4 (D. Del. June 26, 2024) (holding that plaintiff failed to state claims for both DTSA and DUTSA where plaintiff alleged, without any factual support, that defendant "has, is and/or is planning in the future to misappropriate" plaintiff's trade secrets.). Mere conclusory statements warrant dismissal of these claims. *Id.* (internal citations omitted).

---

[7] Individual Defendants further note that more than a year after the purported "breach" of the covenants, Varonis has not – and cannot – allege specific facts establishing any actual wrongdoing by Individual Defendants.

**D.  Plaintiff's Allegations Do Not Support an Inevitable Disclosure Theory.**

A court may enjoin a defendant from working in a particular field to the extent it "poses a ***substantial*** risk of the inevitable disclosure of trade secrets." *W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584, at \*17 (Del. Ch. Sept. 15, 2006), *aff'd*, 918 A.2d 1171 (Del. 2007) (emphasis added). This situation arises where it is virtually impossible for a defendant to perform his duties for a competitor to the best of his ability, without giving it the benefit of his former employer's confidential information. *Id.* However, courts must balance "the right of an employee to change his employment for any reason…and to utilize his general skills and knowledge to his advantage [with] the right of an employer to protect information gained through its research and its expenditures of time and money." *Id.*

While there is little Delaware case law addressing the inevitable disclosure doctrine, authority both within and outside of this jurisdiction suggests that injunctive relief on such basis is limited to circumstances where "evidence exists which casts doubt on the trustworthiness of a former employee…such that disclosure of trade secrets would be inevitable if [he] were allowed to resume working in a particular area of the industry…". *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at \*10 (Del. Ch. Mar. 27, 2014); *See also W.L. Gore,* 2006 WL 2692584, at \*10.  Plaintiff has not pled any such evidence, nor could it. Guanciale and Schmid notified Varonis promptly after acceptance of their job offers, made no attempt to conceal the identity of their new employer, and gave two weeks' notice upon resignation (during which neither were permitted to work, due to Varonis's decision to exit them immediately). SAC at ¶¶ 46, 116. Plaintiff's Amended Complaint contains no allegation – because there are no facts supporting such an allegation – that either Guanciale or Schmid is untrustworthy or would attempt to disclose any trade secrets of Varonis.

Simply put, Plaintiff has not alleged enough – because Plaintiff could not plausibly do so – to (1) specify the trade secret allegedly misappropriated or threatened to be misappropriated by Guanciale or Schmid; and to (2) draw a connection between said trade secret "and its value as a '*particular* secret[] of

12

the complaining employer' and not general know-how of the trade." *Mallet,* 16 F.4th at 385. For this reason, Counts III and IV must be dismissed.

### E.  DUTSA Does Not Apply to Conduct Occurring Outside of Delaware

Even if Plaintiff's claim sufficiently specifies the allegedly misappropriated trade secret – which is explicitly denied – Plaintiff's DUTSA claim must fail because the alleged conduct did not occur within the State of Delaware.

It is well-settled Delaware law that DUTSA lacks extraterritorial effect. *See Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970 (Del. Ch. 2020) ("DUTSA lacks any indication that the legislature intended for it to apply outside the territorial jurisdiction of Delaware, and [plaintiff] has not cited any conduct that took place in Delaware"); *Elkay Interior Sys. Int'l, Inc. v. Weiss*, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022) (dismissing trade secret misappropriation claim brought pursuant to DUTSA where complaint failed to allege misconduct occurring in Delaware).

In the instant matter, Varonis does not allege any threatened or actual misappropriation, or, more generally, any conduct occurring in the State of Delaware. *See generally*, SAC. Indeed, Plaintiff explicitly states that the principal places of business for the relevant entities are Florida and New York. *Id.* at ¶¶ 1,4. Guanciale resides and works in Florida, and Schmid resides and works in Georgia. *Id.* at ¶ 2. Any alleged misappropriation must have occurred in New York, Florida, or Georgia, and as such, DUTSA "does not provide a cause of action for the conduct alleged." *Elkay*, 2022 WL 17961568, at *4.

For these reasons, Count IV of Plaintiff's SAC should be dismissed.

### III.    The Court Should Decline to Exercise Supplemental Jurisdiction if it Dismisses Plaintiff's DTSA Claim.

Plaintiff's sole basis to establish jurisdiction for its claims before this Court is its DTSA claim arising under federal law. SAC at ¶ 11. To the extent the Court dismisses Plaintiff's DTSA claim as inadequate, Guanciale and Schmid respectfully request the Court exercise its discretion to dismiss Plaintiff's remaining claims, all of which arise from state law. *See Lithero, LLC v. AstraZeneca Pharms.*

*LP,* 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) (declining to exercise supplemental jurisdiction following dismissal of DTSA claim).

**IV.    The Restrictive Covenants That Varonis Seeks to Enforce Against Guanciale and Schmid Are Unenforceable Under Delaware Law.**

   **A.  The Covenant Not to Compete at § 7(a) Is Overbroad.**

      **1.  The Geographic Scope Is Facially Overbroad.**

Delaware courts will not enforce a non-competition clause with an overbroad geographic scope. *FP UC,* 2020 WL 1492783, at *6. ("If [an] employer overreaches by imposing an obviously overbroad geographic restriction on its employee's ability to seek employment after separation, this court will readily decline to enforce the restriction."). The Employment Agreement restricts Guanciale and Schmid from working or consulting for, or otherwise affiliating with, "***any*** business whose business, products or operations are in any respect competitive….with or otherwise similar to the Company's business….in ***every part of the world***" for twelve (12) months immediately following the termination of their relationships with Varonis. SAC, Ex. 1 at 9, Ex. 2 at 9. The non-compete that Varonis seeks to enforce against Guanciale and Schmid is overbroad for several reasons.

Delaware law makes clear that national non-compete clauses – let alone worldwide ones like the one here – are only appropriate in limited circumstances, specifically when such restrictions arise from the sale of a business. *See Centurion Serv. Grp., LLC v. Wilensky,* 2023 WL 5624156, at *5 (Del. Ch. Aug. 31, 2023) ("[T]his Court has enforced non-competes with a nationwide scope, but only in instances where the competing party agrees, in connection with the sale of a business, to stand down from competing in the relevant industry…anywhere…for a stated period of time after the sale.") (quoting *FP UC*, 2020 WL 1492783, at *7 (holding that a nationwide scope was overbroad where employee did not receive ***substantial consideration*** for his agreement to not work in a specific industry anywhere in the United States) (emphasis added)).

It is undisputed that the non-compete Plaintiff seeks to enforce against Guanciale and Schmid did

14

not arise from the sale of a business, but rather their employment at Varonis. SAC at ¶¶ 50, 119. Moreover, neither Guanciale nor Schmid were provided with any consideration – other than employment with Varonis – in exchange for their commitment not to work for any employer "similar" to Varonis globally. *Id.* The non-compete purports to restrict Guanciale and Schmid from obtaining gainful employment in their chosen field, regardless of geographic location, for one year following their separation from Varonis. Furthermore, Guanciale and Schmid were not top executives at Varonis. Guanciale was a Sales Engineering Team Lead and Manager, and Schmid was a Sales Engineer (and later a Senior Sales Engineer), neither of which is sufficiently "senior" or "executive" to justify the restriction of a global non-compete clause. SAC at ¶¶ 48, 117. *See Hub Grp., Inc. v. Knoll,* 2024 WL 3453863, at *10 (Del. Ch. July 18, 2024) (holding a non-compete with a national scope was overbroad in scope for a "Senior Vice President of Account Management"); *Centurion Serv. Grp., LLC v. Wilensky,* 2023 WL 5624156, at *5 (Del. Ch. Aug. 31, 2023) (finding that imposing a nationwide a non-compete for a "Senior Executive" overbroad).

Next, the global restriction imposed by the covenant exceeds Plaintiff's "legitimate economic interests." *Norton Petroleum Corp. v. Cameron,* 1998 WL 118198, at *3 (Del. Ch. Mar. 5, 1998). Even after amending its Complaint for the second time, Plaintiff does not (and cannot) allege Guanciale's or Schmid's work has a global reach, nor does it specify that Varonis provides services globally. Accordingly, the SAC makes clear that Varonis seeks to restrain Guanciale and Schmid from working in an area greater than that in which they provided services for Varonis, or even in which Varonis operates. Such a restriction is facially overbroad, because Varonis has no legitimate economic interest in preventing Guanciale or Schmid from working in areas in which they never provided services for the company.

Finally, the temporal scope of the non-compete exacerbates the unreasonableness of an already overbroad clause. The geographic and temporal scope are considered in tandem when determining reasonableness. "All else equal, a longer restrictive covenant will be more reasonable if geographically

15

tempered, and a restrictive covenant covering a broader area will be more reasonable if temporally tailored." *Del. Elevator, Inc. v. Williams,* 2011 WL 1005181, at *8 (Del. Ch. Mar. 16, 2011). In order for a one-year duration to be reasonable, it must be tailored to a more narrow geographic scope. *See*, *e.g., FP UC*, 2020 WL 1492783, at *8 (holding that a non-compete with a national scope and one-year duration was unreasonable); *c.f. All Pro Maids, Inc. v. Layton,* 2004 WL 1878784, at *5 (Del. Ch. Aug. 9, 2004), *aff'd*, 880 A.2d 1047 (finding a one-year non-compete reasonable where the restricted area was limited to specific zip codes in which the majority of the employer's clients were located).

A non-compete purporting to restrict Guanciale and Schmid from employment with any business "similar to" Varonis for a year anywhere in the world is certainly overbroad and unenforceable under Delaware law.

### 2.   The Non-Compete Provision Exceeds Plaintiff's Legitimate Business Interests.

Assuming *arguendo* that the non-compete is not overbroad in geographic scope, the clause still cannot be enforced because it exceeds Plaintiff's legitimate economic interests. *See FP UC,* 2020 WL 1492783, at *7 ("Given the vast geographic scope of the non-compete, [plaintiff] must demonstrate it is protecting a particularly strong economic interest to persuade the Court that the non-compete is enforceable").

The non-compete in the instant matter purports to prohibit Guanciale and Schmid from serving in any capacity or affiliating with "any business whose business, products or operations are in any respect competitive (including by planning or proposing to be competitive) with or otherwise similar to the Company's business." SAC, Ex. 1 at 9, Ex. 2 at 9. However, the Employment Agreement fails to define key terms, such as "competitive with" or "similar to" Plaintiff's business. The covenant also prohibits Guanciale and Schmid from working in areas where Varonis may be ***planning*** to operate, regardless of whether they were aware of such plans. The restrictive covenant's failure to define the prohibited competition with specificity renders it vague and unenforceable. *See Centurion Serv. Grp.,* 2023 WL

16

5624156, at *4 (finding that a restriction prohibiting the employee from working in areas where plaintiff "might have thought about entering" is overbroad in scope); *Delaware Exp. Shuttle, Inc. v. Older,* 2002 WL 31458243, at *12 (Del. Ch. Oct. 23, 2002) (a restriction prohibiting defendant from employment with a company engaged in a business "similar to" plaintiff's business is vague, overbroad, and unenforceable, and not narrowly tailored to the employer's legitimate economic interests) (citing *Norton*, 1998 WL 118198, at *3).

The allegations of Plaintiff's SAC fail to demonstrate a legitimate business interest strong enough to support the vast scope of the restrictions Varonis seeks to enforce, and for that reason, the non-compete is unenforceable under Delaware law.

### 3. The Equities Disfavor Enforcement of the Non-Compete.

In addition to the reasonableness of the scope of a non-compete, under Delaware law, courts analyze the balance of the equities. "When applying this balancing test, the court should take notice of the consideration an employee received in exchange for [his] promise not to compete before determining whether the non-compete is reasonable." *Payscale Inc. v. Norman,* 2026 WL 774876, at *6 (Del. Mar. 19, 2026); *FP UC,* 2020 WL 1492783, at *3. A covenant more restrictive than justified by an employer's legitimate business interests, or one that imposes an undue hardship on the former employee, will not be enforced. *Norton*, 1998 WL 118198, at *3 (restricting the former employee from working for any company "similar to" plaintiff's industry would cause employee undue hardship and is unenforceable).

The non-compete Varonis seeks to enforce is not only overbroad, but also would be unduly oppressive if imposed upon Guanciale or Schmid. Indeed, enforcing a provision that would effectively bar Guanciale and Schmid from the ability to find suitable employment ***worldwide*** for a one-year period certainly creates unusual hardship and is unsupported by Varonis's legitimate business interests. *See Id.*; *Hub Grp,* 2024 WL 3453863, at *1 (while the court values upholding contracts, it must also consider "the encouragement of competition and discouragement of restraints on trade, the recognition of an individual's

17

right to choose [his] employment, and the desire to avoid oppressive or unclear obligations"); *McCann Surveyors, Inc. v. Evans,* 611 A.2d 1, 3-4 (Del. Ch. 1987) ("If it appears that the interests the employer seeks to protect are slight….while the consequences of specific enforcement to the employee are grave, equity might leave the plaintiff to pursue his legal remedies and decline to grant the special remedy of injunction.") (citations omitted). The hardship the non-compete would impose on Guanciale and Schmid, combined with its facial overbreadth, render the balance of the equities to tip heavily in the former employees' favor.

This is emphasized by the lack of substantial consideration to Guanciale and Schmid in exchange for execution of the Employment Agreement. Specifically, the sole benefit provided to Guanciale and Schmid appears to be employment with Varonis. As is the case here, where the consideration an employee receives in exchange for his commitment not to work in a specific industry is minimal, a global geographic scope is overbroad. *See Centurion*, 2023 WL 5624156, at \*5; *FP UC*, 2020 WL 1492783, at \*7; *c.f. Payscale,* 2026 WL 774876, at \*6 (finding a factual dispute where employee received "Profit Interest Units" in exchange for entering into the restrictive covenant agreement, which plaintiff alleged held ***significant value***) (emphasis added).

### B.   The Non-Solicitation Provision at § 7(B) Is Unenforceable.

Similar to a non-compete clause, a non-solicitation provision must be: "(1) reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking enforcement, and (3) survive a balance of the equities test." *Sunder Energy, LLC v. Jackson,* 332 A.3d 472, 485 (Del. 2024)*.* Section 7(B) of the Employment Agreement includes restrictions on soliciting customers and employees, each of which is overbroad.

### 1.   The Non-Solicitation Provision Is Overbroad in Scope.

A non-solicitation clause may be broader in terms of geographic scope in comparison to a non-compete, but must still be tailored to the company's legitimate business interests. *Sunder,* 305 A.3d at 759. In contrast to the non-compete provision, the non-solicitation clause in the instant matter is silent as to the

18

geographic scope it encompasses. Given that Section 7(B) lacks any express limitation, and that Varonis seeks to enforce the non-compete globally, Guanciale and Schmid can only assume Varonis has similar intentions with respect to the non-solicitation provision. Varonis lacks a legitimate economic interest in restricting Guanciale and Schmid beyond the areas in which they provided services for Varonis, much less in prohibiting solicitation worldwide. Moreover, the temporal restriction contained in the non-solicitation provision is identical to that contained in the non-compete (12 months), which, combined with the overbroad geographic scope, exceeds Plaintiff's legitimate business interests. Therefore, the non-solicitation clause is overbroad and unenforceable.

In addition, the definition of "Customer" under the non-solicitation includes any persons or entities that "have…inquired of…the Company's services at any time during the two-year period preceding" the termination of Guanciale and Schmid's employment with Varonis. This provision seeks to prohibit Guanciale and Schmid from soliciting individuals or entities that may have considered engaging Varonis, to wit, information that may not be known by or even available to either of them. A restrictive covenant which fails to clearly define the restricted activity or customers is unenforceable. *See Hub Group*, 2024 WL 3453863, at *10 (finding language that is "vague and fails to provide an objective standard for [employee] to comply with" is unenforceable).

### 2. The Non-Solicitation Provision Fails a Balance of the Equities Test.

The non-solicitation clause fails a balance of the equities test for the same reasons discussed above with respect to the non-compete. Varonis contends that Guanciale and Schmid may violate this provision by soliciting a customer or employee in a geographic location where they never provided services on behalf of Varonis. On the other hand, enforcement of the non-solicitation clause would likely render Guanciale and Schmid unable to earn a livelihood in their chosen profession, out of fear that they may inadvertently solicit a "Customer" that "inquired of" Varonis's services of which Guanciale and Schmid were unaware. The potential harm to the former employees significantly outweighs any harm to Varonis if the non-

19

solicitation provision is not enforced.

**V.        The Restrictive Covenants Should Not Be Blue-Penciled to Make Them Enforceable.**

This Court should not use its discretion to "blue pencil" the unreasonable restrictive covenants upon which Plaintiff bases its claims against Guanciale and Schmid.  Delaware courts are increasingly hesitant to do so. *Kodiak,* 2022 WL 5240507, at *4; *See also Cleveland Integrity Servs., LLC v. Byers,* 2025 WL 658369, at *12 (Del. Ch. Feb. 28, 2025) ("doing so creates confusion, encourages employers to overreach, and encourages litigation 'by building a degree of uncertainty into every employment agreement.'").  In fact, Defendants are unaware of a single decision from the last six years issued by this Court or other Delaware courts which narrows a restrictive covenant to make it enforceable. *See, e.g. Gordian Med., Inc. v. Vaughn,* 2024 WL 1344481, at *15, fn. 18 (D. Del. Mar. 30, 2024) (stating that Delaware Courts have limited authority to "blue pencil" restrictive covenants to make them reasonable, but declining to do so); *Kodiak,* 2022 WL 5240507, at *4; *Sunder*, 305 A.3d at 753-54 ("To blue-pencil the provision creates a no-lose situation for employers, because the business can draft the covenant as broadly as possible, confident that the scope of the restriction will chill some individuals from departing"); *FP UC,* 2020 WL 1492783, at *8; *Centurion Serv. Grp.*, 2023 WL 5624156, at *5 (Del. Ch. Aug. 31, 2023).

Delaware courts have further declined to blue pencil restrictive covenants found to be overly broad because it "encourages litigation by building a degree of uncertainty into every employment agreement." *Cleveland Integrity Servs*., 2025 WL 658369, at *12.

Accordingly, this Court should render Section 7(D) of this Employment Agreement, which seeks to blue pencil overbroad provisions contained therein, unenforceable.

**<u>CONCLUSION</u>**

For at least the foregoing reasons, Defendants Matthew Guanciale and David Schmid respectfully request that the Court dismiss, with prejudice, all Counts of Plaintiff's SAC alleged against them.

20

Respectfully submitted,

Dated: April 1, 2026

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Mary F. Dugan*
Mary F. Dugan (No. 4704)
Alpa V. Bhatia (No. 6977)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mdugan@ycst.com
abhatia@ycst.com


*Attorneys for Defendants Matthew Guanciale and David Schmid*

21