**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VARONIS SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW GUANCIALE, CYERA US INC., and DAVID SCHMID,<br><br>Defendants. | Civil Action No. 25-571-GBW |

Timothy R. Dudderar, John A. Sensing, Hannah L. Paxton, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Kim R. Walberg, Benjamin S. Morrell, Nadia Diaz-Minor, TAFT STETTINIUS & HOLLISTER LLP, Chicago, IL.

*Counsel for Plaintiff*

Justin M. Forcier, Brian M. Rostocki, REED SMITH LLP, Wilmington, DE; Adam R. Roseman, REED SMITH LLP, Philadelphia, PA; Garrett Parks, REED SMITH LLP, Denver, CO.

*Counsel for Defendant Cyera US Inc.*

Mary F. Dugan, Alpa Bhatia, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

*Counsel for Defendants Matthew Guanciale and David Schmid*

**MEMORANDUM OPINION**

October 14, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court are Defendant Cyera US Inc.'s ("Cyera") Motion to Dismiss (D.I. 66) and Defendants Matthew Guanciale and David Schmid's ("Individual Defendants") Motion to Dismiss (D.I. 68). The motions filed by Cyera and the Individual Defendants (collectively, "Defendants") seek to dismiss Plaintiff Varonis Systems, Inc.'s ("Varonis" or "Plaintiff") Second Amended Complaint ("SAC") (D.I. 60). For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motions to Dismiss (D.I. 66; D.I. 68).

## I. BACKGROUND

On May 8, 2025, Plaintiff filed its Complaint against Matthew Guanciale ("Mr. Guanciale") and Cyera. D.I. 1. Therein, Plaintiff generally alleged that: (1) Mr. Guanciale, a former employee of Plaintiff, violated various provisions of an employment agreement ("Employment Agreement") (*see* D.I. 60-2) between Plaintiff and Mr. Guanciale by resigning from his position with Plaintiff to become an employee of Cyera, (2) Mr. Guanciale would, inevitably, disclose Plaintiff's trade secrets during his employment at Cyera in a role similar to that which he held at Varonis in violation of the Defend Trade Secrets Act ("DTSA") and Delaware Uniform Trade Secrets Act ("DUTSA"), and (3) Cyera interfered with Mr. Guanciale's employment agreement with Plaintiff through Cyera's continued employment of Mr. Guanciale, despite Cyera's knowledge of the agreement. D.I. 1.

On June 18, 2025, Plaintiff filed its First Amended Complaint ("FAC"), adding David Schmid ("Mr. Schmid") as a Defendant. D.I. 18. The FAC, like the Complaint before it, alleged violation of employment agreements (including the newly alleged employment agreement between Plaintiff and Mr. Schmid) ("Employment Agreements") (*see* D.I. 60-2), inevitable disclosure of

trade secrets (including by Mr. Schmid), and Cyera's interference with the employment agreements (including with respect to Mr. Schmid). D.I. 18.

On July 16, 2025, Defendants filed separate motions to dismiss. D.I. 33; D.I. 35. On February 10, 2026, the Court granted Defendants' motions to dismiss without prejudice, finding that Plaintiff failed to state a claim under the DTSA because it failed to identify its alleged trade secrets with sufficient specificity. D.I. 56. Having dismissed the sole federal claim in this action, the Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. *Id.* The Court granted Plaintiff leave to amend its FAC "strictly to attempt to remedy the deficiencies identified by the Court's Memorandum Opinion [D.I. 56] and any deficiencies alleged in Defendants' Motions to Dismiss." D.I. 57. The Court denied-as-moot all other outstanding motions, including Plaintiff's motions for preliminary injunctions. *Id.*

On March 3, 2026, Plaintiff filed its Second Amended Complaint ("SAC"). D.I. 60. The SAC largely restates the allegations of the FAC. *See* D.I. 60-1 (redline of changes). However, the SAC differs from the FAC in three significant respects: (1) it describes Plaintiff's alleged trade secrets in more detail (D.I. 60 ¶¶ 18-45, 179, 189); (2) it alleges that four specific enterprise opportunities were lost as a result of Defendants' misconduct (*id.* ¶¶ 107-15, 154-59); and (3) it asserts an additional count (Count VII) of tortious interference against Cyera involving unspecified employment agreements with unnamed employees (*id.* ¶¶ 160-65, 212-19).

On April 1, 2026, Defendants filed separate Motions to Dismiss the SAC. D.I. 66; D.I. 68. On April 15, 2026, Plaintiff filed responses to those motions. D.I. 71; D.I. 72. On April 22, 2026, Defendants filed replies. D.I. 73; D.I. 74. Defendants' Motions to Dismiss are now before the Court.

## II. LEGAL STANDARDS

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S., at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th, at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Media*, No. 23-cv-1078-GBW, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state

a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-cv-239-KAJ, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

## III. DISCUSSION

Defendants' briefing accompanying Defendants' Motions to Dismiss (D.I. 67; D.I. 69) presents the Court with numerous arguments, ultimately seeking that the Court dismiss all claims of the SAC. Cyera first requests that the Court strike certain amendments to the FAC, including Count VII—now included in the SAC—that Cyera contends exceed the scope of Plaintiff's leave to amend based on the Court's Order dismissing the FAC (D.I. 57). D.I. 67 at 10-11. Cyera also moves to dismiss Count III of the SAC, the DTSA claim, on the grounds that Plaintiff has still failed to identify its trade secrets with sufficient specificity and otherwise fails to adequately plead misappropriation. *Id.* at 11-15. Cyera moves to dismiss Count IV of the SAC, the DUTSA claim, on the grounds that the SAC contains no allegations that any of the events related to the alleged misappropriation occurred in Delaware. *Id.* at 15-16. Cyera further moves to dismiss Counts V-VI, two of Plaintiff's tortious interference claims, on the grounds that that the non-compete and non-solicitation agreements that Cyera allegedly interfered with are overbroad and unenforceable. *Id.* at 16-20. The Individual Defendants largely restate these arguments, D.I. 69 at 7-14, and also move to dismiss Counts I and II, alleging breach of contract against the Individual Defendants, on the grounds that the non-solicitation and non-compete provisions that Plaintiff seeks to enforce are overbroad and unenforceable. *Id.* at 14-20.

The Court addresses each argument in turn below. First, the Court resolves Cyera's request to strike portions of the SAC, including Count VII. Second, the Court addresses Defendants' motions to dismiss the DTSA claim (Count III). Then, the Court considers Defendants' motions to dismiss the DUTSA claim (Count IV). Finally, the Court considers the validity of various

provisions of the Employment Agreements and the resulting implications for the breach of contract and tortious interference claims (Counts I, II, V, and VI).

### A. Plaintiff Exceeded the Scope of Its Leave to Amend by Adding Count VII.

By adding Count VII to the SAC, Plaintiff exceeded the scope of its leave to amend. "It is axiomatic that once a responsive pleading has been served, a pleading may be amended 'once as a matter of course at a time before a responsive pleading is served,' and that in all other circumstances amendments may be made 'only by leave of court or by written consent of the adverse party.'" *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 255 F. Supp. 2d 351, 383 (E.D. Pa. 2002) (quoting Fed. R. Civ. P. 15(a); citing *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886 (3d Cir. 1992)), *aff'd in pertinent part sub nom.*, *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007). Here, Plaintiff exercised its right to amend its Complaint once on June 18, 2025. *Id.*; D.I. 18. The FAC, therefore, could only have been further amended with leave of the Court or by written consent of Defendants. Fed. R. Civ. P. 15(a). Where the Court grants leave to amend a pleading, and the amendments exceed the scope of that leave to amend, the Court may refuse to recognize those amendments and/or the Court may strike them. *See In re Chemed Corp., S'holder Derivative Litig.*, No. CV 13-1854-LPS-CJB, 2017 WL 1712530, at *13 (D. Del. Apr. 25, 2017) ("When a court grants a party leave to amend for a specific purpose, and that party files a proposed amended complaint that exceeds the bounds of what was permitted, courts routinely dismiss the excess counts or claims."); *Atkinson*, 255 F. Supp. 2d at 383 (refusing to recognize amended version of one of the counts of the complaint, finding that the amendment exceeded the scope of the court's order granting leave to amend the complaint to remedy deficiencies in other counts), *aff'd in pertinent part*, 473 F.3d at 524 ("The rejection of an unapproved amended complaint is not an abuse of discretion.").

On February 2, 2026, the Court dismissed the FAC for failure to adequately identify Plaintiff's trade secrets and granted Plaintiff leave to amend "***strictly*** to attempt to remedy the deficiencies identified by the Court's Memorandum Opinion and any deficiencies alleged in Defendants' Motions to Dismiss." D.I. 57 (emphasis added). In its SAC, beyond simply identifying its alleged trade secrets in more detail, Plaintiff also added allegations related to specific instances of "lost enterprise opportunities" that occurred after Plaintiff filed its FAC in June 2025, D.I. 60-1 ¶¶ 107-15, 154-59, and Count VII, which relates to an alleged "solicitation campaign" by Cyera that constitutes tortious interference with unspecified employment agreements involving unnamed employees at unspecified times. *See* D.I. 60-1 ¶¶ 160-65, 212-19.

Cyera requests that the Court strike the amendments regarding specific lost enterprise opportunities and Count VII. D.I. 67 at 10-11. Cyera contends that those amendments "do not attempt to cure any deficiency identified by the Court's opinion" and are otherwise "pure speculation" and "bare conclusions." *Id.* Plaintiff responds that Cyera's request to strike the amendments is procedurally improper because it was not filed as a separate "motion to strike under Rule 12(f)." D.I. 71 at 4-5. Plaintiff further contends that the amendments did not exceed the scope of its leave to amend because Defendants' motions to dismiss the FAC identified Plaintiff's failure to adequately allege that Defendants' actions caused Plaintiff harm. *Id.* at 5-6; *see also* D.I. 33; D.I. 35. Plaintiff therefore maintains that these amendments remedy "deficiencies alleged in Defendants' Motions to Dismiss," in accordance with the Court's grant of leave to amend, and are otherwise "related" to Plaintiff's other claims. D.I. 71 at 5-7; D.I. 57.

As a preliminary matter, the Court rejects Plaintiff's argument that it should not consider Cyera's request to strike because it was not filed as a standalone motion. D.I. 71 at 4-5. Fed. R. Civ. P. 12(g)(2) does not prevent a defendant from requesting to strike part of an amended pleading

in its motion to dismiss that pleading, where the defendant had no prior opportunity to challenge the amendments. In fact, Rule 12(g)(2) *encourages* parties to make all available arguments in their motions to avoid waiving those arguments, as Cyera does here. Parties can, and commonly do, file motions or requests to strike portions of the pleadings concurrently with a motion to dismiss.[1] The Court thus considers Cyera's request to strike on its merits.

The Court finds that Plaintiff's amendments related to specific "lost enterprise opportunities" (D.I. 60 ¶¶ 107-15, 154-59) did not exceed the scope of its leave to amend. The Court agrees with Plaintiff that its allegations of specific lost enterprise opportunities go directly to the alleged deficiencies in Plaintiff's pleadings regarding injury and causation, which Cyera identified in its motion to dismiss the FAC. *See* D.I. 34 at 1 ("The FAC is grounded not on actual or threatened injury, but rather on unfounded future potential harm."). While Cyera is correct that the alleged loss of enterprise opportunities occurred after the FAC was filed, that point is irrelevant to the issue of whether the allegations address deficiencies previously alleged by Cyera. Here, Plaintiff alleged in the FAC that there was a threat that it would suffer competitive harm. *See* D.I. 18. Cyera contended that was "speculation about 'what might happen in the future.'" D.I. 34 at 20. Plaintiff then amended its FAC to allege that, in fact, Plaintiff had not been speculating, because the threatened harm Plaintiff previously alleged had been realized in the form of four specific lost enterprise opportunities. D.I. 60 ¶¶ 107-15, 154-59. Thus, Plaintiff's new allegations

---

[1] *See, e.g.*, *Seidel v. Lee*, 954 F. Supp. 810, 812 (D. Del. 1996) (Considering "Defendants' Motion to Strike or Dismiss the SAC," granting-in-part requests to strike and dismiss claims); *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) ("As part of their Motion to Dismiss, the county defendants included a Motion to Strike the Introduction to the Second Amended Complaint. The request to strike the introduction will be granted."); *Richardson v. Solic. Montgomery Cnty., PA*, No. CV 21-1347, 2022 WL 990895, at *6 (E.D. Pa. Apr. 1, 2022) ("The [defendants] have both included motions to strike in their motions to dismiss.").

regarding lost enterprise opportunities go directly to the deficiency previously identified by Cyera, and therefore the Court DENIES Cyera' request to strike those allegations.

On the other hand, the Court finds that Plaintiff did exceed the scope of its leave to amend by adding Count VII and the related allegations. *See* D.I. 60 ¶¶ 160-65, 212-19. Plaintiff's new claim in Count VII that Cyera has tortiously interfered with the unspecified employment agreements that Plaintiff has with unnamed employees at unspecified times does not in any way remedy alleged deficiencies in the claims Plaintiff had already brought. Plaintiff's claims in the FAC were related to (1) Cyera's hiring of the Individual Defendants in violation of their Employment Agreements and (2) the Individual Defendants' disclosure of Plaintiff's trade secrets to Cyera thereafter. *See* D.I. 18. No element of those claims had anything to do with Cyera's interactions with other, unnamed employees of Plaintiff. Thus, the deficiencies that Defendants alleged in their briefing (D.I. 34; D.I. 36) did not concern Cyera's interactions with other Varonis employees, nor did the Court's Opinion (D.I. 56). Therefore, Plaintiff's inclusion of Count VII and the related allegations exceeded the scope of its leave to amend the FAC "strictly to attempt to remedy" those deficiencies. D.I. 57. Accordingly, the Court GRANTS Cyera's request to strike the corresponding paragraphs of the SAC, including Count VII (D.I. 60 ¶¶ 212-19) and the related allegations (*id.* ¶¶ 160-65).

**B. Plaintiff Sufficiently States a Claim Under the DTSA (Count III).**

Plaintiff's SAC sufficiently states a claim under the DTSA against Defendants. To survive a motion to dismiss for failure to state a claim for trade secret misappropriation under the DTSA, Plaintiff "must allege (1) a trade secret (2) connected to interstate [or foreign] commerce (3) that defendants misappropriated." *JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 374 (D. Del. 2025); 18 U.S.C. § 1836(b)(1). Defendants challenge the first and third elements. Defendants contend that the first element is not met because

Plaintiff's list of trade secrets is "vague and ambiguous" and therefore not sufficiently specific. D.I. 67 at 12; D.I. 69 at 8-10. Defendants contend that the third element is not met because "[t]he SAC contains no allegation that any trade secret of Varonis has ***actually*** been disclosed by Defendants" and instead relies entirely on the doctrine of inevitable disclosure. For the reasons below, the Court finds that the first and third elements are satisfied.

**1. Plaintiff Identifies Its Trade Secrets with Sufficient Specificity.**

Under the DTSA, information is a trade secret if (1) the owner of the information "has taken reasonable measures to keep it secret" and (2) "the information derives independent economic value" from the fact that others do not know it. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (marks omitted); 18 U.S.C. § 1839(3). To satisfy Rule 12(b)(6), Plaintiff must identify the alleged trade secrets "with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Id.* at 906. However, Plaintiff "need not spell out the details of the trade secret to avoid dismissal," but instead must identify each trade secret "with sufficient particularity . . . to permit [Defendants] to ascertain at least the boundaries within which the secret lies." *Id.* The Court must take as true the well-pleaded allegations in the SAC and view the allegations in the light most favorable to Plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S.Ct. 1955 (2007). Under this standard, the SAC adequately identifies the purported trade secrets.

In its SAC, Plaintiff identifies six categories of trade secrets, including: (1) its internal product roadmap repositories, (2) non-public information regarding internal product limitations, (3) its proprietary structured sales methodology and evaluation process, (4) its internal competitive intelligence materials, (5) confidential prospective customer information, including their stage in the sales cycle, contract value, internal decision-makers, and security concerns, and (6) its pricing

strategies, relationships with business partners, and "strategic positioning for future opportunities." D.I. 60 ¶ 179.

To satisfy the first prong above, Plaintiff must allege that it has taken reasonable measures to keep each of these categories of information secret. 18 U.S.C. § 1839(3). Plaintiff has done so. Plaintiff provides numerous examples of the measures it has taken to protect its confidential information, "including requiring its employees to sign confidentiality and non-disclosure agreements, implementing and enforcing internal policies stressing the confidentiality of its information, restricting access to sensitive information, terminating data platform access for departing employees, and issuing written reminders to departing employees regarding their continuing obligations to maintain confidentiality." D.I. 60 ¶ 181. Thus, the SAC satisfies the first prong for trade secret identification. *See, e.g.*, *Digital Diagnostics Inc. v. White*, No. 24-1179, 2025 WL 2392004, at *3 (D. Del. Aug. 18, 2025) (first prong satisfied through requiring execution of confidentiality agreements for employees); *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2015 WL 410029, at *5 (E.D. Pa. Jan. 29, 2015) (first prong satisfied because the plaintiff "protects [its alleged trade secret] information with noncompete covenants and employment agreements"); *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704, 2021 WL 9276577, at *2 n.3 (D. Del Sep. 10, 2021) (similar).

In addition to alleging reasonable precautions that Plaintiff has taken to prevent disclosure of its alleged trade secrets, Plaintiff must identify its trade secrets with "sufficient particularity." *Oakwood*, 999 F.3d at 906. Defendants argue that the SAC, like the FAC before it, provides only "vague and ambiguous descriptions of its business" to identify its trade secrets. D.I. 67 at 12; D.I. 69 at 8. The Court disagrees. The FAC failed because the trade secret identification vaguely referred to "proprietary technical information, business strategies, customer and pricing data,

competitive analyses, and other confidential information related to its products and services." D.I. 18 ¶ 128; D.I. 56 at 6-7. In contrast, the SAC provides specific examples to flesh out Plaintiff's trade secret identification. For example, the SAC identifies specific document repositories where its trade secret information is stored, including "SharePoint," "Highspot," and "Varonis University." D.I. 60 ¶ 179. The SAC further specifies internal documents that comprise its "internal competitive intelligence materials," including "battle cards" and "win documents." *Id.* The SAC also clarifies the aspects of customer information that Plaintiff considers trade secret, including "the identity of prospective customers in active evaluations, their stages in the sales cycle, approximate contract value, internal decision-makers, security concerns, and Varonis's pricing flexibility within specific accounts, maintained in Salesforce and restricted SharePoint repositories." *Id.* These allegations enable Defendants to "at least ascertain the boundaries within which [each] secret lies," *Oakwood*, 999 F.3d at 906, based on the information to which the Individual Defendants had access while employed by Plaintiff and any information in each of these categories that the Individual Defendants have shared with Cyera. Thus, the SAC identifies Plaintiff's trade secrets with sufficient particularity to cure the deficiencies the Court identified in the FAC and to satisfy Plaintiff's burden of identification at this early stage in the litigation. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 383 n.22 (3d Cir. 2021) ("District courts must . . . consider the specificity necessary in light of the particular industry-based context and the stage of litigation.").

To satisfy the second prong above, Plaintiff must allege facts to support the conclusion that it derives independent economic value from the fact that its alleged trade secrets are not known to others. 18 U.S.C. § 1839(3). Plaintiff has done so. While Plaintiff's conclusory statements that it derives independent economic value from the information not being known to competitors, D.I.

60 ¶¶ 36, 45, 180, are inadequate by themselves, Plaintiff separately alleges sufficient facts to support that conclusion. For example, Plaintiff states that disclosure of its alleged trade secret information, including known product weaknesses and pricing strategies, would enable competitors to undercut Plaintiff on pricing and otherwise gain an unfair competitive advantage. D.I. 60 ¶¶ 25, 31, 39, 43. This presents a clear risk of economic loss to Plaintiff if the information were disclosed to competitors. Avoiding that loss is a form of independent economic value which Plaintiff derives from maintaining the secrecy of its information. Therefore, the categories of information that Plaintiff has identified satisfy both parts of the definition of trade secrets.

Defendants dispute this conclusion on three grounds, which the Court addresses in turn.

First, Defendants contend that "[t]echnical information relating to how Varonis's software functions in customer environments may easily be 'reverse engineered' through product capabilities which Plaintiff concedes is [sic] publicly available." D.I. 69 at 9. To the extent Plaintiff seeks to include in its trade secret identification its publicly-disclosed product capabilities, the Court would agree. However, the categories of trade secret information that Plaintiff lists refer to "non-public information regarding internal product *limitations*," not public information about product capabilities. D.I. 60 at ¶ 179 (emphasis added). While Defendants baldly suggest that Plaintiff's product limitations "may easily be 'reverse engineered,'" they provide no factual basis in the pleadings for that conclusion. D.I. 69 at 9. As the Court "may not consider matters extraneous to the pleadings" when evaluating a motion to dismiss, *Burlington Coat Factory Sec.* 114 F.3d at 1426, and must consider the facts in the pleadings in the light most favorable to the Plaintiff, *Twombly*, 550 U.S. at 558, it cannot conclude that the Plaintiff's internal product limitations may be easily reverse engineered. *See Mallet*, 16 F.4th at 387 n.31 ("[W]hile reverse

engineering is a defense to misappropriation of a trade secrets claim, the possibility that a trade secret *might* be reverse engineered is not a defense." (marks omitted; emphasis in original)).

Second, Defendants assert that the identities of Plaintiff's customers and partners, as well as the "internal operations details" of its software are publicly available through its website and therefore cannot be trade secrets. However, the Court "may not consider matters extraneous to the pleadings," *In re Burlington*, 114 F.3d at 1426, and the SAC does not reference the Plaintiff's website. *See generally* D.I. 60. Since Defendants' briefs are not pleadings, *see* Fed. R. Civ. P. 7(a), the Court may not consider websites referenced for the first time in the briefing. Furthermore, "information will not necessarily be deprived of protection as a trade secret because parts of it are publicly available," so the fact that parts of Plaintiff's alleged trade secret information may be available on Plaintiff's website is not dispositive. *Mallet*, 16 F.4th at 386.

Third, Defendants contend that the knowledge of Plaintiff's product capabilities and sales strategies that Defendants "Guanciale and Schmid gained through training sessions and experience[] is not a trade secret." D.I. 69 at 10. However, courts in this Circuit have consistently held that "marketing techniques may constitute a trade secret under the DTSA." *Howmedica Osteonics Corp. v. Howard*, No. 19-19254 (EP) (AME), 2022 WL 16362464, at *17 (D.N.J. Oct. 28, 2022); *see also Signant Health Holding Corp. v. DeBonis*, No. CV 24-709, 2025 WL 1789646, at *3 (E.D. Pa. June 27, 2025) ("Signant alleges . . . trade secrets . . . that relate to, among other things: Signant's unique market strategy . . . and Signant's products . . . . Courts in this Circuit have routinely found [these] types of information [to] constitute trade secrets.") (citing cases). Defendants rely on the Third Circuit's holding that a former employer cannot "assert proprietary rights over [former employees'] problem-solving ability or knowledge of mistakes to be avoided." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1262 (3d Cir. 1985). However, here, unlike in

*SI Handling*, Plaintiff is not asserting that the Individual Defendants' problem-solving ability belongs to Plaintiff. Rather, Plaintiff identifies specific proprietary sales techniques as its trade secrets, "including its 30-day evaluation framework and 'challenger' sales approach." D.I. 60 at ¶ 179. Similarly, Plaintiff does not broadly claim the Individual Defendants' "knowledge of mistakes to be avoided" in the design of a system, as did the Plaintiff in *SI Handling*. *SI Handling*, 753 F.2d at 1262. Instead, Plaintiff properly alleges that disclosing knowledge of specific technical weaknesses in the Plaintiff's product to a competitor could constitute misappropriation of its trade secrets. Thus, Defendants' arguments are not persuasive.

**2. Plaintiff Alleges Sufficient Facts to Support a Plausible Inference of Actual Misappropriation.**

Defendants contend that the SAC fails to allege misappropriation. D.I. 67 at 12; D.I. 69 at 10. "There are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood*, 999 F.3d at 907-08. Plaintiff alleges both actual and threatened improper disclosure and use of its trade secrets by the Individual Defendants on behalf of Cyera, which Plaintiff contends constitutes a violation for which Cyera is also responsible. *See* D.I. 60 ¶¶ 104-14, 152-59, 182-85; D.I. 71 at 10-13. Defendants counter that Plaintiff's allegations are "pure speculation" that amount to "mere allegations of access to trade secrets combined with employment by a competitor," which Defendants maintain is insufficient. D.I. 67 at 13; *see also* D.I. 69 at 10-11.[2]

[2] Plaintiff also asserts, but does not rely, on an "inevitable disclosure" theory of liability under the DTSA, D.I. 71 at 10-13, which all parties acknowledge is legally unsettled. *See* D.I. 71 at 13; D.I. 67 at 14 n.8; D.I. 69 at 12. Since the Court finds that Plaintiff has adequately alleged both actual and threatened misappropriation without reliance on the "inevitable disclosure" theory, the Court does not reach that issue.

Plaintiff's theory of misappropriation relies on circumstantial evidence. D.I. 71 at 10. As Plaintiff readily admits, "[w]here 'circumstantial evidence may leave ambiguous the lawfulness of the competitor's conduct,' some 'plus factor' is generally necessary to adequately plead misappropriation." *Montway LLC v. Navi Transp. Servs. LLC*, 809 F. Supp. 3d 200, 212 (D. Del. 2025) (quoting *Oakwood*, 999 F.3d at 912 n.19); D.I. 71 at 11. Plaintiff alleges three categories of circumstantial evidence in support of their theory: (1) the Individual Defendants had access to Plaintiff's trade secrets; (2) the Individual Defendants' roles as employees for Cyera are "nearly identical to their positions at Varonis, and both are customer-facing"; and (3) "Varonis has suffered competitive harm in at least four enterprise opportunities for which Guanciale or Schmid served as the managing Sales Engineer while employed with Varonis." D.I. 71 at 11-12.

The Court has also identified a fourth category of circumstantial evidence: the Individual Defendants allegedly concealed information about their new employment after resigning. The day after Mr. Guanciale left Plaintiff's employ, Plaintiff emailed him a letter acknowledging his resignation and reminding him of his alleged contractual obligation to provide a Termination Certification with general information about his new role at Cyera. D.I. 60 ¶¶ 88. Plaintiff's counsel then emailed Mr. Guanciale a letter reminding him of his obligations and requesting that he confirm that he had not breached his confidentiality and non-solicitation agreements. D.I. 60 ¶¶ 89-91. Mr. Guanciale did not respond to either email. D.I. 60 ¶¶ 88, 91. Meanwhile, Mr. Schmid, unlike Mr. Guanciale, allegedly lied to Plaintiff and "expressly stated that he was not going to be joining Cyera." D.I. 60 ¶ 145. After Plaintiff discovered Mr. Schmid's new employment at Cyera, Plaintiff's counsel sent him a similar letter to that which it had sent to Mr. Guanciale, requesting confirmation that he had not breached his non-disclosure and non-solicitations obligations. D.I. 60 ¶ 149. Mr. Schmid allegedly did not respond. *Id.*

While the Court agrees with Defendants that "mere allegations of access to trade secrets combined with employment by a competitor" would be insufficient to state a claim of misappropriation, Plaintiff has provided more. D.I. 67 at 13. Specifically, the third and fourth categories of evidence described above present "plus factors" similar to and beyond those the Third Circuit found sufficient in *Oakwood*. The *Oakwood* court found that "(1) the timing of employment" and "(2) the former employee's concealment of the new work he would be doing with the defendant" were "plus factors" which, combined with access to trade secrets and employment by a competitor, were sufficient to state a claim for misappropriation. *Beta Pharma, Inc. v. InventisBio (Shanghai) Co.*, 2022 WL 17547265, at *3 (D.N.J. Dec. 8, 2022) (summarizing the court's analysis in *Oakwood*, 999 F.3d at 911). Here, Mr. Guanciale likewise concealed the new work he was doing for Plaintiff's competitor by allegedly refusing to provide the Termination Certification with information about his new job responsibilities or respond to Plaintiff's lawyer's request for confirmation that he had not breached his non-disclosure and non-solicitation obligations. D.I. 60 ¶¶ 89-91. The same is true of Mr. Schmid's alleged refusal to respond to the same type of letter and even more egregious deception in "expressly stat[ing] that he was not going to be joining Cyera." D.I. 60 ¶ 145. That factor alone would be sufficient to state a claim for threatened misappropriation, but Plaintiff's allegations go further. Plaintiff alleges that it suffered competitive harm in four specific sales opportunities involving customers whose accounts were managed by the Individual Defendants when they worked for Plaintiff. D.I. 60 ¶¶ 107-14, 154-59. At least two of these opportunities allegedly involved sudden and historically unlikely choices by customers to proceed with Cyera over Plaintiff toward the end of the evaluation period. D.I. 60 ¶¶ 110-12, 157. Assuming these allegations are true, as the Court must at this time, *see*

*Twombly*, 550 U.S. at 558, Plaintiff has provided sufficient allegations of circumstantial evidence and "plus factors" to state a claim of both actual and threatened misappropriation.

**C. Plaintiff Fails to State a Claim Under the DUTSA (Count IV).**

Plaintiff also brings a claim under the Delaware Uniform Trade Secrets Act for the same conduct giving rise to its DTSA claim. D.I. 60 ¶¶ 12, 187-99. The claims share a common nexus of fact, so the Court has supplemental jurisdiction over the DUTSA claim pursuant to 28 U.S.C. § 1367. Defendants contend that Plaintiff fails to state a claim for relief under DUTSA because, according to Defendants, the DUTSA "does not apply to conduct in other states," and the SAC does not suggest that any of the alleged conduct occurred in Delaware. D.I. 67 at 15-16; D.I. 69 at 13. Plaintiff does not directly dispute that the DUTSA lacks extraterritorial effect but instead replies that "the extraterritorial scope of DUTSA is a 'choice of law' issue that is not appropriately resolved at the pleadings stage."[3] D.I. 71 at 12. Cyera insists that "Delaware courts routinely assess DUTSA claims at the motion to dismiss stage, especially where the complaint does not allege that misappropriation occurred in Delaware." D.I. 74 at 7.

"[I]t has been uniformly held by both state and federal courts in Delaware that the DUTSA does not have extraterritorial effect." *Wit Software v. Talkdesk, Inc.*, No. CV 23-94-WCB, 2023 WL 3454193, at *9 (D. Del. May 15, 2023) (Bryson, J., sitting by designation) (collecting cases). Thus, "the DUTSA requires something that the DTSA does not: that 'the misappropriation happened' in Delaware. . . . If the misappropriation happened in another state or country, the DUTSA does not apply." *Montway LLC v. Navi Transp. Servs. LLC*, 809 F. Supp. 3d 200, 213 (D. Del. 2025) (Bibas, J., sitting by designation) (quoting *JPMorgan Chase Bank, Nat'l Ass'n v.*

[3] As a fallback argument, Plaintiff contends that, even if the alleged misconduct occurred outside of Delaware, most states have adopted a version of "the UTSA (upon which DUTSA is based)," so the court should nevertheless find Plaintiff's claim sufficient. D.I. 46 at 14.

*Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 380 (D. Del. 2025) (Bibas, J., sitting by designation)).

Plaintiff's contention that it is inappropriate to dismiss a DUTSA claim for failure to allege misappropriation occurring in Delaware is not persuasive. Prior decisions in this District, including *Montway*, *JPMorgan*, and *Elkay Interior Sys. Int'l, Inc. v. Weiss*, No. 22-438-RGA-JLH, 2022 WL 17961568 (D. Del. Dec. 27, 2022), did exactly that. *See Montway*, 809 F. Supp. 3d at 213; *JPMorgan*, 765 F. Supp. 3d at 380-81; *Elkay*, 2022 WL 17961568, at *4. In *Elkay*, the court recognized that "the choice of law question can entail a fact-intensive inquiry that is often inappropriate on a motion dismiss." *Elkay*, 2022 WL 17961568, at *4. Yet here, as in *Elkay*, "there is no real dispute that [DUTSA] does not provide a cause of action for the conduct alleged" because "Plaintiff['s] brief does not seriously dispute that DUTSA does not have extraterritorial effect and therefore does not apply to its trade secret misappropriation claim as alleged." *Id.*; *see* D.I. 71 at 13-15. Thus, following *Montway*, *JPMorgan*, and *Elkay*, the Court finds it appropriate to dismiss Plaintiff's DUTSA claim without prejudice and grants Plaintiff leave to amend the SAC strictly "to add a [trade secret misappropriation] claim under a state law that reaches defendants' conduct or to allege facts to which [DUTSA] would apply." *JPMorgan*, 765 F. Supp. 3d at 381. For clarity, Plaintiff may not add claims involving Plaintiff's employees other than the Individual Defendants in an effort to remedy this deficiency.

### D. The Non-Compete, Non-Solicitation, and Non-Interference Provisions of the Employment Agreements are Overbroad and Unenforceable.

Plaintiff's SAC asserts claims against the Individual Defendants for breach of contract, alleging that the Individual Defendants have breached the non-compete, non-solicitation, non-interference, and non-disclosure provisions of the Employment Agreements. *See* D.I. 60 ¶¶ 50-55 (describing the relevant provisions), 151-52, 166-76 (Counts I and II).

The Individual Defendants have moved to dismiss Counts I and II, contending that the non-compete and non-solicitation provisions of the Employment Agreements are overbroad and unenforceable. *See* D.I. 69 at 14-20; D.I. 67 at 17-19. However, the Individual Defendants do not offer any argument challenging Plaintiff's enforcement of the non-disclosure provisions of the Employment Agreements. *See* D.I. 60 ¶¶ 167-68, 173-74 (Counts I and II asserting that the Individual Defendants "violat[ed] [their] contractual obligation to protect and not use or disclose the confidential information about Varonis's business"); D.I. 60-2 at 4-6 (Ex. 1 to the SAC, the "Employment Agreement"), D.I. 69 at 14-20; D.I. 67 at 17-19; *see also* D.I. 72 at 14 n.3. Thus, the Court DENIES-IN-PART the Individual Defendants' Motion to Dismiss to the extent the Individual Defendants move, without any supporting argument, to dismiss Counts I and II for failure to adequately plead breach of the non-disclosure provisions of the Employment Agreements. *Cf.* D. Del. LR 7.1.2(a); *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202-03 (3d Cir. 2004) ("We have held on numerous occasions that an issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (internal marks omitted)); *U.S. Bank Nat. Ass'n v. Gunn*, No. Civ. 11-1155-RGA, 2012 WL 1801944, at *1 (D. Del. May 17, 2012) (dismissing 12(b)(6) motion to dismiss where "Defendant provides no argument to support his motion to dismiss"); *Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 548 (E.D. Pa. 2023) ("Arguments consisting of no more than a conclusory assertion lacking supporting citations will be deemed waived." (internal marks omitted)). Otherwise, for the reasons provided below, the Court GRANTS-IN-PART the Individual Defendants' Motions to Dismiss Counts I and II of the SAC based upon the

Court's finding that the non-solicitation, non-compete, and non-interference provisions of the Employment Agreements are overbroad.[4]

### 1. The Non-Compete Provision of the Employment Agreement is Overbroad and Unenforceable.

This Court has supplemental jurisdiction over Plaintiff's breach of contract claims because those claims share a "common nucleus of operative fact" with Plaintiff's DTSA claim arising under federal law. *United States v. Gillette*, 738 F.3d 63, 72 (3d Cir. 2013); 28 U.S.C. § 1367. A federal court exercising supplemental jurisdiction over state law claims must generally apply the substantive law of the state in which it sits.[5] *Moses President v. Gov't of the Virgin Islands*, No. 23-2313, 2025 WL 40545, at *1 (3d Cir. Jan. 7, 2025) (citing *Hamilton v. Roth*, 624 F.2d 1204, 1210-12 (3d Cir. 1980)). "Delaware courts review non-compete and non-solicit agreements subject to Delaware law to ensure that they are (i) reasonable in geographic scope and temporal

---

[4] Defendants do not explicitly challenge the enforceability of the non-interference provision of the employment agreements, as distinct from the non-compete and non-solicitation provisions. *See generally* D.I. 69; D.I. 67. However, there is substantial similarity and overlap between those provisions. *See* D.I. 60-2 at 9-10 (including all three provisions under the title "Covenant Not to Compete and No Solicitation"). To the extent the non-interference provision covers different conduct, it both includes and goes beyond the restrictions provided in the non-compete and non-solicitation provisions. *Id.* (prohibiting Defendants Schmid and Guanciale from "directly or indirectly . . . . in any way interfer[ing] or attempt[ing] to interfere with [Plaintiff's] relationship with any party or existing or prospective counterparty"). Thus, because the Court finds that the non-compete and non-solicitation provisions are overbroad, and the non-interference provision is even broader, the Court finds that the non-interference provision is also overbroad and unenforceable for the same reasons.

[5] The parties appear to assume in their briefing that Delaware law governs the Employment Agreement. *See* D.I. 67 at 16-19; D.I. 69 at 14-20; D.I. 72 at 14-20. The Court notes that the Employment Agreement contains a forum selection clause that provides, "[t]his Agreement will be governed by the laws of the State of Delaware without regard to Delaware's conflict of laws rules that may result in the application of the laws of any jurisdiction other than Delaware." D.I. 60-2 at 14. The Court therefore applies Delaware law in assessing the enforceability of the Employment Agreement. *See Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023) ("Here, Delaware contract law governs, as the parties selected it to apply.").

duration, (ii) advance legitimate economic interests of the party seeking enforcement, and (iii) survive a balancing of the equities. A court reviews the duration and geographic scope of a restriction together, and the restriction's reasonableness is a fact-intensive inquiry. The company's business interests and other equitable factors are independent analyses." *Payscale Inc. v. Norman*, 361 A.3d 886, 890 (Del. 2026) (citations omitted).

The non-compete provision in the Employment Agreement at issue here provides that the Individual Defendants agreed not to, *inter alia*, "work or consult for or otherwise join, participate in or affiliate [themselves] with, any business whose business, products or operations are in any respect competitive . . . with or otherwise similar to [Plaintiff's] business" for twelve (12) months after termination of their employment with Plaintiff. D.I. 60-2 at 9. The covenant has no geographic restriction. *Id.* It instead explicitly covers the Individual Defendants' "activities in every part of the world." *Id.* As Defendants note, the terms of the Employment Agreement do not define what types of activities are "competitive with" or "similar to" Plaintiff's business. D.I. 69 at 5; *see generally* D.I. 60-2.

Defendants contend that this non-compete provision (1) is facially overbroad, (2) exceeds Plaintiff's legitimate business interests, and (3) does not survive a balance of the equities. D.I. 67 at 17-19; D.I. 69 at 14-18. Defendants opine that "Delaware law makes clear that national non-compete clauses – let alone worldwide ones like the one here – are only appropriate in limited circumstances, specifically when such restrictions arise from the sale of a business." D.I. 69 at 14. Defendants further contend that "neither Guanciale nor Schmid were provided with any consideration – other than employment with Varonis – in exchange for" their agreement to the non-compete provision. *Id.* at 15. Finally, Defendants conclude that Plaintiff has failed to connect the breadth of the restrictive covenant to its legitimate business interests because "Plaintiff does

not (and cannot) allege Guanciale's or Schmid's work has a global reach, nor does it specify that Varonis provides services globally." *Id.*

Plaintiff disputes each of these arguments. Plaintiff contends that the global geographic scope is appropriate because "Varonis is a global company whose operations, customers, and employees span the United States, Canada, the United Kingdom, South America, and beyond, and Guanciale and Schmid managed sales opportunities that were not confined to a single state," and "Varonis's goodwill, confidential information, and customer relationships are not limited by geography." D.I. 72 at 15; D.I. 71 at 15. Plaintiff further emphasizes that both Defendants Guanciale and Schmid were "Senior Sales Engineers" with "extensive access to Varonis's most sensitive information." D.I. 72 at 16. Plaintiff also replies that the Employment Agreement's failure to define what type of business was "competitive with" or "similar to" Plaintiff's is irrelevant because "Guanciale and Schmid knew exactly what business Varonis was in when they signed their agreements." *Id.* at 17. Finally, Plaintiff contends that "Guanciale and Schmid cannot disavow their own contractual acknowledgments . . . . [that, *inter alia*,] the time, geographic and scope limitations of their restrictive covenant obligations are fair and reasonable in all respects." *Id.* at 16-17.

The Court first briefly addresses Plaintiff's contention that Defendants "cannot disavow their own contractual acknowledgments." *Id.* As Delaware courts have made clear, "an employee's promise not to challenge the reasonableness of his restrictive covenants cannot circumvent [Delaware courts'] mandate to review those covenants for reasonableness." *Caring People Holdco, LLC v. East*, No. 2024-0125-SEM, 2026 WL 678954, at *19 (Del. Ch. Mar. 10, 2026) (internal marks omitted). Moreover, there is no suggestion in the SAC that the Individual Defendants had any choice about the language of the non-compete provision, as the covenant was

"a condition of [their] employment." D.I. 60 ¶¶ 50, 119. Consequently, the Court adheres to its mandate to review the covenant for reasonableness regardless of the language of the agreement that attempts to prevent the Court's review.

The Court finds that the non-compete covenant is facially overbroad and unenforceable. The global geographic scope of the covenant is completely unreasonable in light of the fact that it bears no apparent connection to the work that the Individual Defendants performed (or, at the time the contract was signed, were expected to perform) for Plaintiff. While Plaintiff states in its briefing that "Varonis is a global company whose operations, customers, and employees span the United States, Canada, the United Kingdom, South America, and beyond, and Guanciale and Schmid managed sales opportunities that were not confined to a single state," D.I. 72 at 15, the SAC does not contain such allegations. It is telling that the only paragraph of the SAC that Plaintiff cites in support of that statement is its broad assertion that Cyera has solicited Plaintiff's employees in the United States, Canada, the United Kingdom, and South America—one of the allegations the Court struck for exceeding the scope of Plaintiff's leave to amend. *Id.*; D.I. 60 ¶ 162; *see* Part III(A), *supra*. Beyond that assertion, which is unsupported by any specific factual allegations, there is no description whatsoever of the international scope of Plaintiff's business. The SAC contains no allegations regarding (1) which clients the Individual Defendants worked with, (2) where those clients were located, (3) who the Individual Defendants were expected to work with when they signed the Employment Agreement, or (4) where the Individual Defendants were located, or traveled to, while employed by Plaintiff. Neither the allegations of the SAC nor the language of the non-compete provision establish a reasonable connection between the work the Individual Defendants actually performed for Plaintiff and the geographic restriction that Plaintiff now asserts to prevent the Individual Defendants from engaging with **any similar business**

**anywhere in the world**. Thus, the non-compete provision is overbroad and unenforceable. *See Payscale*, 361 A.3d at 890.

Plaintiff's defense of the non-compete provision based on *Payscale* is unpersuasive because *Payscale* is distinguishable in numerous ways. *See* D.I. 72 at 15-18. In *Payscale*, the Supreme Court of Delaware held that the trial court had improperly dismissed a claim based on a non-compete provision with an eighteen-month duration and nationwide scope. *See Payscale*, 361 A.3d at 892-97. While Plaintiff is correct that the court in *Payscale* explicitly rejected Defendant's contention "that there is a bright-line rule under which a non-compete with a nationwide scope is facially unenforceable outside the context of a sale of a business," the many specific allegations that made enforceability plausible in *Payscale* are not present in this case. *Id.* at 892 n.30. For example, in *Payscale*, the plaintiff clearly alleged how various geographic regions were involved with the defendant's work for the plaintiff.[6] No such allegations can be found in Plaintiff's SAC here. Furthermore, the non-compete provision at issue in *Payscale* had better-defined terms regarding relevant competitors, which contrasts starkly with the undefined and sweeping "similar to" terminology in Plaintiff's non-compete provision.[7] That narrow definition led the court in

---

[6] *See id.* at 891-92 ("Although her role at Payscale focused on the western portion of the country, [the defendant's] work was not confined to that region. [The defendant] collaborated with directors of other regions and was involved in senior-level strategic decisions that applied across the company's various sales regions. . . . The amended complaint expressly alleges that the non-compete's national scope is also based upon the nature of Payscale's customers because many of Payscale's customers, particularly the Enterprise customers, operate nationwide or, at least, beyond the borders of the state in which they are headquartered." (internal marks and citations omitted)).

[7] *See id.* at 891, 898 ("'Competitive Business' is defined as 'any business conducted by [Topco] or any of its Subsidiaries as of [the defendant's] Separation Date or any business proposed to be conducted by [Topco] or any of its Subsidiaries as evidenced by a written business plan in effect prior to [the defendant's] Separation Date,'" and the complaint clarified that "Payscale [was] Topco's only operating subsidiary and all of Payscale's subsidiaries conduct[ed] the same line of business as Payscale—namely, compensation data, software, and services").

*Payscale* to reject the trial court's conclusion that the non-compete provision had a "worldwide effect" because there were "no allegations that Topco, Payscale, or Payscale's subsidiaries conduct or plan to conduct business outside of the United States." *Id.* at 895. Here, Plaintiff unreservedly defends the global scope of the non-compete provision while offering only vague assertions about the international scope of its business that are not supported by the allegations in the SAC. D.I. 72 at 15-16. Thus, *Payscale* is distinguishable, and the differences between this case and *Payscale* highlight the degree to which Plaintiff has failed to allege sufficient facts to render the enforceability of its covenant reasonably conceivable.

**2. The Non-Solicitation Provisions of the Employment Agreement are Unenforceable.**

Delaware courts review non-solicitation provisions under the same framework as non-compete provisions. *Payscale*, 361 A.3d at 890. The Employment Agreement contains two non-solicitation provisions. D.I. 60-2 at 9-10. The first, entitled "Non-Solicitation of Customers," seeks to prohibit the Individual Defendants from, *inter alia*, "directly or indirectly . . . communicat[ing] with any Customer for the purposes of conducting business that is competitive or similar to that of [Plaintiff]," where "Customer" is defined as, *inter alia*, "all persons or entities that have used, inquired of or been solicited by [the Individual Defendants] for the [Plaintiff's] services at any time during the two-year period preceding the termination of [the Individual Defendants'] employment with the [Plaintiff]." *Id.* at 9. The second, entitled "Non-Solicitation of Employees and Contractors," seeks to prohibit the Individual Defendants from, *inter alia*, "solicit[ing], encourag[ing] or attempt[ing] to solicit or encourage any employee or contractor of the [Plaintiff] to be employed by or provide services to any person or entity other than the [Plaintiff]." *Id.* at 10. Like the non-compete provision, the non-solicitation provisions have unlimited geographic scope and a one-year duration. *Id.* at 9-10.

Defendants contend that the non-solicitation provisions are, like the non-compete provision, overbroad. D.I. 69 at 18-19; D.I. 67 at 19 n.14. Defendants insist that "Varonis lacks a legitimate economic interest in restricting Guanciale and Schmid beyond the areas in which they provide services for Varonis." D.I. 69 at 19. Defendants further point out that the "Non-Solicitation of Customers" provision includes by its terms "all persons or entities that have . . . inquired of [Plaintiff's] services at any time during the two-year period preceding the termination" of the Individual Defendants, which likely includes entities the Individual Defendants could not be aware of. *Id.* Plaintiff replies that the lack of a geographic scope limitation in the non-solicitation provisions is appropriate because those provisions are "tied to business relationships rather than locations." D.I. 72 at 19. Plaintiff further maintains that the two non-solicitation provisions prohibit the Individual Defendants "from contacting any Varonis customer for the purposes of conducting competitive business or disadvantaging Varonis," and "from soliciting any Varonis employee or contractor to terminate their relationship with Varonis." *Id.*

The Court agrees with Defendants. Plaintiff understates the broad scope of the non-solicitation provisions. It is not true, as Plaintiff's suggest, that the "Non-Solicitation of Customers" provision applies only to Plaintiff's customers. *Id.* Instead, its sweeping terms cover all entities that have *inquired of* Plaintiff's services within two years prior to the Individual Defendants' respective departures. D.I. 60-2 at 9. This presumably includes entities that the Individual Defendants did not interact with and may have no knowledge of. The provision is also not limited to solicitation for the purposes of competing or disadvantaging Plaintiff, but instead it covers any communication for the purpose of conducting any business "similar to" Plaintiff's, regardless of whether it is competitive, and without any definition of what types of business that term covers. *Id.* Likewise, Plaintiff misstates the facts when it claims that the "Non-Solicitation

of Employees" provision only covers "soliciting any Varonis employee or contractor to terminate their relationship with Varonis." D.I. 72 at 19. In truth, the provision encompasses even mere "attempt[s] to solicit or encourage any . . . contractor of [Plaintiff] . . . to provide services to any person or entity other than [Plaintiff]." D.I. 60-2 at 10. In other words, if Mr. Guanciale asked an internet service provider (ISP) to provide internet service to his home, and that ISP happened to contract with Plaintiff, Mr. Guanciale would be in violation of the agreement. That is not reasonable. The Court thus agrees with Defendants that the non-solicitation provisions of the Employment Agreement are overbroad and unenforceable.[8]

**3. The Court Declines to "Blue-Pencil" the Unenforceable Provisions.**

To the extent the Court finds the non-solicitation and non-compete provisions of the Employment Agreement unenforceable, as it now has, Plaintiff asks the Court to "blue-pencil" the unenforceable provisions to render them enforceable. While Delaware courts have the discretion to do so, *see Sunder Energy, LLC v. Jackson*, 332 A.3d 472, 488 (Del. 2024), that discretion is seldom exercised because it creates perverse incentives for employers to draft overbroad restrictive covenants and wait for a court to blue-pencil them to "see what sticks." *See Kodiak Bldg. Partners, LLC v. Adams*, No. 2022-0311-MTZ, 2022 WL 5240507, at *4 (Del. Ch. Oct. 6, 2022) (discussing these perverse incentives). Indeed, the covenants at issue here are drafted in exactly that way: they are overbroad, as the Court explains above, and they contain severability provisions that seek to construe the agreements as "a series of separate covenants, one for each country, city, county and

[8] Due to the clear facial overbreadth of the non-solicitation provisions, the Court does not conduct a detailed analysis of Plaintiff's legitimate business interests or the balance of the equities. However, were it to do so, the fact that Defendants Schmid and Guanciale (1) had to accept these provisions as a condition to employment without further consideration, D.I. 60 ¶¶ 50, 119, (2) do not appear to have negotiated these provisions, *id.*, and (3) could not possibly know some of the entities (e.g., all of Plaintiff's contractors and any person who has inquired of Plaintiff's services) covered by these restrictions, would all weigh in favor of refusing to enforce the agreements.

state of any geographic area in the world." D.I. 60-2 at 11. The Court declines that invitation. It would both be impractical in light of the disconnect between the wording of the provisions and the work the Individual Defendants actually performed, and the equities weigh against such judicial amendment and enforcement. *See* n.8, *supra*. Therefore, the Court will not "blue-pencil" the unenforceable covenants.

* * *

For the foregoing reasons, the Court GRANTS-IN-PART Defendants' Motion to Dismiss Counts I and II of the SAC as to the non-compete and non-solicitation provisions. For the same reasons, the Court dismisses Counts I and II to the extent they rely upon the non-interference provisions. *See* n.4, *supra*. However, as discussed above, *see* Part III(D), *supra*, because Defendants do not challenge the enforceability of the non-disclosure provisions, *see* D.I. 67 at 16-19; D.I. 69 at 14-20 (challenging the non-compete and non-solicitation provisions, but not the non-disclosure provisions), and Plaintiff alleges facts consistent with Defendants Guanciale and Schmid breaching the non-disclosure provisions, *see* D.I. 60 ¶¶ 107-14, 154-59 (discussing lost enterprise opportunities), 168, 174 (alleging breach); D.I. 60-2 at 5 (language of the provisions), the Court DENIES-IN-PART Defendants' Motion to Dismiss Counts I and II of the SAC. Plaintiff's claims for breach of contract based on alleged breach of the non-disclosure provisions of the Employment Agreement may proceed.

### E. Plaintiff's Remaining Claims for Tortious Interference Against Cyera (Counts V and VI) Also Fail.

Cyera has also moved to dismiss Plaintiff's tortious interference claims that are based on Cyera's employment of the Individual Defendants (Counts V and VI). *See* D.I. 71 at 19-20. "For a claim of intentional interference with contractual relations, plaintiffs must establish: '(1) a contract (2) about which defendant knew and (3) an intentional act that is a significant factor in

causing the breach of such contract (4) without justification (5) which causes injury.'" *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 631 F. Supp. 2d 504, 509 (D. Del. 2009) (quoting *Lipson v. Anesthesia Servs., P.A.,* 790 A.2d 1261, 1284 (Del. Super. 2001)). Since the Court has found that the non-solicitation and non-compete provisions of the Employment Agreement are invalid and unenforceable, Plaintiff has failed to establish the first element of tortious interference as to those contracts. However, because the Court has not held that the non-disclosure provisions of the Employment Agreement are invalid, Plaintiff may still rely on that provision for its tortious interference claims. Thus, the Court must consider whether Plaintiff has alleged facts sufficient to satisfy the other four elements above.

The Court holds that Plaintiff has not met that burden. Plaintiff plausibly alleges the existence of the non-disclosure agreements between Plaintiff and Defendants Guanciale and Schmid, D.I. 60 ¶¶ 50, 119, and Cyera's knowledge thereof, at least as of March 2025, D.I. 60 ¶ 92. However, Plaintiff fails to plead specific facts sufficient to make it plausible that Cyera's act of hiring Defendants Schmid and Guanciale was, by itself, "an intentional act that is a significant factor in causing the breach of [the non-disclosure] contract," without justification. *Accenture*, 631 F. Supp. 2d at 509. Plaintiff contends that it has met this burden because Defendants Guanciale and Schmid were hired in "roles that are 'nearly identical' to those they held at Varonis—roles that by their nature require the use of exactly the kind of proprietary information they accumulated at Varonis." D.I. 71 at 17. Plaintiff's suggestion that employment by a competitor "requires" use of Plaintiff's confidential information is not plausible. Plaintiff does not allege that it is impossible to work as a salesperson in Plaintiff's "intensely competitive" industry, D.I. 60 ¶ 103, without using Plaintiff's confidential information. The fact that Plaintiff already recognized Cyera as a competitor when Mr. Guanciale began working there, D.I. 60 ¶ 90, demonstrates that whatever

proprietary information the Individual Defendants had access to at Varonis was not necessary for Cyera to establish itself as a competitor to Plaintiff. Consequently, it is not plausible that the Individual Defendants could not work for Cyera without using Plaintiff's allegedly proprietary information. Moreover, the SAC contains no specific allegation that Cyera instructed the Individual Defendants to disclose confidential information they had learned while employed by Plaintiff.[9] Lacking that allegation, the Court cannot find that Cyera's act of employing the Individual Defendants, by itself, constituted an act intended to cause them to breach their non-disclosure agreements with Plaintiff. Even if the Court did make such a finding, the Court could not conclude that merely employing salespeople with experience in the industry was an act done "without justification." *Accenture*, 631 F. Supp. 2d at 509.

Therefore, Plaintiff has failed to state a claim for tortious interference with Plaintiff's non-compete, non-solicitation, and/or non-disclosure agreements with the Individual Defendants. Thus, the Court GRANTS Cyera's motion to dismiss Counts V and VI in their entirety.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' Motions to Dismiss (D.I. 66; D.I. 68). The Court will issue an Order consistent with this Memorandum Opinion.

---

[9] To prevent confusion, the Court notes that this is the reason why the breach of contract claims survive but the tortious interference claims do not. While Plaintiff's factual allegations make it reasonably conceivable that the Individual Defendants breached their non-disclosure obligations, there is no specific factual allegation suggesting that Cyera instructed them to do so. Thus, the allegations support claims against the Individual Defendants for breach of contract but not against Cyera for tortious interference.